## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | Chapter 11 |
| | : | |
| DOMUS BWW FUNDING, LLC, | : | |
| | : | Bankruptcy No. 22-11162-AMC |
| DEBTOR | : | |
| _____ | : | |

Ashely M. Chan, United States Bankruptcy Judge

## OPINION

### I.    INTRODUCTION

In February 2023, shortly before his retirement, Bankruptcy Judge Eric Frank entered an order memorializing a settlement of a dispute, described in detail below, between one of the debtors in this voluntary chapter 11 case, 1801 Admin, LLC ("1801 Debtor") and one of its alleged creditors, 47 East 34th Street (NY), L.P. ("47 East"). This order awarded the 1801 Debtor attorneys' fees incurred in filing and prosecuting a motion which Judge Frank had found necessary to secure 47 East's compliance with one of his prior orders. In the event the parties could not reach an agreement regarding the amount of attorneys' fees to be awarded, the order permitted the 1801 Debtor to file a motion for an award of attorneys' fees. Ultimately unable to reach an agreement regarding the appropriate amount of attorneys' fees, the 1801 Debtor now moves this Court to determine a reasonable fee award in accordance with Judge Frank's February 2023 order. Ultimately, the Court determines $113,933.87 in attorneys' fees for Karalis P.C., bankruptcy counsel to the 1801 Debtor, and $59,446.80 in attorneys' fees for Perkins Coie LLP, counsel to the 1801 Debtor in litigation in state court against 47 East, to constitute a reasonable award for the reasons described in detail in this opinion.

## II.      FACTUAL/PROCEDURAL BACKGROUND

By way of background, on June 19, 2018, 47 East commenced litigation in the New York Supreme Court, New York County ("New York Supreme Court") against BridgeStreet Worldwide, Inc. ("BWW"); Domus BWW Funding, LLC ("Domus Debtor"); and Versa Capital Management, LLC ("Versa") styled as *47 East 34th Street (NY), L.P. v. BridgeStreet Worldwide, Inc., et al.,* index no. 653057/2018, seeking to enforce the terms of a guaranty of lease executed by BWW in favor of 47 East ("New York State Action"). Case No. 22-11162 ECF No. ("ECF") 65 ¶¶ 11, 12. On July 12, 2021, 47 East filed a motion for summary judgment in the New York State Action seeking to hold the Domus Debtor and Versa liable for certain tax liability of 47 East. *Id.* at ¶ 20. On April 26, 2022, the New York Supreme Court entered an order granting summary judgment in favor of 47 East against Versa and the Domus Debtor ("New York Summary Judgment Order"). *Id.* at ¶ 21, Ex. B. On May 2, 2022, both Versa and the Domus Debtor appealed the New York Summary Judgment Order ("State Action Appeal") to the Supreme Court of the State of New York, Appellate Division, First Department ("New York Appellate Division"). *Id.* at ¶ 26, Ex. D.

On May 3, 2022, the 1801 Debtor and Domus Debtor (collectively "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby staying the State Action Appeal. Case No. 22-11162 ECF 1; Case No. 22-11163 ECF 1. The same day, the Debtors filed an application to employ Karalis P.C. as their bankruptcy counsel. Case No. 22-11162 ECF 3. The next day, the Debtors filed a declaration of Paul Halpern, an "authorized person" of the 1801 Debtor, representing that the 1801 Debtor was "formerly known as [Versa]." *Id.* at ECF 11 ¶¶ 1, 6.

Meanwhile, on May 16, 2022, judgment in favor of 47 East and against Domus and Versa in the amount of $13,617,170.46, plus interest, was signed by the New York Supreme Court ("New York Judgment"). 47 East POC 11-1, Proof of Claim Rider Ex. B.

On May 18, 2022, the Debtors filed an application in this Court to employ Perkins Coie LLP ("Perkins Coie") as special litigation counsel to, in relevant part, the 1801 Debtor, allegedly formerly known as Versa, in the State Action Appeal. Case No. 22-11162 ECF 50 ¶ 21. On May 19, 2022, the Domus Debtor filed an application in this Court to employ Gelber & Santillo PLLC ("Gelber") as special litigation counsel to the Domus Debtor in the State Action Appeal. *Id.* at ECF 55 ¶¶ 21-22.

On May 26, 2022, the Debtors filed a motion seeking to modify the automatic stay ("Motion to Modify the Stay") to, *inter alia*, permit the New York State Action to proceed to its conclusion. *Id.* at ECF 65 ¶ 46.

On May 31, 2022, the Court entered an order granting the Debtors' application to employ Karalis P.C. as bankruptcy counsel. *Id.* at ECF 76. On June 15, 2022, the Court entered an order granting Debtors' application to employ Perkins Coie as special litigation counsel. *Id.* at ECF 101. The same day, the Court by separate order granted the Domus Debtor's application to employ Gelber as special litigation counsel. *Id.* at ECF 102. On July 15, 2022, the Court entered an order granting the Motion to Modify the Stay in part to, *inter alia*, permit the State Action Appeal to continue to its conclusion ("Stay Modification Order"). *Id.* at ECF 135.

On August 4, 2022, 47 East filed a proof of claim against the 1801 Debtor based upon, *inter alia,* the New York Summary Judgment Order and New York Judgment ("47 East POC") which had been entered against Versa in the State Action. 47 East Proof of Claim 11-1, Proof of Claim Rider at 1. *See also* Ex. A, B. Meanwhile, the 1801 Debtor moved the New York

Appellate Division to substitute it for Versa in the State Action Appeal and to amend the case

caption to so reflect. Case No. 22-11162 ECF 280 Ex. B at 2. On September 29, 2022, the New

York Appellate Division denied that request. *Id.*

On January 13, 2023, the Debtors filed a motion with the New York Appellate Division

seeking to enlarge the record of the State Action Appeal ("Motion to Enlarge"). *Id.* at Ex. A. On

January 20, 2023, 47 East filed a cross-motion to strike the Motion to Enlarge as to the 1801

Debtor, arguing the 1801 Debtor lacked standing to participate in the State Action Appeal given

the New York Appellate Division's previous denial of the 1801 Debtor's request to substitute

itself for Versa in the State Action Appeal ("47 East Cross-Motion to Strike"). *Id.* at Ex. B at 1-2.

On January 30, 2023, the 1801 Debtor filed its appellant brief ("1801 Appellant Brief")

with the New York Appellate Division in connection with the State Action Appeal.[1] Case No.

22-11162 ECF 257 ¶ 2, Ex. B. On February 7, 2023, 47 East filed an application with the New

York Appellate Division seeking an order striking the 1801 Appellant Brief ("47 East

Application") based in part on its position that "…[the 1801 Debtor] is a shell entity that

appeared for the first time after summary judgment was entered against [Versa]…Immediately

thereafter,…[the 1801 Debtor] filed a chapter 11 petition and claimed that it was 'formerly

known as' [Versa], and…[the 1801 Debtor] made no showing that the substitution of the shell

entity for the real defendant in this case was nothing more than a sham and would not prejudice

the rights of 47 East." *Id.* at ¶¶ 4, 8, Ex. D.

On February 13, 2023, the Debtors filed a motion for entry of an order clarifying certain

aspects of the Stay Modification Order in light of the 47 East Application, particularly, "to make

clear that [the Stay Modification Order] extends to [the 1801 Debtor] formerly known as

---

[1] The Domus Debtor filed its appellant brief in connection with the State Action Appeal the same day. Case No. 22-11162 ECF 257 ¶ 3, Ex. C

[Versa]…" ("Clarification Motion"). *Id.* at ¶ 11. At the February 17, 2023 hearing on the

Clarification Motion, while Judge Frank declined the 1801 Debtor's request to make explicit in

the Stay Modification Order that "1801 Admin, LLC was formerly known as Versa Capital

Management, LLC," he did comment in response to 47 East's argument that the 1801 Debtor

should not be able to participate in the State Action Appeal because the 1801 Debtor is not Versa

that: "I do have a concern about taking inconsistent positions. If you're going to say 1801 is not

an entity that can challenge the judgment on which you base your proof of claim, then maybe I

strike your proof of claim." Case No. 22-11162 ECF 270 Hrg. Tr. 37:24-38:3, 49:20-52:18,

63:14-17, Feb. 17, 2023.

On February 17, 2023, the Court entered an order, *inter alia*, denying the Clarification

Motion "insofar as the Debtors requested that the [Stay Modification Order] be amended to

include a factual determination that [the 1801 Debtor] and [Versa] are the same entity…"

("Clarification Order"). *Id.* at ECF 267. However, the Clarification Order also specifically

provided in paragraph 11 that:

> a. [o]n or before February 23, 2023, 47 East may file a notice in this court, advising
> the court and interested parties that it has withdrawn its request that [the 1801
> Debtor]'s appellate brief in New York be stricken because Versa and [the 1801
> Debtor] are not the same entity and, therefore, [the 1801 Debtor] lacks standing to
> take the appeal.
> b. If the notice described in Paragraph 11.a above is not timely filed, by separate
> order, this court will STRIKE AND DISALLOW the proof of claim 47 East has
> filed in the 1801 bankruptcy case based upon the application of judicial estoppel.

*Id.*

On February 21, 2023, 47 East filed a "notice of 47 East to the Court and interested

parties in accordance with [the Clarification Order]" ("47 East Notice") representing that:

> …on February 21, 2023, before 47 East had the opportunity to withdraw that
> portion of *47 East's Motion for an Order Striking All or a Portion of Appellants'
> Briefs and Adjourning this Appeal to the June 2023 Term* (the '*Motion to Strike*')

5

'request[ing] that [the 1801 Debtor]'s appellate brief in New York be stricken because Versa and [the 1801 Debtor] are not the same entity and, therefore, [the 1801 Debtor] lacks standing to take the appeal,' the Supreme Court of the State of New York, Appellate Division: First Judicial Department…where the [State Action Appeal] is pending, entered the order attached hereto as <u>Exhibit A</u>…denying the [47 East Cross-Motion to Strike] in its entirety.

Given denial of the [47 East Cross-Motion to Strike] in its entirety, 47 East believes that no further action in the [New York Appellate Division] is required for 47 East to be in compliance with the [Clarification Order] and to preserve 47 East's proof of claim filed in the [1801 Debtor] bankruptcy case…

*Id.* at ECF 271.

Exhibit A attached to the 47 East Notice is an order entered by the New York Appellate Division

on February 21, 2023 ("February 21 Order") stating that:

Appeals having been taken to this Court from an order of the [New York Supreme Court], entered on or about April 27, 2022,

And defendants-appellants having moved for an order enlarging the record on appeal by taking judicial notice of a transcript in the Chapter 11 bankruptcy action entitled *In re: Domus BWW Funding, LLC and 1801 Admin, LLC,* No. 22-11162(ELF) (Bank. E.D. Pa. (M-2023-00232),

And plaintiff-respondent having cross-moved for an order striking the motion to enlarge the record to the extent said motion is purported to have been filed by [the 1801 Debtor], a non-party (M-2023-00315),

Now, upon reading and filing the papers with respect to the motion and cross motion, and due deliberation having been had thereon,

It is ordered that the motion and cross motion are both denied.

*Id.* at Ex. A.

On February 22, 2023, the 1801 Debtor filed a motion for entry of an order striking and

disallowing the 47 East POC and awarding monetary sanctions against 47 East ("Motion to

Strike 47 East POC") for filing a notice which failed to comply with the Clarification Order and

which the 1801 Debtor described as misleading given that the 47 East Application still remained

pending before the New York Appellate Division. Case No. 22-11162 ECF 274 ¶ 1, 3.

On February 23, 2023, 47 East filed a "Supplemental Notice of 47 East to the Court and

Interested Parties in Accordance with [the Clarification Order]" ("47 East Supplemental Notice")

stating, *inter alia*, that:

> …on February 21, 2023, counsel to 47 East contacted the [New York Appellate
> Division] Clerk's Office regarding its desire to withdraw its request to strike the
> appellate brief of [the 1801 Debtor] for lack of standing and inquired what, if any,
> actions should be take [sic] by 47 East to effectuate the withdraw [sic] in light of
> the [February 21 Order].

> …on February 22, 2023, 47 East filed a letter…with the [New York Appellate
> Division] under Motion No. 0683, for the avoidance of any doubt, stating that 47
> East withdraws the [47 East Cross-Motion to Strike] and stating 47 East's
> understanding based on its discussion with the Clerk's Office that the [February
> 21 Order] had superseded the [47 East Cross-Motion to Strike] and [47 East
> Application]…

> …on February 22, 2023, 47 East filed a second letter…with the [New York
> Appellate Division] under Motion No. 0683 further clarifying, for the avoidance
> of any doubt, that 47 East withdraws the [47 East Cross-Motion to Strike] and the
> [47 East Application]…

*Id.* at ECF 276.

On February 24, 2023, the 1801 Debtor filed a supplemental declaration in support of the

Motion to Strike 47 East POC explaining that due to the manner in which 47 East filed the

second letter referenced in the 47 East Supplemental Notice – by attaching it to the docket

number associated with the already denied 47 East Cross-Motion to Strike rather than to the

docket number associated with the 47 East Application – the 1801 Debtor remained concerned

that the 47 East Application remained pending and that the New York Appellate Division would

not understand that the second letter was intended to withdraw the 47 East Application. *Id.* at

ECF 283 ¶¶ 9-11.

On the same day, a hearing was held on the Motion to Strike 47 East POC ("47 East POC

Hearing"). *Id.* at ECF 286. During the 47 East POC Hearing, the following exchange occurred:

> MR. LEDWIDGE [then-counsel for 47 East]: Before you get to argument, Your Honor, I just wanted to state that we've asked for the Court's guidance in our initial notice; we continue to ask for guidance right now to resolve this matter. We are ready and able and willing to do so, and rather than have the Court go through oral argument on this ministerial issue that can be easily resolved, I think this is something the parties can work out, and we'd request that Mr. Karalis' clients consider that rather than going through oral argument on this today.
> THE COURT: Mr. Karalis? What's your reaction to that?
> MR. KARALIS [bankruptcy counsel for the Debtors]: Your Honor, I think it's a little late to make that statement at this moment. There are things that occurred that I think need to be addressed, and frankly, I am concerned that the parties have been left to try to work something out; that has been an unsuccessful effort.
> THE COURT: Okay. Here is what we're going to do, because I have some thoughts about that. I am going to send everyone else to the waiting room and I'm just going to stay here with Mr. Karalis and Mr. Ledwidge, the lead counsel in this matter, and we are going to talk about at least one possible resolution. If that works, fine. If not, we're going to go right back to argument.

Id. at ECF 291 Hrg. Tr. 9:18-10:15, Feb. 24, 2023 ("Feb. 24 Hrg. Tr.").

As such, lead counsel for the 1801 Debtor and for 47 East engaged in off the record settlement

discussions facilitated by the Court. Upon conclusion of those discussions, the parties returned to

the 47 East POC Hearing, and the following exchange occurred:

> THE COURT: Good morning, again. We're back on the record. There have been some settlement discussions and I'll ask Mr. Karalis to make a report.
> MR. KARALIS: Thank you, Your Honor. I did have a chance to speak with my client and I also spoke with Mr. Ledwidge who advised that he spoke with his client. It seems that my client is prepared to proceed along the lines that Your Honor suggested in our conference, that is that from our standpoint, a stipulation – the stipulation that I sent Mr. Jeremiah yesterday at 5 o'clock will be signed by both parties with the exception that paragraph 3 in that particular stipulation that said '[the 1801 Debtor] is the same entity that was formerly known as [Versa],' will be stricken from that stipulation, but as Your Honor suggested, Your Honor will enter an order of the Bankruptcy Court that makes it clear that if that particular argument is raised again before the New York Court, that obviously the consequence would be the Bankruptcy Court would basically strike their proof of claim in the 1801 bankruptcy case. That is acceptable to my client. Mr. Jeremiah also advised that 47 East is prepared to pay attorneys' fees, and obviously we will work out from now 'til 4 o'clock sort of how that works out and we'll have something to report to you at 4 o'clock, which I understand would be a continued hearing of this matter. Now having said that, from my client's perspective, we are prepared to have the stipulation signed, Mr. Ledwidge and I discussed about who would actually undertake to file it; I would like to suggest Mr. Daniels [special

litigation counsel for the 1801 Debtor before the New York Appellate Division] undertakes -- his firm undertakes to file it with the [New York Appellate Division], and when we talk to – when we're back on the record again at 4 o'clock, we hopefully will be able to report that it's been signed, it's been filed, and actually we will try to have it uploaded and, you know, made actually a record of this particular hearing by attaching it to our motion. So Your Honor will be actually able to see it by 4 o'clock. And then at 4 o'clock we can address whatever the procedure is we may have agreed upon as far as resolution of reimbursement of fees and costs incurred.

*Id.* at 11:9-12:21.

As such, the Court continued the 47 East POC Hearing to 4:00. *Id.* at 13:22-24. Later that

afternoon, the parties returned to the 47 East POC Hearing and the following exchange occurred:

THE COURT: Good afternoon, we're back on the record in the case of <u>Domus</u> and [1801 Debtor]…I'll state for the record that I'm aware on the docket – on the Bankruptcy Court docket is a copy of a filing in the [New York Appellate Division] of the stipulation that was discussed as part of the settlement at – in the morning hearing. So I'll give Mr. Karalis the floor and he can comment to the extent he needs to and then we can get to the attorneys' fees issue.

MR. KARALIS: So Your Honor, you are correct, we were successful in getting the stipulation signed, docketed in New York, and obviously I have filed on the Bankruptcy Court docket a copy of that, so you have the as-filed version. Having said that, we spent a lot of time getting that done, and Mr. Ledwidge and I have had a preliminary conversation regarding the fees. What I am going to propose to Your Honor is – and what my client has done is we gathered from the various firms what the fees are, and I will tell your Honor that we provided a –

THE COURT: I'm getting a bad feeling and you know why when I start hearing this, but go ahead.

MR. KARALIS: Well, Your Honor, what we did is we created a spreadsheet, we laid it out for Mr. Ledwidge, and it seems to me first and foremost that it would be better off for both clients if they had an opportunity to see if they can come to closure and resolve it without motion practice, which is only going to cost more fees and costs.

THE COURT: Right.

MR. KARALIS: Having said that, what we presented to Mr. Ledwidge is basically the fees and costs incurred for this particular [Motion to Strike 47 East POC], and from my client's standpoint when they made the request, they were envisioning the following: As a result of what 47 East did, we had a cost last week on this motion to clarify. We have given to Mr. Ledwidge those fees and costs as well. Our view is we're prepared to try to make some type of closure because they're both interrelated. All of this came about as a result of what 47 East started. So having said that, we've given it to him, that's why we thought if Your Honor could indulge us, and I appreciate the multiple things happening.

Friday afternoon…if you would indulge us for 30 minutes, or in the alternative, if you had some time on Monday that we could just reconvene, because if in fact the clients can make a meeting of the mind on this, we can give you a number, you can put it in the order, and it's done in all respects, as far as the fees.

THE COURT: Okay, a couple – my reaction to that is if you can reach an agreement, couldn't you just file a stipulation, and if you can't reach an agreement, wouldn't you want to have – have to go to motion practice anyway…

MR. KARALIS: That is correct, Your Honor, I do agree with that.

…

THE COURT: Okay. Mr. Ledwidge? Do you wish to be heard on this?

MR. LEDWIDGE: Yes, thank you, Your Honor. We agree with Mr. Karalis that, you know, further motion practice with respect to attorneys' fees would certainly be a drain on costs and fees for clients of both parties. And we do believe, or we should be able to get to an agreement on this. As Mr. Karalis said, he did send us some preliminary numbers, and at this point I think it would just be helpful for a little guidance from Your Honor as to the scope of fees that you had envisioned when we had discussed this during the chambers conference. And I'm just looking on my screen here with the table that Mr. Karalis had sent and the fees that are included here fall into two categories. We have the category for the motion before your Honor today. The second category is with respect to the motion to clarify. That was before Your Honor last week. And within each of those categories, there are fees, with respect to, of course, Mr. Karalis' firm. Then also for Perkins Coie and Gelber Santillo, which is the Debtor's State Court special litigation counsel. We understand, you know, the fees that Mr. Karalis has incurred with respect to this motion and that's what we thought Your Honor had in mind initially, but of course, in order for the parties to reach an amicable agreement here would be helpful to have some guidance and, you know, 47 East, you know, does at this point think that, you know, fees in connection with the prior motion to clarify and, you know, fees incurred by counsel, State Court counsel, you know, would fall out of the scope of what we think is, you know, reasonable for this.

…

THE COURT: It's a fair question, and I can see how it would be helpful to the parties. I'll leave you in the room here; I just want to take a very short recess…I think I'd like to give you some guidance on that issue. So just sit tight, all right?

*Id.* at 14:17-19:2.

Shortly thereafter, the 47 East POC Hearing reconvened and the Court explained:

> Okay, we're back on the record. I did want to just take a moment to reflect on the question…I've come out very clearly in my mind how to answer the question. There are no fees for the [Clarification Motion]. I didn't grant them at the time, it didn't occur to me to grant them at the time…on balance, when I look at everything that occurred on the [Clarification Motion], both substantively and procedurally, I think it's too late in the day, and there are no fees for that. Fees are

limited to the [Motion to Strike 47 East POC], to – which was – I thought was necessary to be filed in order to implement paragraph 11 of the [Clarification Order]. So hopefully that will help you. It will obviously narrow what the scope of the relief is here. But that's my ruling. So I will – I have an order that is ready to go, other than on the attorneys' fees, that addresses the other issues that we discussed in the morning. I will now add to that order a provision that authorizes the fees, and why don't I just set a 30-day deadline for filing a motion if the parties can't otherwise resolve it.

*Id.* at 19:6-20:3.

When counsel for 47 East asked the Court for further clarification regarding whether fees incurred by non-bankruptcy counsel to the Debtors were included in the fee award, particularly given that 47 East believed that "the fees and costs of this motion practice could have been avoided by a simple phone call[,]" the Court responded:

[t]hat's the classic issue. Fees – the fees to which the Debtor is entitled to are reasonable fees. There are a plethora of Court decisions analyzing fee applications or fee requests both in the bankruptcy context and in the fee shifting context where multiple firms worked on a matter. The firms I think who were involved here have all been appointed by the Court, so they are professionals who are – who represent the estate. There's no reason why multiple firms can't all be compensated, it just has to be reasonable. And if it's not reasonable and you can't reach an agreement, you'll have to ask the Judge to decide what's reasonable. But there's no per se limitation on this to the general bankruptcy counsel's firm. And I'll add just one extra point about that. That shouldn't surprise us because the issues in this case involved what occurred in the Courts in New York and New York procedure. So it strikes me as very reasonable that the appellate counsel in New York would have been involved in this. So I think the outcome will necessarily have to involve multiple firms. It still has to be reasonable though, and the firms have to try to avoid duplication. How that shakes out in an individual case on the particular facts is very detail-oriented. So I'll leave it at that.

*Id.* at 20:12-21:16.

The Court also commented that "…this is an agreement. I'm not envisioning anything else other than a paragraph that says that pursuant to the parties' agreement, Debtor is awarded attorneys' fees in an amount to be agreed upon or to be determined by a motion, something to that effect.

I'll draft the exact words. Yes, I am not going to put anything that makes any findings. This is a

settlement." *Id.* at 22:23-23:4.

On February 27, 2023, the Court entered an order ("Settlement Order")[2] providing that:

1. The [Motion to Strike 47 East POC] is SETTLED on the terms stated in open court on February 24, 2023.
2. The deadline in Paragraph 11.a of the [Clarification Order] is EXTENDED to February 24, 2023.
3. By filing the Stipulation to Withdraw Application to Strike (M#683)…in the [New York Appellate Division]…[47 East] has satisfied the requirements of Paragraph 11.a of the [Clarification Order].
4. If 47 East asserts in its appellate brief in the [New York Appellate Division] that Versa Capital Management LLC and Debtor 1801 Admin, LLC ('1801 Admin') are not the same entity and, therefore, that 1801 Admin lacks standing to take the appeal, 1801 Admin may renew its request for the relief described in Paragraph 11.b. of the [Clarification Order].
5. Pursuant to the settlement, [the 1801 Debtor] is awarded attorney's fees incurred in filing and prosecuting the [Motion to Strike 47 East POC].
6. If the parties reach an agreement regarding the attorney's fees, they shall file a Stipulation on or before March 27, 2023.
7. If the parties cannot reach an agreement regarding the attorney's fees, then on or before March 27, 2023, [the 1801 Debtor] may file a motion for award of attorney's fees.

Case No. 22-11162 ECF 289.

On February 28, 2023, an order was entered re-assigning the case to the undersigned upon Judge

Frank's retirement. *Id.* at ECF 290.

On March 9, 2023, counsel for the 1801 Debtor provided counsel for 47 East with the

invoices issued by Gelber, Perkins Coie, and Karalis P.C. totaling $85,676.10 incurred in

connection with the Motion to Strike 47 East POC, and requested a response regarding 47 East's

position on the proposed attorneys' fees by March 17, 2023. *Id.* at ECF 310 ¶ 43. Counsel for the

1801 Debtor sent a follow up email to counsel for 47 East on March 17, 2023 inquiring as to 47

---

[2] An order memorializing the settlement of the Motion to Strike 47 East POC was originally entered February 24, 2023 but that order was superseded by the amended Settlement Order entered on February 27, 2023. Case No. 22-11162 ECF 288, 289.

East's position regarding the proposed fees. *Id.* at ¶ 44. On March 22, 2023, counsel for 47 East responded advising that "[o]ur client has declined to stipulate to payment of the requested fees. 47 East reserves all rights." *Id.* at ¶ 45.

As such, on March 27, 2023, the 1801 Debtor filed a motion for entry of an order awarding attorneys' fees and costs against 47 East pursuant to the Settlement Order ("Fee Motion"). Case No. 22-11162 ECF 310. Specifically, the Fee Motion sought an award of attorneys' fees in the amount of $81,558.00 and costs in the amount of $1,000.60 plus additional fees and costs incurred preparing, filing, and serving the Fee Motion itself.[3] *Id.* at ¶¶ 6, 65. On May 26, 2023, 47 East filed an opposition response to the Fee Motion primarily arguing that "[w]hether 47 East's notice of withdrawal properly complied with the [Clarification Order] could not possibly justify $82,558.60 in billing[,]" and that "[h]ad the 1801 Debtor been truly concerned about correcting the record in the [New York Appellate Division], the 1801 Debtor would have coordinated with (rather than ignore) 47 East to effectuate a withdrawal of the request that the 1801 Debtor's Appeal Brief be stricken, such as by the submission of a document in a form satisfactory to the 1801 Debtor." *Id.* at ECF 350 ¶¶ 7, 8.

On August 3, 2023, a hearing was held on, *inter alia*, the Fee Motion. *Id.* at ECF 413. The Court requested certain additional submissions to aid in crafting an appropriate fee award. The supplemental submissions and responses thereto were all filed as of August 31, 2023, making this matter ripe for adjudication. *Id.* at ECF 421, 426.

---

[3] The 1801 Debtor submitted several supplemental filings detailing the fees and costs incurred in connection with the Fee Motion. Case No. 22-11162 ECF 339, 366, 367, 419, 420.

### III.    DISCUSSION

#### A.  Applicable Legal Principles

As explained by Judge Frank during the 47 East POC Hearing, "the fees to which the Debtor is entitled to are reasonable fees." Feb. 24 Hrg. Tr. 20:20-21. The party requesting fees bears the initial burden of demonstrating the reasonableness of the requested fees by submitting evidence supporting the hours worked and rates claimed. *Community Ass'n Underwriters of America, Inc. v. Queensboro Flooring Corp.*, Civ. Act. No. 3:10-CV-1559, 2016 WL 1076910, at *2 (M.D. Pa. March 18, 2016); *River Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13cv3669 (DLC), 2015 U.S. Dist. LEXIS 82940, at *30 (S.D. N.Y. June 25, 2015); *Blakey v. Continental Airlines, Inc.*, 2 F. Supp. 2d 598, 602 (D. N.J. 1998) ("The party requesting fees bears the burden of proving that the request is reasonable.").

Courts typically apply the lodestar method to calculate a reasonable fee award under the circumstances of the case. *Community Ass'n Underwriters,* 2016 WL 1076910, at *2 ("[T]he starting point for determining the reasonableness of attorney's fees is the lodestar calculation…") (internal citation omitted). *See also In re Diloreto*, 388 B.R. 637, 652 (Bankr. E.D. Pa. 2008). The lodestar calculation is performed by (1) identifying the reasonable rate for the type of work performed by beginning with the attorney's usual billing rate in comparison with the prevailing market rates in the relevant community, and (2) multiplying the reasonable rate by the number of hours reasonably expended. *Pa. Env't. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 231–32 (3d Cir. 1998). With respect to the number of hours reasonably expended on a matter, "[h]ours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Courts have broad discretion to determine the number of hours reasonably expended. *In re Crystal Cathedral*

14

*Ministries,* Case No. 2:12-bk-15665-RK, 2020 WL 1649619, at *56 (Bankr. C.D. Cal. March 31, 2020).

In determining reasonableness, the court must closely scrutinize the request to ensure the fees do not exceed a reasonable amount. *Endurance Am. Spec. Ins. Co. v. Hospitality Supp. Sys. LLC,* Civ. Act. No. 17-3983, 2018 WL 3861808, at *3 (E.D. Pa. Aug. 14, 2018). In particular, when awarding fees, courts must conduct "a thorough and searching analysis" to decide whether the hours were reasonably expended for each purpose described, and exclude those which are excessive, redundant, or unnecessary. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005) ("in reviewing the hours claimed in a fee application, a district court must conduct a 'thorough and searching analysis' to identify [excessive, redundant, or unnecessary] charges."); *Maldonado v. Houstoun,* 256 F.3d 181, 184 (3d Cir. 2001) ("In calculating the hours reasonably expended, a court should 'review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary.'"). This task involves evaluating the billing records "line, by line, by line" and a fair amount of "judgment calling" based on the court's experience. *Endurance,* 2018 WL 3861808, at *5; *Tangible Value, LLC v. Town Sports, Int'l, LLC*, 2014 WL 6485972, at *5 (D. N.J. Nov. 19, 2014).

Courts may also deduct hours that are inadequately documented, and the presentation of billable hours should include sufficient detail to permit the court to determine how the hours were divided. *Blakey,* 2 F. Supp. 2d at 604. "[A] bankruptcy judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession," will inform any analysis. *In re Busy Beaver Bldg. Ctrs., Inc.,* 19 F.3d 833, 854 (3d Cir. 1994). All that said, the essential goal in fee shifting is to do

"rough justice," not to achieve "auditing perfection." *Goodyear Tire & Rubber Co. v. Haeger*,

137 S. Ct. 1178, 1187 (2017). Therefore, a court may use estimates in calculating an attorney's

time, and decide that all or only a percentage of a category of expenses were incurred solely

because of the party's conduct. *Id.*

### B. An Award of $113,933.87 in Attorneys' Fees for Karalis P.C. and $59,446.80 in Attorneys' Fees for Perkins Coie Is Reasonable.

To support its Fee Motion, the 1801 Debtor provided the time sheets and invoices of its

counsel in this bankruptcy, Karalis P.C., its special litigation counsel, Perkins Coie, and the

Domus Debtor's special litigation counsel, Gelber, which evidence the hours worked and rates

claimed[4] in connection with filing and prosecuting the Motion to Strike 47 East POC. *See* Case

No. 22-11162 ECF 310 Ex. E, Ex. F, Ex. G; ECF 339 Ex. H; ECF 366; ECF 367; ECF 419; ECF

420; ECF 421. The materials submitted in support of the Fee Motion specify the date when the

work was performed, the attorney performing the work, the nature of the work, the amount of

---

[4]        47 East has not objected to the hourly rates charged by Karalis P.C., counsel to the 1801 Debtor in this
bankruptcy. The 1801 Debtor has offered evidence that those rates are in line with the prevailing market rates in the
relevant community. *See* Case No. 22-11162 ECF 310 Ex. 2 of Ex. E. The Court agrees that the hourly rates charged
by Karalis P.C. are reasonable compared to the prevailing market rates in the community for other similarly situated
bankruptcy practitioners. *See Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).
        47 East has, however, objected to the hourly rates charged by Perkins Coie, arguing that they do not reflect
the prevailing rates in the Philadelphia market as evidenced by the Community Legal Services Fee Schedule. Case
No. 22-11162 ECF 350 ¶¶ 56-59. However, in making this argument, 47 East provides no explanation regarding
why Philadelphia would be the relevant legal community when Perkins Coie's involvement in this matter has related
entirely to New York litigation. Notably, 47 East does *not* dispute that 47 East's New York rates are reasonable for
the New York market. *Id.* at ECF 426 p. 2. The Court has no basis to conclude that the relevant legal community is
Philadelphia given that all of Perkins Coie's practice in this case has occurred in the New York market in connection
with the State Action Appeal. Even were the Court to conclude that Philadelphia is the relevant legal community, 47
East has not provided any basis for this Court to disregard the evidence submitted by Perkins Coie that its rates are
comparable to those of similarly situated firms in Philadelphia. *See id.* at ECF 421 Ex. A, B. While in the absence of
any evidence provided by the moving party, the Community Legal Services Fee Schedule could provide informative
guidance on Philadelphia rates generally, 47 East has not addressed why the Court should ignore the evidence
submitted by Perkins Coie that its rates are in line with rates charged by Philadelphia law firms of similar caliber
performing work of similar complexity as Perkins Coie or why the Community Legal Services Fee Schedule is
superior to the evidence submitted by Perkins Coie regarding the reasonableness of its rates compared to the
Philadelphia market. *See Maldonado*, 256 F.3d at 187 (considering Community Legal Services Fee Schedule where
parties submitted "very little evidence" of the reasonableness of the rates of counsel to the party requesting fees). As
such, in light of the evidence submitted by Perkins Coie relating to law firms of similar caliber performing similar
work, the Court finds that the rates charged in this matter are reasonable and reflective of those charged by similar
law firms performing similar work in either New York or Philadelphia.

time spent on the task, and the hourly rate charged for that particular task. For the most part, the

Court finds the amount requested and time spent on this matter generally reasonable aside from

some exceptions which will be addressed in turn.[5]

---

[5]        Certain objections raised by 47 East will only be briefly addressed in this footnote.

First, 47 East argues that by February 22, 2023, 47 East had resolved any issues with the 47 East Notice by
filing the second letter with the New York Appellate Division attempting to withdraw the 47 East Application in
accordance with instructions from its Clerk's Office; that after that point, there should have been no need for any
party to do any further work on the Motion to Strike 47 East POC; and that any further issues after that point should
have been resolved with a phone call to counsel for 47 East rather than through motion practice. As a result, 47 East
argues the 1801 Debtor should not be able to recover any fees incurred after February 22. Case No. 22-11162 ECF
350 ¶¶ 76-79. The Court disagrees. First, Judge Frank specifically determined that the Motion to Strike 47 East POC
"was necessary to be filed in order to implement paragraph 11 of the [Clarification Order]" and memorialized that in
his order awarding "attorney's fees incurred in filing ***and prosecuting*** the [Motion to Strike 47 East POC]." Feb. 24
Hrg. Tr. 19:20-21; Case No. 22-11162 ECF 289 (emphasis added). Additionally, it is not at all apparent that the
dispute could have been resolved with a simple phone call, as it did in fact take Judge Frank's assistance to finally
negotiate a resolution to the deficiencies in the 47 East Notice and 47 East Supplemental Notice. Finally, 47 East
supplies no legal support for its position that the 1801 Debtor was required to resolve its dispute consensually rather
than take the dispute to the Court for assistance such that this Court should deny fees incurred after February 22,
2023 solely on that basis.

Next, 47 East argues that the 1801 Debtor should not be able to recover fees incurred in connection with
bringing and defending the Fee Motion based largely upon Judge Frank's statement at the 47 East POC Hearing
that: "Fees – the fees to which the Debtor is entitled to are reasonable fees. There are a plethora of Court decisions
analyzing fee applications or fee requests both in the bankruptcy context and in the fee shifting context where
multiple firms worked on a matter…" Feb. 24 Hrg. Tr. 20:20-25; Case No. 22-11162 ECF 350 ¶¶ 80-83. 47 East
seems to argue essentially that because Judge Frank likened a future request for fees to fee applications for estate
professionals and estate professionals cannot recover fees expended preparing and defending their fee applications,
the 1801 Debtor should not be able to recover fees for bringing the Fee Motion. Case No. 22-11162 ECF 350 ¶¶ 80-
83. The Court observes in response to this that 47 East: (1) appears to ignore that Judge Frank likened a future
request for fees to a fee application ***or*** fee requests in other fee shifting contexts, and made no such declaration that
any future request for fees would be treated as a fee application; (2) that in likening a future fee request to a fee
application or a request in another fee shifting context, he was merely addressing that there is no per se rule against
shifting the fees of multiple firms as long as the request was reasonable; and (3) Judge Frank was not called upon to
speculate regarding whether fees incurred bringing a motion for fees would be compensable or not. *See* Feb. 24 Hrg.
Tr. 20:12-21:3. This Court adopts a broad interpretation to Judge Frank's determination that fees incurred bringing
the Motion to Strike 47 East POC were appropriate. Particularly given that a request for fees was included in the
Motion to Strike 47 East POC and that the 1801 Debtor would not have incurred fees bringing this Fee Motion but
for 47 East's actions in failing to initially comply with the Clarification Order, it strikes the Court as entirely
appropriate to permit reasonable compensation for fees incurred in connection with the Fee Motion as well. *See* Case
No. 22-11162 ECF 274 ¶ 34.

47 East also takes issue with the staffing mix on the Motion to Strike 47 East POC. Case No. 22-11162
ECF  350 ¶¶ 62-66. Upon review of the billing records submitted in support of the Fee Motion, the Court finds the
staffing mix largely appropriate and for the most part has managed to account for staffing issues with reductions
based on excessiveness; duplication of services; or other bases. *See infra.* This matter involved a very complex
procedural history particularly in state court, both at the trial level and now at the appellate level, and required
communication and coordination among bankruptcy counsel as well as state court counsel. Furthermore, it appears
that two attorneys were the most involved as the lead counsel on this matter – Attorney Karalis on the bankruptcy
side and Attorney Daniels on the State Action side. For the most part, the other attorneys merely played supporting
roles to those two attorneys on an as needed basis, and the Court finds nothing objectionable about that arrangement.

### i.  Gelber

As previously mentioned, Gelber was approved as special litigation counsel solely to the Domus Debtor in connection with the State Action Appeal. Case No. 22-11162 ECF 310 Ex. G ¶1. Gelber explains only in the most conclusory fashion that as a party to the State Action Appeal it had to interact with the 1801 Debtor and counsel as a result of 47 East's failure to comply with the Clarification Order. *See id.* at ¶ 6. The invoices and timesheets submitted by Gelber fail to provide any more insight into exactly how the Domus Debtor's involvement was at all necessary to promoting compliance with paragraph 11 of the Clarification Order, which on its face only impacted and involved the 1801 Debtor. *See id.* at ECF 267. The entries largely relate to Gelber reviewing pleadings and participating in general team conferences. *See id.* at ECF 310 Ex. 1 of Ex. G; ECF 339 Ex. H. It is not at all apparent to the Court why 47 East should have to pay Gelber's expenses when the Motion to Strike 47 East POC is completely unrelated to Gelber's client. As such, the Court declines to award any of the fees requested by Gelber, and additionally, will deduct entries billed by Karalis, P.C. related to drafting Gelber's declarations in support of the Fee Motion as detailed in footnote 6[6] in the amount of $602.

### ii.    Vague Entries

It is well settled that "[a]ttorneys seeking compensation must document the hours for which payment is sought 'with sufficient specificity.' More specifically, our jurisprudence has

---

[6] The Court will disallow the following entries on the basis described above: a March 7, 2023 entry showing Attorney Karalis billed $121 to "[r]eview email from Zach Gelber & reply re: 47 East[;]" a March 7, 2023 entry showing Attorney Karalis also billed $60.50 to "[r]eview email from Zach Gelber re: Gelber & Santillo invoice for fees & costs with respect to Debtors' Motion to Strike 47 East POC[;]" a March 22, 2023 entry showing Attorney Seitzer of Karalis P.C. billed $135 to "[p]repare[] Gelber Declaration re: Motion for Attorney Fees re: Motion to Strike[;]" a March 23, 2023 entry showing Attorney Seitzer billed $135 to "[p]repare[] revised Gelber Declaration re: Motion for Attorneys' Fees[;]" a March 23, 2023 entry showing Attorney Karalis billed $60.50 to "[r]eview email from Paul Halpern & reply re: Gelber & Santillo[;]" a March 24, 2023 entry showing Attorney Seitzer billed $45 to "[p]repare[] email to Gelber re: Declaration regarding Motion for Attorneys' Fees[;]" and an April 3, 2023 entry showing Attorney Seitzer billed $45 for "[p]repar[ing] email to Gelber re: Motion for Attorneys' Fees." Case No. 22-11162 ECF 339 Ex. H; ECF 367 Ex. 1.

established that '[a] fee petition is required to be specific enough to allow the [] court 'to

determine if the hours claimed are unreasonable for the work performed.' It is an established

proposition of law that '[w]here the documentation of hours is inadequate, the [] court may

reduce the award accordingly.'" *Washington v. Philadelphia County Court of Common Pleas*, 89

F.3d 1031, 1037 (3d Cir. 1996) (internal citations omitted). That said, while "a fee petition

should include 'some fairly definite information as to the hours devoted to various general

activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes

of attorneys, e.g., senior partners, junior partners, associates[,]'" "it is not necessary to know the

exact number of minutes spent nor the precise activity to which each hour was devoted nor the

specific attainments of each attorney." *Id.* at 1037-38 (internal citation omitted).

The Court does find that certain entries, detailed in footnote 7,[7] are simply not specific

enough to permit the Court to assess the reasonableness of the time spent on the work performed

---

[7]    On February 21, 2023, Attorney Daniels, a partner at Perkins Coie with a billing rate of over $1,000/hour,
billed .7 hours for a total of $708.75 for "[a]ttention to hearing transcript on motion to clarify and emails regarding
same[.]" Case No. 22-11162 ECF 366 Ex. 1. The Court finds this description far too vague in the absence of any
explanation regarding what "attention to hearing transcript" actually entails, especially in light of Attorney Daniels'
very high billing rate. As such, the Court will reduce this entry by half to account for its vagueness.

The same day, Attorney Daniels billed .8 hours at his rate of over $1,000/hour for a total of $810 for
"[a]ttention to 47 East notice and communications with Mr. Karalis and client regarding same[.]" *Id.* While the
Court has no issue with Attorney Daniels billing for communications with Attorney Karalis regarding the 47 East
Notice, it simply has no idea what "attention" to that notice entails. As such, the Court must similarly reduce this
entry by half to account for that.

Also on February 21, 2023, Attorney Johnsen, senior counsel at Perkins Coie, billed .2 hours at her very
high billing rate of over $1,000/hour for a total of $228.60 to "[c]onference with D. Daniels regarding bankruptcy
court order." *Id.* The entry includes no explanation regarding which bankruptcy order they discussed, leaving the
Court unable to determine the reasonableness of this entry. Accordingly, it will be eliminated in its entirety.

On February 21, 2023, Attorney Daniels billed .4 hours for a total of $405 to "[c]onfer with J. Taber
regarding bankruptcy developments" without providing any description of the developments they discussed. As
such, the Court has no way of knowing what this conference related to and must eliminate this entry. *Id.*

On February 21, 2022, Attorney Taber, associate at Perkins Coie, billed 1 hour for a total of $855 to
"[r]eview transcript of bankruptcy court proceedings" without specifying which proceedings. *Id.* As such, the Court
simply has no way to assess the reasonableness of this entry and will eliminate it for vagueness.

Finally, on February 21, 2022, Attorney Taber billed .4 hours for a total of $342 for "[t]elephone
conference with D. Daniels regarding bankruptcy developments" without shedding any light on which developments
were discussed. *Id.* Therefore, without any way to assess the reasonableness of this entry, the Court must eliminate it
for vagueness.

On February 22, 2023, Attorney Park, an associate at Perkins Coie, billed 1 hour for a total of $657 for
"attention to the bankruptcy court filing regarding 47 East's notice[.]" *Id.* The entry lacks any explanation of what it

in a meaningful way, and, accordingly, the award will be adjusted downward in the amount of

$613 for Karalis P.C. and $4,467.60 for Perkins Coie to account for that.

### iii.  Excessive Time

As previously mentioned, "[h]ours are not reasonably expended if they are excessive…"

*Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The Court does find that time spent

on certain tasks detailed in footnote 8[8] appears to be excessive such that a reduction in the

---

means to give "attention" to a matter and does not identify the "bankruptcy court filing" referenced, preventing the Court from assessing the reasonableness of spending a full hour on this task. As such, the Court must eliminate this entry.

On February 23, 2023, Attorney Taber billed .2 hours for a total of $171 to "[r]eview filed documents and attention to emails" without identifying which documents were reviewed, to whom the emails were addressed, or the subject matter of the emails, rendering the entry far too vague to permit compensation for it. *Id.*

The same day, Attorney Park billed .5 hours for a total of $328.50 for "[a]ttention to draft Daniels Declaration." *Id.* Again, the Court simply does not know what that task would have entailed and as such, must reduce this entry by half due to vagueness.

Also on February 23, 2023, Attorney Karalis billed .6 hours for a total of $363 for "Zoom Meeting with David Lorry, David Daniels, Joe Mintz, & Paul Halpern." Case No. 22-11162 ECF 310 Ex. 1 of Ex. E. Because this entry fails to identify the subject matter of the meeting, the Court cannot assess whether the length of this meeting was reasonable nor whether the entirety of the meeting related to the Motion to Strike 47 East POC. The Court is particularly sensitive to this given the involvement of Attorney Mintz in this meeting, who has not been involved in the Motion to Strike 47 East POC, as he represents other affiliates of the Debtors in connection with an examination requested by 47 East pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004") unrelated to the Motion to Strike 47 East POC, leading the Court to suspect that this meeting was not solely related to the Motion to Strike 47 East POC. *See* Case No. 22-11162 ECF 241; ECF 254; ECF 270 Hrg. Tr. 4:21-23, Feb. 17, 2023. *See generally* Feb. 24 Hrg. Tr. For those reasons, the Court must eliminate this entry.

On February 24, 2023, Attorney Park billed .5 hours for a total of $328.50 for "[a]ttention to draft Daniels Declaration" without indicating what that actually entailed. Case No. 22-11162 ECF 366 Ex. 1. Accordingly, the Court must eliminate this entry for vagueness.

On February 24, 2023, Attorney Greenbaum, of Karalis P.C., billed .5 hours for a total of $250 to "[a]nalyze Hearing [sic] results & Court's requirements to assess damages." Case No. 22-11162 ECF 310 Ex. 1 of Ex. E. It is entirely unclear to the Court what "analysis" would be required after the 47 East POC Hearing or what "analyzing" hearing results or requirements for assessing damages actually involves. As such, the Court will disallow this entry in its entirety.

On February 27, 2023, Attorney Daniels billed .3 hours for a total of $303.75 for "[a]ttention to order regarding motion to strike and emails regarding same[.]" Case No. 22-11162 ECF 366 Ex. 1. Again, the Court simply has no idea what giving "attention" to an order entails and cannot assess the reasonableness of this entry, forcing the Court to reduce this entry by half.

On March 23, 2023, Attorney Daniels billed .4 hours for a total of $405 for "[a]ttention to declaration regarding fee application[.]" *Id.* at Ex. 2. Again, the Court simply has no idea what constitutes giving "attention" to a declaration and cannot permit compensation for this entry due to impermissible vagueness.

[8]    On February 21, 2023, Attorney Karalis billed 1.10 hours for a total of $665.50 for "[r]eview of Notice of 47 East to Court in accordance with order dated 2/17/23 [DI 267]." Case No. 22-11162 ECF 310 Ex. 1 of Ex. E. The 47 East Notice is one and a half pages with a one page exhibit attached. *Id.* at ECF 271. As such, the Court finds that billing over an hour simply to review the 47 East Notice is excessive, and that this entry must be reduced by 75%.

On February 22, 2023, Attorney Karalis billed 2.40 hours for a total of $1,452 to "[r]eview &

revise draft Debtors' Motion to Strike POC." *Id.* at ECF 310 Ex. 1 of Ex. E. Attorney Karalis later billed 1.30 hours on the same day for a total of $786.50 for essentially the same task, specifically for "[a]dditional review & revisions Debtors' Motion to Strike 47 East POC." *Id.* The Court finds 2.40 hours dedicated to that task more than sufficient and will eliminate the entry billing $786.50 for additional review and revisions as excessive.

Also on February 22, 2023, Attorney Daniels billed six hours at over $1,000/hour for a total of $6,075 to "[p]repare draft declaration in support of [Motion to Strike 47 East POC]" after already billing two hours for the same task the previous day. *Id.* at ECF 366 Ex. 1. The Court finds the two hours drafting the declaration more than sufficient for a partner billing at such a high rate, and will as such, reduce the award by $6,075 as excessive.

On February 23, 2023, Attorney Karalis billed 3.20 hours for a total of $1,936 "[p]repar[ing] outline of Oral Argument re: Motion to Strike 47 East POC." *Id.* at ECF 310 Ex. 1 of Ex. E. The Motion to Strike 47 East POC essentially involved one issue – whether the 47 East Notice complied with the Clarification Order. Over 3 hours to prepare an outline for oral argument on this single issue strikes the Court as excessive, and accordingly, the Court will reduce this entry by half.

On February 24, 2023, Attorney Karalis billed 4 hours for a total of $2,420 "[p]repar[ing] for Hearing on 1801 Motion to Strike 47 East POC." *Id.* Again, given that the hearing would involve argument on a single issue, over 4 hours to prepare for the hearing strikes the Court as excessive, and as such, the Court will reduce this entry by half.

On February 27, 2023, Attorney Karalis billed .5 hours for a total of $302.50 to "[r]eview Order dated 2/24/23 (Entered on 2/27/23) re: Debtor's Motion to Strike 47 East POC." *Id.* The Settlement Order is only two pages long, Attorney Karalis played an instrumental part in negotiating the terms of the order, and the terms were extensively discussed during the hearing on the Motion to Strike 47 East POC. *See id.* at ECF 289; Feb. 24 Hrg. Tr. 10:9-15, 11:9-12:21, 15:2-8, 21:21-22:13. As such, the Court cannot fathom how it could take a half hour simply to review the order under those circumstances. Therefore, the Court will reduce this entry by half.

On June 7 and 8, 2023, Attorney Schachter, of Karalis P.C., billed a total of 4.6 hours for a total of $1,288 to research the application of Federal Rule of Bankruptcy Procedure 7068 ("Rule 7068") to contested matters in connection with a motion filed by 47 East for the Court to apply Rule 7068 to the Fee Motion ("Rule 7068 Motion"). Case No. 22-11162 ECF 356; ECF 419 Ex. 1. Attorney Schachter had already billed 7.7 hours conducting research on the Rule 7068 Motion earlier that week. *Id.* The Rule 7068 Motion was only three pages long with only a page and a half referencing any legal discussion. *Id.* at ECF 356. The issue in that motion was not complex. Over eleven hours of research on whether to apply Rule 7068 to the Fee Motion is excessive, and the Court will eliminate the entries billing 4.6 hours from consideration to account for that.

On June 15, 2023, Attorney Karalis billed 2.90 hours for a total of $1,754.50 to "[r]eview and revise draft Objection to 47 East Motion to Apply Rule 7068." *Id.* at ECF 419 Ex. 1. The Rule 7068 Motion was only three pages long with only a page and a half referencing any legal discussion. *Id.* at ECF 356. The issue in that motion was not complex. As such, almost three hours just reviewing and revising an objection to that motion strikes the Court as excessive. Therefore, the Court will reduce this entry by half.

Also on June 15, 2023, Attorney Karalis billed 2.10 hours for a total of $1,270.50 to "[d]raft & review outline of letter to Marty Weis [counsel to 47 East] re: two inaccurate 'factual background statements' in 47 East pleading opposing Fee Motion/1801 Debtor to renew request to Strike the 47 East POC if not corrected." *Id.* at ECF 419 Ex. 1. Taking over two hours to work on a letter regarding just two factual background statements appears excessive and thus the Court will reduce this entry by half.

On June 16, 2023, Attorney Karalis billed 1.10 hours for a total of $665.50 for "[a]dditional review & revisions to draft letter to Marty Weis re: inaccurate statements in Opposition to Fee Motion." *Id.* For the same reasons above, the Court finds this entry entirely excessive to address just two statements and will eliminate this entry from consideration.

Also on June 16, 2023, Attorney Karalis billed 2.50 hours for a total of $1,512.50 to "[r]eview & revise Objection to 47 East Motion to Apply Rule 7068." *Id.* Again, the Rule 7068 Motion was very short and not at all complex. Therefore, the Court will reduce this entry by half.

On June 22, 2023, Attorney Karalis billed 1.40 hours for a total of $847 to "[d]raft & review additional revisions to AJK Second Supplemental Declaration to Fee Motion." *Id.* Attorney Karalis had already billed 2.7 hours drafting and reviewing his second supplemental declaration in support of the Fee Motion. *Id.* The Court finds an additional 1.40 hours on top of that excessive, and will eliminate $847 from the final fee award.

On July 21, 2023, Attorney Daniels billed 2.80 hours to "[r]evise and edit draft written response to 47 East assertions regarding NY state proceeding for attorney fee motion." *Id.* at ECF 420 Ex. 1. On July 24, 2023, Attorney Daniels billed another 4.60 hours for a total of $4,657.50 to perform essentially the same task of "[r]evis[ing] and

amount of $8,684.125 for Karalis P.C. and $10,732.50 for Perkins Coie should be applied to

account for that as described in that footnote.

### iv.   Unnecessary Duplication of Services

In assessing the reasonableness of a requested fee award, courts must also disallow

compensation for unnecessary duplication of services. *See In re Manley Toys Ltd.*, Case No. 16-

15374 (JNP), 2018 WL 3213710, at *5 (Bankr. D. N.J. June 21, 2018) (citation omitted); *In re*

*Peter J. Schmitt Co., Inc.*, 154 B.R. 632, 637 (Bankr. D. Del. 1993). The Court does find that

some entries detailed in footnote 9[9] reflect unnecessary duplication of services such that a

reduction in the amount of $3,850 for Karalis P.C. should be applied to account for that as

described in that footnote.

---

edit[ing] draft written response to 47 East arguments regarding NY state court proceeding for attorney fee motion."
*Id.* For a high-level partner billing at over $1,000/hour, the first entry should be more than sufficient for that task and
as such, the Court will disallow the second entry in its entirety.

[9]     On June 6, 2023, Attorney Seitzer billed 1.8 hours for a total of $810 for "[p]reliminary research re: Motion
to apply Rule 7068 to Fee Motion" when an associate, Attorney Schachter, was also tasked with researching the
relatively simple issue involved in the Rule 7068 Motion. Case No. 22-11162 ECF 419 Ex. 1. The Court sees no
need for two attorneys to perform the same research on such a simple motion and as such, will disallow Attorney
Seitzer's entry as duplicative.

       For the same reason described above, the Court disallows Attorney Seitzer's June 12, 2023 bill of $1,305 to
do "[r]esearch re: 47 East Motion for Application of Rule 7068" as duplicative. *Id.*

       On June 15, 2023, Attorney Greenbaum billed 1.5 hours for a total of $750 to "[r]eview & revise Objection
to Rule 7068 Motion by 47 East" after Attorney Karalis had already spent substantial time doing the same task. *Id.*
Accordingly, the Court will eliminate this entry as both duplicative and excessive particularly given that the Rule
7068 Motion was not complex.

       On June 16, 2023, Attorney Greenbaum billed 1.70 hours for a total of $850 to "[r]eview, analyze & revise
Debtor's Objection to 47 East 7068 Motion." Again, because Attorney Karalis had already spent substantial time
doing the same task, the Court will eliminate this entry as both duplicative and excessive particularly given that the
Rule 7068 Motion was not complex. *Id.*

       On August 1, 2023, both Attorney Karalis and Attorney Seitzer billed .3 hours each to review the new
authority cited by 47 East for the hearing on the Fee Motion. *Id.* It is not at all clear to the Court that it was
necessary for two senior attorneys to review this authority in advance of the hearing on the Fee Motion, particularly
in light of Attorney Karalis acting as the lead attorney at the hearings. As such, the Court finds Attorney Seitzer
billing for this unnecessarily duplicative and will eliminate his entry.

### v.  Billing for Time Not Related to Motion to Strike 47 East POC or Fee Motion.

As discussed, the Settlement Order only permits the 1801 Debtor to recover attorneys' fees related to the Motion to Strike 47 East POC. The Court has identified certain entries detailed in footnote 10[10] which do not appear sufficiently related to the Motion to Strike 47 East POC and accordingly, a reduction in the amount of $702 for Karalis P.C. should be applied to account for that as described in that footnote.

### vi.  Paralegal Tasks

The Court also recognizes that the billing records do reveal some time billed by an attorney for a task more appropriate for a paralegal. "We have cautioned on a number of occasions that when a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable.'" *Planned Parenthood of Central New Jersey v.*

---

[10]     On February 22, 2023, Attorney Karalis billed .3 hours for a total of $181.50 for "[t]elephone conference with David Lorry re: Kinsella matter/47 East Notice." Case No. 22-11162 ECF 310 Ex. 1 of Ex. E. The Debtor has not provided any explanation for how "Kinsella matter" relates to the Motion to Strike 47 East POC or even what the "Kinsella matter" is, and as such, the Court will reduce this entry by half to account for that.
        Also on February 22, 2023, Attorney Karalis billed .4 hours for a total of $242 for "[t]elephone conference with Joe Mintz re: Bankruptcy Court Order dated 2/17/23." *Id.* As mentioned previously, Attorney Mintz represents non-debtor Versa parties in connection with their objection to 47 East's Rule 2004 Motion. Those parties did not make any appearance in connection with the Motion to Strike 47 East POC. Therefore, the Court cannot fathom how communications with Mr. Mintz would have involved the Motion to Strike 47 East POC and the Court will disallow this entry.
        On February 23, 2023, Paralegal Hysley of Karalis P.C. billed .3 hours for a total of $45 for "[r]eview of docket and prepare Certificate of No Response to 9019 Motion re: Global Settlement." *Id.* The only certificate of no response filed on February 23, 2023 for a "9019 Motion" was for settlement of a matter not even involving 47 East. *See id.* at ECF 279. Therefore, the Court will disallow this entry.
        On April 5, 2023, Attorney Karalis billed .3 hours for a total of $181.50 to "[d]raft & review email to Greg Segal, Joe Mintz, & Paul Halpern re: 2004 dates/Fee Motion." *Id.* at ECF 367 Ex. 1. Because scheduling the Rule 2004 examination is unrelated to the Motion to Strike 47 East POC, the Court will reduce this entry by half to account for that.
        On April 11, 2023, Attorney Karalis billed .4 hours for a total of $242 for "[r]eview of file to prepare for call with client re: Protective Order/Fee Motion." *Id.* at ECF 367 Ex. 1. The Debtors' motion seeking a protective order relates to the Rule 2004 Motion, not the Motion to Strike 47 East POC. *Id.* at ECF 348. As such, the Court will reduce this entry by half to account for that.
        On June 21, 2023, Attorney Seitzer billed .5 hours for a total of $225 for a "Zoom Meeting with AJK, Segal, Halpern & Lucian re: upcoming hearings on Motion for Attorneys' Fees & Protective Order." *Id.* at ECF 419 Ex. 1. Because the Debtors' motion for a protective order is not related to the Motion to Strike 47 East POC, this entry will be reduced by half to account for that.

*Attorney General of the State of New Jersey*, 297 F.3d 253, 266 (3d Cir. 2002) (internal citation

omitted). These entries are detailed in footnote 11,[11] and a reduction in the amount of $409.50

for Karalis P.C. will be applied to account for that.

### vii.  Costs

Finally, nowhere in the transcript from the 47 East POC Hearing or in the Settlement

Order does Judge Frank award costs incurred, only attorney fees. *See* Case No. 22-11162 ECF

289; Feb. 24 Hrg. Tr. 19:7-20:3. Accordingly, this Court has no basis to award costs and a

reduction in the amount of $2,661.60 for costs of Karalis P.C. and $318.50 for costs of Perkins

Coie will be applied on account of that.

## IV.    CONCLUSION

Based on the foregoing, the Court awards the 1801 Debtor $173,380.67 in attorneys' fees

against 47 East.

Date: September 28, 2023                       _____

                                              Honorable Ashely M. Chan
                                              United States Bankruptcy Judge

---

[11]    On February 21, 2023, Attorney Karalis billed .8 hours for a total of $484 to "[r]eview email from Writer's Cramp re: transcript of 2/17/23 Hearing Debtors' Motion to Clarify Relief Order dated 7/15/22 & 47 East Motion for 2004 Exam." Case No. 22-11162 ECF 310 Ex. 1 of Ex. E. Ordering a transcript strikes the Court as entirely administrative and as such, more appropriate for a paralegal to perform. Therefore, the Court will reduce the rate for this task to that of paralegal Jill Hysley from Attorney Karalis' firm. The Court will do the same for Attorney Karalis' same day entry billing .10 hours for a total of $60.50 to "[d]raft and review email to David Daniels & client & reply re 2/17/23 Hearing Transcript." *Id.*