**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | **CHAPTER 11** |
| | : | |
| **DOMUS BWW FUNDING, LLC and** | : | Bky. No. 22-11162(AMC) |
| **1801 ADMIN, LLC** | : | |
| | : | **JOINTLY ADMINISTERED** |
| Debtors | : | |
| | : | |

---

**DISCLOSURE STATEMENT WITH RESPECT TO**
**JOINT PLAN OF REORGANIZATION PROPOSED BY**
**DOMUS BWW FUNDING, LLC AND 1801 ADMIN, LLC, DEBTORS-IN-POSSESSION**

---

*[THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION*
*OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED*
*UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE UNITED*
*STATES BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING*
*SUBMITTED FOR APPROVAL, BUT HAS NOT BEEN APPROVED BY*
*THE UNITED STATES BANKRUPTCY COURT]*

**KARALIS PC**
**Aris J. Karalis**
**Robert W. Seitzer**
**Robert M. Greenbaum**
**1900 Spruce Street**
**Philadelphia, PA 19103**
**(215) 546-4500**
**Attorneys for Debtors and**
**Debtors-In-Possession**

**Dated:  November 3, 2023**

## DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING VOTES TO ACCEPT, AND OBTAINING CONFIRMATION OF, THE PLAN AND MAY NOT BE RELIED UPON FOR ANY OTHER PURPOSE.

ALL CREDITORS AND HOLDERS OF INTERESTS IN THE DEBTORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, THE EXHIBITS AND SCHEDULES ATTACHED TO THE PLAN, AND DOCUMENTS INCLUDED IN THE PLAN SUPPLEMENT, WHICH CONTROL OVER THE DISCLOSURE STATEMENT IN THE EVENT OF ANY INCONSISTENCY OR INCOMPLETENESS. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE OF THIS DISCLOSURE STATEMENT, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THIS DATE. ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTORS HAVE NO AFFIRMATIVE DUTY TO DO SO, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, BY ORDER OF THE BANKRUPTCY COURT OR IN ACCORDANCE WITH APPLICABLE LAW.  ANY STATEMENTS IN THIS DISCLOSURE STATEMENT CONCERNING THE PROVISIONS OF ANY DOCUMENT ARE NOT NECESSARILY COMPLETE, AND IN EACH INSTANCE, REFERENCE IS MADE TO SUCH DOCUMENT FOR THE FULL TEXT THEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE UNITED STATES BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAW.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

THIS DISCLOSURE STATEMENT AND ANY DOCUMENTS APPROVED AS A PART OF THE SOLICITATION PACKAGE ARE THE ONLY DOCUMENTS TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ON THE PLAN. NO SOLICITATION OF VOTES MAY BE MADE UNTIL THE BANKRUPTCY COURT HAS APPROVED THIS DISCLOSURE STATEMENT AND THE DEBTORS HAVE DISTRIBUTED THIS DISCLOSURE STATEMENT IN ACCORDANCE WITH THE SOLICITATION PROCEDURES. NO PERSON HAS BEEN AUTHORIZED TO DISTRIBUTE ANY INFORMATION CONCERNING THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STAEMENT AND ANY ACCOMPANYING DOCUMENTS.

THE DEBTORS' MANAGEMENT PREPARED THE FINANCIAL PROJECTIONS APPENDED TO THIS DISCLOSURE STATEMENT. ALTHOUGH THE DEBTORS HAVE PRESENTED THESE PROJECTIONS WITH NUMERICAL SPECIFICITY, THEY HAVE NECESSARILY BASED THE PROJECTIONS ON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT, ALTHOUGH CONSIDERED REASONABLE BY MANAGEMENT OF THE DEBTORS AT THE TIME OF PREPARATION, MAY NOT BE REALIZED, AND ARE INHERENTLY SUBJECT TO SIGNIFICANT OPERATIONAL, ECONOMIC, AND FINANCIAL UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH WILL BE BEYOND THE DEBTORS' OR REORGANIZED DEBTORS CONTROL. THE DEBTORS CAUTION THAT THEY CANNOT MAKE ANY REPRESENTATIONS AS TO THE ACCURACY OF THESE PROJECTIONS OR TO THE DEBTORS' OR REORGANIZED DEBTORS' ABILITY TO ACHIEVE THE PROJECTED RESULTS. SOME ASSUMPTIONS INEVITABLY WILL NOT MATERIALIZE. FURTHER, EVENTS AND CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DATE ON WHICH THESE PROJECTIONS WERE PREPARED MAY DIFFER FROM ANY ASSUMED FACTS AND CIRCUMSTANCES. ALTERNATIVELY, ANY EVENTS AND CIRCUMSTANCES THAT COME TO PASS MAY WELL HAVE BEEN UNANTICIPATED, AND THUS MAY AFFECT FINANCIAL RESULTS IN A MATERIALLY ADVERSE OR MATERIALLY BENEFICIAL MANNER. THE PROJECTIONS, THEREFORE, MAY NOT BE RELIED UPON AS A GUARANTY OR OTHER ASSURANCE OF THE ACTUAL RESULTS THAT WILL OCCUR.

CERTAIN OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS AND PROJECTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL, FUTURE RESULTS. IN LIGHT OF THESE RISKS AND UNCERTAINTIES, THE FORWARD-LOOKING EVENTS AND CIRCUMSTANCES DISCUSSED IN THIS DISCLOSURE STATEMENT MAY NOT OCCUR, AND ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN THE FORWARD-LOOKING STATEMENTS. THE DEBTORS AND THE REORGANIZED DEBTORS DO NOT UNDERTAKE ANY OBLIGATION TO PUBLICLY UPDATE OR REVISE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE.

ACCORDINGLY, THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCE IMPLY THAT THE INFORMATION CONTAINED HEREIN IS CORRECT OR COMPLETE AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF.  MOREOVER, THE PROJECTIONS ARE BASED ON ASSUMPTIONS THAT, ALTHOUGH BELIEVED TO BE REASONABLE BY THE DEBTORS, MAY DIFFER FROM ACTUAL RESULTS.

AS TO THE CONTESTED MATTERS, CAUSES OF ACTION, ADVERSARY PROCEEDINGS AND ANY OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED  AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSABLE IN ANY NON-BANKRUPTCY

PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS OR REORGANIZED DEBTORS.

[Remainder of Page Intentionally Left Blank]

# TABLE OF CONTENTS

ARTICLE I – INTRODUCTION ...................................................................................1
    A.    Background ...........................................................................1
    B.    Voting and Confirmation ...................................................1
    C.    Summary and Description of Classes and Treatment ................................3
    D.    Modifications and Amendments ...............................................6

ARTICLE II – DEBTORS OVERVIEW AND CORPORATE HISTORY ......................7
    A.    Organization Overview ......................................................7
    B.    Corporate Structure and Prepetition Indebtedness ...........................8
    C.    Summary of Debtors' Assets and Liabilities as of the
        Petition Date............................................................8

ARTICLE III – THE CHAPTER 11 CASES ...................................................................9
    A.    Events Leading to the Chapter 11 Cases........................................9
        1.    47 East 34th Street Litigation (against the Debtors).......................9
        2.    The Kinsella Litigation (against the Debtors)...............................11
        3.    Town Place Litigation (against the Domus Debtor) ....................12
        4.    Insurance Coverage Disputes.............................................13
    B.    Commencement of the Cases and First Day Relief ...................................13
    C.    Retention of Chapter 11 Professionals........................................13
    D.    Filing of Schedules and Assets and Liabilities and Statement
        of Financial Affairs ...................................................14
    E.    Exclusivity .........................................................14
    F.    Claims Bar Date ....................................................14
    G.    Extension of Time to File Notices to Remove Actions ...........................15
    H.    Stay Relief Motions ................................................15
        1.    47 East........................................................15
        2.    Kinsella Plaintiffs...............................................15
    I.    Other Contested Matters before Bankruptcy Court ..............................15
        1.    47 East Motion for 2004 Examination and
            Production ..................................................15
        2.    Settlement of English Insolvency Matters ..................................16
        3.    Debtors' Motion to Clarify Order Modifying
            Automatic Stay..............................................16
        4.    1801 Debtor's Motion to Strike 47 East's Proof of
            Claim......................................................16
        5.    Motion for Attorneys' Fees...............................................17
        6.    Motion for Protective Order...............................................17
        7.    Motion for Application of Rule 7068 to Fee Motion....................17
    J.    Complaint initiating the Insurance Coverage Litigation............................17
    K.    Motion to Assume Lease ..............................................18
    L.    Post-Petition Financing................................................18
    M.    Reversal of the State Court Judgment in favor of 47 East........................18

ARTICLE IV – OVERVIEW OF THE PLAN.................................................................18
    A.    General ............................................................18

B.      Distributions ............................................................................. 19
C.      Treatment of Unclassified Claims ............................................ 19
     1.      Administrative Expense Claims Generally ..................... 20
     2.      Professional Fee Claims ................................................. 21
     3.      Priority Tax Claims ....................................................... 22
     4.      DIP Claims .................................................................... 22
D.      Classification of Claims and Interests Summary ..................... 22
E.      Treatment of Claims and Interests ........................................... 24
     1.      Class 1. Other Priority Claims ...................................... 24
     2.      Class 2A. Ongoing General Unsecured Claims ............ 25
     2B.      Class 2B. Other General Unsecured Litigation
             Claims .......................................................................... 25
     3.      Class 3. Convenience Claims ........................................ 26
     4.      Class 4. Equity Interests in Debtors .............................. 26
     5.      Class 5. Subordinated Claims ....................................... 27
F.      Special Provisions Governing Unimpaired Claims .................. 27
G.      Elimination of Vacant Classes ................................................. 27
H.      Voting Classes, Presumed Acceptance by Non-Voting Classes ................ 27
I.      Confirmation Pursuant to Sections 1129(a)(10_ and 1129(b) of the
     Bankruptcy Code ..................................................................... 27
J.      Controversy Concerning Impairment ....................................... 28
K.      Subordinated Claims ................................................................ 28
L.      Means for Implementation of the Plan ..................................... 28
     1.      General Settlement of Claims and Interests ................... 28
     2.      Continued Legal Existence of the Debtors ................... 28
     3.      Operations of the Debtors between Confirmation and the
             Effective Date ............................................................... 28
     4.      Reorganized Debtors' Directors and Officers ............... 28
     5.      Due Authorization ......................................................... 28
     6.      Release of Liens ............................................................ 29
     7.      Effectuating Documents and Further Transactions ....... 29
     8.      Payment of Equity Security Holders Contribution ....... 29
     9.      Exit Facility .................................................................. 29
     10.      Sources of Consideration for Plan Distributions ........... 30
     11.      Disbursing Agent .......................................................... 30
     12.      Single Satisfaction of Allowed General Unsecured Claims ......... 30
     13.      Exemption from Certain Transfer Taxes and Recording
             Fees .............................................................................. 31
     14.      Preservation of Causes of Action .................................. 31
M.      Net Proceeds from the Adversary Proceeding .......................... 31
N.      Vesting of Assets in the Reorganized Debtors ......................... 32
O.      Retention of Certain Causes of Action ..................................... 32
P.      Treatment of Executory Contracts and Unexpired Leases ....... 32
     1.      Assumption and Rejection of Executory Contracts
             and Unexpired Leases .................................................... 32
     2.      Rejection Damages Claims ............................................ 35
     3.      Contracts and Leases Entered into After the Petition

|  |  | Date ......................................................................................... | 35 |
|  | 4. | Insurance Policies ..................................................................... | 35 |
|  | 5. | Modifications, Amendments, Supplements, Restatements, or Other Agreements ................................ | 36 |
|  | 6. | Reservation of Rights ................................................................ | 36 |
| Q. |  | Provisions Governing Distributions ................................................ | 36 |
|  | 1. | Distributions Generally .............................................................. | 36 |
|  | 2. | Distributions on Account of Certain Claims Allowed as of the Effective Date ................................................ | 36 |
|  | 3. | Distributions on Account of Allowed General Unsecured Claims .................................................... | 37 |
|  | 4. | Distributions on Account of Disputed Claims Allowed After the Effective Date ................................ | 37 |
|  | 5. | Rights and Powers of Disbursing Agent ........................... | 37 |
|  | 6. | Delivery of Distributions and Undeliverable or Unclaimed Distributions ....................................... | 37 |
|  | 7. | Undeliverable and Non-Negotiated Distributions ............ | 38 |
|  | 8. | Manner of Payment under the Plan .............................. | 38 |
|  | 9. | Satisfaction of Claims ............................................... | 38 |
|  | 10. | Minimum Cash Distributions ...................................... | 39 |
|  | 11. | Postpetition Interest ................................................. | 39 |
|  | 12. | Setoffs ..................................................................... | 39 |
|  | 13. | Claims Paid or Payable by Third Parties ....................... | 39 |
|  | 14. | Compliance with Tax Requirements and Allocations .......... | 39 |
| R. |  | Procedures for Resolving Contingent, Unliquidated, and Disputed Claims ....................................................... | 40 |
|  | 1. | Applicability ............................................................ | 40 |
|  | 2. | Allowance of Claims ................................................. | 40 |
|  | 3. | Claims Administration Responsibilities ......................... | 40 |
|  | 4. | Estimation of Claims ................................................. | 40 |
|  | 5. | No Distribution Pending Allowance .............................. | 40 |
|  | 6. | Distributions After Allowance .................................... | 41 |
|  | 7. | Disputed Claims Reserve ........................................... | 41 |
|  | 8. | Adjustment to Claims Register without Objection .......... | 42 |
|  | 9. | Time to File Objections to Claims ................................ | 42 |
|  | 10. | Treatment of Untimely Claims .................................... | 42 |
| S. |  | Discharges, Releases, Exculpations and Injunctions ................ | 42 |
|  | 1. | Discharge ................................................................. | 42 |
|  | 2. | Releases of Avoidance Actions .................................... | 43 |
|  | 3. | Exculpation .............................................................. | 43 |
|  | 4. | Injunction Related to Exculpation ................................ | 44 |
| T. |  | Disallowed Claims .................................................................... | 44 |
| U. |  | No Successor Liability ............................................................... | 44 |
| V. |  | Retention of Jurisdiction .......................................................... | 44 |
|  | 1. | General Retention ..................................................... | 44 |
|  | 2. | Specific Purposes ..................................................... | 45 |
|  | 3. | Courts of Competent Jurisdiction ................................ | 45 |

W.    Miscellaneous Provisions...............................................................45
    1.    Closing of Chapter 11 Cases................................................45
    2.    Amendment or Modification of the Plan ..............................45
    3.    Revocation or Withdrawal of the Plan..................................46
    4.    Request for Expedited Determination of Taxes.....................46
    5.    Non-Severability of Plan Provisions.....................................46
    6.    Notices .................................................................................46
    7.    Notices to Other Parties .......................................................47
    8.    Immediate Binding Effect.....................................................47
    9.    Timing of Distributions or Actions.......................................47
    10.    Deemed Acts.........................................................................47
    11.    Entire Agreement .................................................................47
    12.    Plan Supplement ..................................................................48
    13.    Withholding of Taxes ...........................................................48
    14.    Filing of Reports and Payment of Quarterly Fees ................48
    15.    Effective Date Actions Simultaneous ...................................48

ARTICLE    V    –    SOLICITATION    PROCEDURES    AND
REQUIREMENTS.......................................................................................48
  A.    Voting Summary and Deadline................................................ 48
  B.    Solicitation Procedures .........................................................50
    1.    Vote Required for Acceptance by a Class of Claims.............50
    2.    Solicitation Package .............................................................50
    3.    Solicitation    Procedures,    Ballots,    and    Voting
       Deadline ...............................................................................51
  C.    Classes Entitled to Vote on the Plan......................................52
    1.    Holders of Claims Entitled to Vote.......................................53
  D.    Certain Factors to Be Considered Prior to Voting ..................54

ARTICLE VI – CONFIRMATION PROCEDURES.......................................55
  A.    Hearing on Plan Confirmation ...............................................55
  B.    Requirements for Confirmation of the Plan............................55
  C.    Acceptance by an Impaired Class ..........................................55
  D.    Best Interests Test .................................................................56
  E.    Liquidation Analysis and Application of the "Best Interest
    Test" ......................................................................................57
  F.    Feasibility..............................................................................57
  G.    Conditions Precedent to Consummation of Plan ....................57
  H.    *Vacatur* of Confirmation Order; Non-Occurrence of
    Effective Date .......................................................................57

ARTICLE VII – RISK FACTORS ...............................................................58
  A.    Risks Relating to the Debtors' Operations, Financial
    Condition, and Certain Bankruptcy Law Considerations ........58
    1.    There is a Risk that the Plan Will Not be Confirmed ..................58
    2.    Risk of Non-Confirmation of the Plan..................................58
    3.    Alternative Plans of Reorganization .............................................58

| | | | |
|---|---|---|---|
| | 4. | Non-Consensual Confirmation | 59 |
| | 5. | Parties in Interest May Object to the Debtors' Classification of Claims and Interests | 59 |
| | 6. | The Debtors May Object to the Amount or Classification of a Claim | 59 |
| | 7. | The Conditions Precedent to Plan Confirmation and the Effective Date of the Plan May Not Occur | 59 |
| | 8. | Possible Tax Ramifications | 59 |
| | 9. | Risk of Non-Occurrence of the Effective Date | 60 |
| | 10. | Amendment of Plan Prior to Confirmation by the Debtors | 60 |
| | 11. | Financial Projections | 60 |
| | 12. | Voting Requirements | 60 |
| | 13. | Conversion into Chapter 7 Cases | 60 |
| | 14. | Dismissal of the Chapter 11 Cases | 61 |
| | 15. | Parties in Interest May Object to the Plan Based on Section 1129(a)(7) of the Bankruptcy Code | 61 |
| B. | | Additional Factors | 61 |
| | 1. | Debtors Could Withdraw the Plan | 61 |
| | 2. | Debtors Have No Duty to Update | 61 |
| | 3. | No Representations Outside this Disclosure Statement Are Authorized | 61 |
| | 4. | No Legal or Tax Advice Is Provided by this Disclosure Statement | 61 |
| | 5. | No Admission Made | 62 |

ARTICLE VIII – CONCLUSION AND RECOMMENDATION .................................62

# ARTICLE I
# INTRODUCTION

A. <u>Background</u>.  This Disclosure Statement (as may be amended, altered, modified or supplemented from time to time, the "<u>Disclosure Statement</u>") is being furnished by the Debtors in connection with the Joint Plan of Reorganization dated November 3, 2023 (as may be amended, altered, modified or supplemented from time to time, the "<u>Plan</u>"),[1] pursuant to section 1125 of title 11 of the United States Code, and in connection with the solicitation of votes to accept or reject the Plan.  The Plan described in this Disclosure Statement is proposed by the Debtors.

The Debtors commenced the Chapter 11 Cases to protect and preserve their business, maximize property available to satisfy their creditors and to reorganize their affairs while embroiled in litigation on multiple fronts, including coverage actions against their insurance companies who denied the Debtors' claims in connection with the costly and time-consuming litigation.  Since the commencement of these cases, the Debtors have advocated for the resolution of the litigation and, with their litigation successes to date, are in a position to emerge from Chapter 11 with the ability to address their remaining legal disputes on sound financial footing in accordance with the terms of the Plan.

The Disclosure Statement sets forth certain information regarding the Debtors' prepetition operating and financial history, their reasons for seeking protection and reorganization under chapter 11 and significant events that have occurred during the Chapter 11 Cases.  This Disclosure Statement also describes certain terms and provisions of the Plan, certain effects of confirmation of the Plan, certain risk factors associated with the Plan and the manner in which distributions will be made under the Plan.  In addition, the Disclosure Statement discusses the confirmation process and voting procedures that holders of Claims entitled to vote on the Plan must follow for their votes to be counted.

By order dated _____, 2023, the Bankruptcy Court approved this Disclosure Statement in accordance with section 1125 of the Bankruptcy Code and found that it contained "adequate information" sufficient to enable a hypothetical investor of the relevant Class to make an informed judgment about the Plan, and authorized its use in connection with the solicitation of votes with respect to the Plan. **Approval of this Disclosure Statement does not, however, constitute a determination by the Bankruptcy Court as to the accuracy or completeness of the information contained herein nor an endorsement by the Bankruptcy Court as to the fairness or merits of the Plan.** No solicitation of votes may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code.

A copy of the Plan accompanies this Disclosure Statement. The rules of interpretation set forth in <u>Article I.B</u> of the Plan govern the interpretation of this Disclosure Statement. **Please note that if any inconsistencies exist between this Disclosure Statement and the Plan, the Plan shall govern in all respects.**

B. <u>Voting and Confirmation</u>.  **<u>Article V</u> of this Disclosure Statement specifies the deadlines, procedures, and instructions for voting to accept or reject the Plan, as well as the**

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

**applicable standards for tabulating ballots, used in voting on the Plan (each, generally referred to herein as a "Ballot"). The following is an overview of certain information related to voting that is contained in Article V of this Disclosure Statement and elsewhere in this Disclosure Statement.**

This Disclosure Statement is being transmitted in order to provide adequate information to enable holders of Claims in Class 2A (Ongoing General Unsecured Claims), Class 2B (Other General Unsecured Litigation Claims), and Class 3 (Convenience Claims), which Claims in such Classes are Impaired and entitled to vote on the Plan, to make an informed judgment in exercising their right to vote to accept or reject the Plan.

Each Class of Claims entitled to vote shall have accepted the Plan pursuant to the requirements of section 1126(c) of the Bankruptcy Code if at least two-thirds (2/3) in amount and more than one-half (1/2) in number of those voting in each such Class voted to accept the Plan. Assuming the requisite acceptances are obtained, the Debtors intend to seek Confirmation of the Plan at the Confirmation Hearing scheduled for _____, 2024, at __: _.m. (Eastern Time) before the Bankruptcy Court. The Confirmation Hearing may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment filed with the Bankruptcy Court and served on those parties who have requested notice under Bankruptcy Rule 2002 and the Entities who have filed an objection to the Plan, if any, without further notice to parties in interest. The Bankruptcy Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing. Subject to section 1127 of the Bankruptcy Code, the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

Additionally, section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation. Any objection or response to Confirmation of the Plan must: (i) be in writing; (ii) state the name and address of the objecting party and the nature and amount of the Claim of such party; (iii) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (iv) be filed with the Bankruptcy Court, 900 Market Street, Philadelphia, PA 19107 together with proof of service on or before _____, 2024 at 4:00 p.m. (Eastern Time) (the "Plan Objection Deadline"), and served on the Debtors and certain other parties in interest in accordance with the Solicitation Procedures Order (defined below) so that they are received on or before the Plan Objection Deadline.

Debtors' counsel will provide additional copies of all materials and will process and tabulate the Ballots, as defined in the *Debtors' Motion for Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [D.I.●] (the "Solicitation Procedures Motion"), filed on November 3, 2023, for Classes 2A, 2B, and 3, as applicable. You may obtain these documents from the Debtors' counsel free of charge by: (a) calling the offices of Debtors' counsel at 215-546-4500.  You may also access from these materials for a fee via PACER at http://www.paeb.uscourts.gov.

**As further described in the Solicitation Procedures (which are annexed to the Solicitation Procedures Order as Exhibit 1), to be counted, your Ballot indicating acceptance or rejection of the Plan must be received by Debtors' counsel no later than 4:00 p.m. (Eastern Time) on _____, 2024 (the "Voting Deadline")**, unless the Debtors, in their sole discretion, extend the period during which votes will be accepted on the Plan, in which case the term "Voting Deadline" shall mean the last date on, and time by which, such period is extended. Any executed Ballot that does not indicate either an acceptance or rejection of the Plan or indicates both an acceptance and rejection of the Plan will not be counted as an acceptance or rejection and will not count toward the tabulations required pursuant to either section 1129 of the Bankruptcy Code.

Prior to deciding whether and how to vote on the Plan, each holder of a Claim entitled to vote should consider carefully all of the information in this Disclosure Statement, including <u>Article VII</u> entitled "Risk Factors." **Each holder of a Claim entitled to vote on the Plan should review this Disclosure Statement and the Plan and all Exhibits hereto and thereto before submitting a Ballot. This Disclosure Statement contains a summary of certain provisions of the Plan and certain other documents and financial information. The Debtors believe that these summaries are fair and accurate as of the date hereof and provide adequate information with respect to the documents summarized; however, such summaries are qualified to the extent that they do not set forth the entire text of those documents and as otherwise provided herein.**

C.    <u>Summary and Description of Classes and Treatment</u>.    Except for Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims and DIP Claims, which are not required to be classified, all Claims and Interests are divided into Classes under the Plan. The following chart summarizes the projected distributions to holders of Allowed Claims against and Interests in each of the Debtors under the Plan.   This chart is only a summary of such classification and treatment and reference should be made to the entire Disclosure Statement and the Plan for a complete description of the classification and treatment of Claims and Interests. The ability to receive distributions under the Plan depends upon the ability of the Debtors to obtain Confirmation of the Plan and meet the conditions to Confirmation and effectiveness of the Plan, as discussed in this Disclosure Statement.

Moreover, although every reasonable effort was made to be accurate, the projections of estimated recoveries are only an estimate. Any estimates of Claims or Interests in this Disclosure Statement may vary from the final amounts allowed by the Bankruptcy Court. As a result of the foregoing and other uncertainties which are inherent in the estimates, the estimated recoveries in this Disclosure Statement may vary from the actual recoveries received. The projected recoveries set forth below may change based upon changes in the amount of Allowed Claims, as well as other factors related to the Debtors' operations and general economic conditions. The Debtors reserve the right to modify the Plan consistent with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

The summary of classification and treatment of Claims against and Interests in the Debtors is as follows:

3

| Class | Designation[2] | Treatment under the Plan | Impairment and Entitlement | Estimated Amount and Approximate Percentage Recovery[3] |
|---|---|---|---|---|
| 1 | Other Priority Claims | Each Holder of an Allowed Other Priority Claim, except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, shall receive, at the option of the applicable Debtor, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim; (i) payment in full in Cash on the Effective Date, or as soon as reasonably practicable thereafter; or (ii) such other treatment consistent with section 1129(a)(9) of the Bankruptcy Code. | Unimpaired<br><br>**Not Entitled to Vote**<br><br>(Presumed to Accept) | Estimated Amount: $00<br><br>Estimated Percentage Recovery: 100% |
| 2A | Ongoing General Unsecured Claims | Except to the extent that a Holder of an Ongoing General Unsecured Claim and the Debtor against which such Allowed Ongoing General Unsecured Claim is asserted agree to less favorable treatment, each Holder of an Allowed Ongoing General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for its Claim, subject to the Holder's ability to elect Convenience Claim treatment on account of its Allowed Ongoing General Unsecured Claim, its Pro Rata Share of the Class 2A Fund within forty-five (45) days following the later of (a) the Effective Date or (b) the date that such Ongoing General Unsecured Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date). | Impaired<br><br>**Entitled to Vote** | Estimated Amount: $60,000<br><br>Estimate Percentage Recovery: 25% |

[2] The Debtors reserve the right to eliminate any Class of Claims in the event they determine that there are no Claims in such Class.

[3] Figures with respect to the Allowed amounts of the Claims set forth in this chart are based upon the Debtors' estimates of such Claims as of the date of this Disclosure Statement.  These estimates are based on various assumptions.  The actual amounts of Allowed Claims may differ significantly from these estimates should one or more underlying assumptions prove to be incorrect.  Such differences may adversely affect the percentage of recovery to holders of Allowed Claims under the Plan.  Moreover, the estimated recoveries set forth herein are based on certain assumptions, the realization of which are beyond the Debtors' control.

| Class | Designation[2] | Treatment under the Plan | Impairment and Entitlement | Estimated Amount and Approximate Percentage Recovery[3] |
|-------|----------------|--------------------------|----------------------------|--------------------------------------------------------|
| 2B | Other General Unsecured Litigation Claims | Except to the extent that a Holder of an Other General Unsecured Litigation Claim and the Debtor against which such Allowed Other General Unsecured Litigation Claim is asserted agree to less favorable treatment, each Holder of an Allowed Other General Unsecured Litigation Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Allowed Other General Unsecured Litigation Claim, subject to the Holder's ability to elect Convenience Claim treatment on account of its Allowed Other General Unsecured Litigation Claim, its Pro Rata Share of the Class 2B Fund within forty-five (45) days following the later of (a) the Effective Date, or (b) the date that such Other General Unsecured Litigation Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date), or (c) the Reorganized Debtors' deposit of the Net Proceeds from the Adversary Proceeding determined in accordance with Article IV.O of the Plan. Solely to the extent that the Holder of an Allowed Other General Unsecured Litigation Claim that votes to accept the Plan fails to recover in full from the Class 2B Fund, such Holder may elect to have the unsatisfied portion of its Allowed Claim treated as an Allowed Convenience Claim and receive cash in an amount equal to the lesser of (a) the amount of the unsatisfied portion of the Allowed Other General Unsecured Litigation Claim and (b) $25,000. | Impaired<br><br>**Entitled to Vote** | Estimated Amount:<br><br>Undetermined<br><br>Estimated Percentage Recovery:<br><br>Undetermined |

| Class | Designation[2] | Treatment under the Plan | Impairment and Entitlement | Estimated Amount and Approximate Percentage Recovery[3] |
|---|---|---|---|---|
| 3 | Convenience Claims[4] | In full and final satisfaction, compromise, settlement, release and discharge of, and in exchange for an Allowed Convenience Claim, each Holder of an Allowed Convenience Claim shall receive within forty-five (45) days following the later of (a) the Effective Date or (b) the date that such Convenience Claims becomes Allowed (if such Claim becomes Allowed after the Effective Date), Cash in an amount equal to the 100% of such Holder's Allowed Convenience Claim. | Impaired<br><br>**Entitled to Vote** | Estimated Amount:<br><br>Undetermined<br><br>Estimated Percentage Recovery:<br><br>100% |
| 4 | Equity Interests in Debtors | As of the Effective Date, the Interests in the Debtors shall remain unchanged and equal to the structure that existed on the Petition Date. | Unimpaired<br><br>**Not Entitled to Vote** (Presumed to Accept) | Estimated Amount: N/A<br><br>Estimated Percentage Recovery: N/A |
| 5 | Subordinated Claims | As of the Effective Date, all Class 5 Claims shall be discharged, cancelled, released, and extinguished without any distribution to Holders of such Claims. | Impaired<br><br>**Not Entitled to Vote** (Deemed to Reject) | Estimated Amount: N/A<br><br>Estimated Percentage Recovery: None |

D.    <u>Modification and Amendments</u>.  Subject to the limitations contained in the Plan, the Debtors reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors one or more times including after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or

---

[4] "<u>Convenience Claim</u>" means any Claim that would otherwise be an Ongoing General Unsecured Claim that is Allowed in an amount of $25,000 or less; provided that a holder of an Ongoing General Unsecured Claim that is Allowed in an amount greater than $25,000 may irrevocably elect, as evidenced on the Ballot (as defined in the Voting Procedures) timely and validly submitted by such holder (or other writing acceptable to the Debtors), to have such Claim irrevocably reduced to $25,000 and treated as a Convenience Claim (upon Allowance) for purposes of the Plan, in full and final satisfaction of such Claim; provided further that an Ongoing General Unsecured Claim may not be subdivided into multiple Convenience Claims.  The Holder of an Allowed Other General Unsecured Litigation Claim that votes to accept the Plan may elect to have such Allowed Claim treated as a Convenience Claim solely in accordance with the terms of <u>Article II.B.3</u> of the Plan.

omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

For the avoidance of doubt, such modification(s) may include a settlement pursuant to Bankruptcy Rule 9019 to resolve any unresolved controversies, including, but not limited to, those described in this Disclosure Statement. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI.B of the Plan.

If the Bankruptcy Court finds, after a hearing on notice to the parties in interest in the Chapter 11 Cases, that the proposed modification does not materially and adversely change the treatment of the Claim or Interest of any holder thereof who has not accepted in writing the proposed modification, the Bankruptcy Court may deem the Plan to be accepted by all holders of Claims or Interests who have previously accepted the Plan.  Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

For the avoidance of doubt, any and all rights of holders of Claims against the Debtors or Interests in the Debtors are expressly reserved under Bankruptcy Rule 3019 and any other applicable provisions under the Bankruptcy Rules, Local Rules of the Bankruptcy Court, or Bankruptcy Code.

## ARTICLE II
## DEBTORS OVERVIEW AND CORPORATE HISTORY

A.    Organization Overview.  The 1801 Debtor, formerly known as Versa Capital Management LLC, is a single member limited liability company that was formed as of July 18, 2011. The 1801 Debtor receives compensation as a sub-advisor providing various services in support of private investment funds as its client may request or require and is a registered investment advisor with the SEC under the Investment Advisers Act of 1940, as amended.

The Domus Debtor is a single member limited liability company that was formed as of April 4, 2013.  The Domus Debtor is the agent under the Amended and Restated Agreement dated as of January 21, 2011 (as further amended from time to time thereafter, the "Credit Suisse Credit Agreement") by and among Bridgestreet Worldwide, Inc. ("BWW"), as Borrower, the other credit parties and lenders party thereto.  The Domus Debtor Domus is a lender and agent under a Credit Agreement dated as of March 3, 2014 (the "2014 Credit Agreement") between and among the Domus Debtor, as lender and agent, Domus BWW Group, LLC as Borrower, and certain of the Borrower's affiliates party thereto, as Guarantors.

Each of the Debtors' principal place of business is located at 1801 Market Street, Suite 2525, Philadelphia, PA 19103.

B.    Corporate Structure and Prepetition Indebtedness.    Prior to commencing their Chapter 11 Cases, the Debtors did not have any secured indebtedness.  They incurred and had unsecured indebtedness to various trade vendors and service providers, among others, arising in the ordinary course of business.  However, the Debtors also incurred substantial litigation fees defending three (3) pre-petition lawsuits (as detailed below) filed against each of them by various plaintiffs in the New York State Supreme Court, the Pennsylvania Court of Common Pleas in Allegheny County, and the Delaware Chancery Court.

At filing, the value of the 1801 Debtor's assets was less than $300,000 and consisted primarily of deposits and prepayments, accounts receivable, and office furniture, fixtures and equipment. The value of the Domus Debtor's assets was approximately $1,000,000 and related to recoveries from collateral securing obligations under the 2014 Credit Agreement.  In addition, the Debtors had submitted to their insurance carriers notice of certain claims asserted against them in the pending litigation, but the carriers had denied coverage.

C.    Summary of the Debtors Assets and Liabilities as of the Petition Date.    The Debtors filed their Schedules with the Bankruptcy Court that listed the assets which are owned by the Debtors or in which the Debtors have an interest as of the Petition Date [D.I. 83 and D.I. 86].  The Debtors' principal assets as of the Petition Date were as follows:

### 1801 Debtor

- Cash and Cash Equivalents of $1,883.19;
- Deposits and Prepayments of $81,979.50;
- Accounts Receivable of $110,272.46
- Miscellaneous Office Furniture and Equipment of $38,293.56
- Interests in Insurance Policies for various policy periods through the Petition Date with an *Unknown* value; and
- Causes of Action against various insurance companies with an *Unknown* value.

### Domus Debtor

- Cash and Cash Equivalents of $377.64;
- 2014 Credit Agreement estimated at $1,000,000.00;
- City of Philadelphia Tax Refund of $3,700.00;
- Interests in Insurance Policies for various policy periods through the Petition Date with an *Unknown* value;
- Causes of Action against various insurance companies with an *Unknown* value; and
- Litigation Claims with an *Unknown* value

The Debtors' liabilities as of the Petition Date were as follows:

### 1801 Debtor

- Secured Claims of $0.00;
- Priority Claims of $0.00;

8

- General Unsecured Claims of $13,179.89[5];
- Litigation Claims of an *Unknown* amount.

**Domus Debtor**

- Secured Claims of $0.00;
- Priority Claims of $0.00;
- General Unsecured Claims of $600.00[6];
- Litigation Claims of an *Unknown* amount.

The Schedules filed by the Debtors may be reviewed on the Bankruptcy Court electronic case filing system.

## ARTICLE III
## THE CHAPTER 11 CASES

    A.   <u>Events Leading to the Chapter 11 Cases</u>. The following three (3) litigation matters, and the insurance coverage disputes that followed, forced the Debtors to seek the protection of Chapter 11 to protect and preserve their business, maximize property available to satisfy their creditors and to reorganize their affairs.

    1.   **<u>47 East 34th Street Litigation (against the Debtors)</u>**. On October 5, 2015, Plaintiff 47 East 34th Street (NY), L.P. ("<u>47 East</u>") filed a case in New York Supreme Court, New York County against its lease tenant, HCB (2020), LLC ("HCB") (formerly known as BridgeStreet Corporate Housing, LLC), styled as *47 East 34th Street (NY), L.P. v. BridgeStreet Corporate Housing, LLC*, Index No. 653320/2015 (the "<u>Lease Action</u>"). That action sought indemnification for taxes incurred when 47 East, having devoted its property to corporate housing, failed to qualify for a residential real estate tax break allegedly because HCB failed to structure its short-term sub-leases as long-term sub-leases subject to early termination by the sub-tenants. On July 12, 2019, the court granted summary judgment in favor of 47 East, and on February 14, 2020, entered judgment against HCB in the amount of $10,908,400.91 (the "<u>47 East Tax Liability</u>"). HCB subsequently filed for chapter 7 bankruptcy on November 25, 2020 [in the Eastern District of Virginia captioned *In re HCB (2020), LLC*, case no. 20-12600 KHK).

On June 19, 2018, 47 East commenced a related action in the same New York Supreme Court

---

[5] 1801 Debtor's Schedule F – General Unsecured Claims reflects a contingent, unliquidated and disputed litigation claim of 47 East (defined below) in the amount of $10,908,400.91, bringing the scheduled amount of General Unsecured Clams to $10,921,580.80; on September 21, 2023, the Supreme Court of the State of New York, Appellate Division, First Judicial Department issued its Decision and Order with respect to the Appeal [NYSCEF Doc. No. 55] in favor of the Debtors and against 47 East whereby it, *inter alia*, ordered that "…[47 East's] judgment unanimously reversed, on the law, without costs, the judgment vacated, [47 East's] motion for summary judgment denied, [Debtors'] cross-motion for summary judgment granted, and [Debtors'] motions to amend their responses to plaintiff's first notice to admit and to amend their answer denied as academic."

[6] Domus Debtor's Schedule F – General Unsecured Claims also reflects a contingent, unliquidated and disputed litigation claim of 47 East in the amount of $10,908,400.91, bringing the scheduled amount of General Unsecured Clams to $10,909,000.91; *see* footnote 5 above for results of the 47 East Litigation and the impact on this claim.

against HCB's former parent company, BWW, as well as the Debtors styled as *47 East 34th Street (NY), L.P. v BridgeStreet Worldwide, Inc., et al.*, Index No. 653057/2018. This second action sought to enforce against the 1801 Debtor and Domus Debtor the terms of a Guaranty of Lease allegedly executed by BWW in favor of 47 East purporting to guaranty HCB's obligations to 47 East under the lease that was the subject of the Lease Action. The Domus Debtor had been BWW's secured lender pursuant to a loan it purchased from other lenders (the "Credit Suisse Credit Agreement"). BWW was in default on that loan, and its business was worth far less than the amount it owed. Acting solely as agent on that loan, the Domus Debtor, on March 3, 2014, effectuated a consensual foreclosure on its collateral which included, among other things, the equity interests in BWW's operating subsidiaries (the "Foreclosure") immediately transferring such collateral to certain non-debtor affiliates. That secured loan was under-secured and the Foreclosure left a significant deficiency that remains outstanding. Even though 47 East was at best a potential unsecured creditor of BWW whose claim was both subordinate to Domus's undersecured loan and also unknown at the time of the Foreclosure, 47 East nevertheless asserted, among other "theories" that the Foreclosure was intended to harm its ability to recover on the guarantee and that the 1801 Debtor and the Domus Debtor were responsible for the 47 East Tax Liability. The 1801 Debtor and the Domus Debtor denied that they were in any way liable for BWW's guarantee and vigorously defended all claims asserted against them.

On September 14, 2018, the 1801 Debtor and the Domus Debtor moved to dismiss all claims asserted against them. That motion was granted in part on November 6, 2019 resulting in dismissal of all claims except for successor liability, alter ego and fraudulent conveyance. 47 East filed a cross motion for partial summary judgment seeking to hold the 1801 Debtor and Domus Debtor liable for the 47 East's tax liability as BWW's successor because BWW was a guarantor of the HCB lease. That motion was denied.

On July 12, 2021, 47 East filed a second motion for summary judgment again seeking to hold the 1801 Debtor and the Domus Debtor liable for the 47 East Tax liability. In response, the 1801 Debtor and the Domus Debtor opposed 47 East's motion for summary judgment and filed a cross motion for summary judgment requesting dismissal of all claims. A decision granting 47 East's second motion holding the 1801 Debtor and Domus Debtor liable on 47 East's successor liability and alter ego claims and denying the Debtors' cross motion was issued on April 26, 2022 (the "47 East Trial Court Decision"). In violation of the automatic stay, the trial court also entered a judgment against Debtors thereafter.

The Debtors believed that 47 East Trial Court Decision was procedurally defective, erroneous, improvident and inaccurate. Among other things, the 1801 Debtor and the Domus Debtor were not BWW's successors because neither of them actually acquired BWW's operating subsidiaries. Those subsidiaries were instead acquired by two (2) different entities, neither of which was named by 47 East in its lawsuit. Indeed, the 1801 Debtor never owned, invested in or extended credit to any entity subject to the Foreclosure or otherwise —not the Domus Debtor, not BWW and not any of the acquired operating subsidiaries.

Moreover, the Debtors asserted that 47 East Trial Court Decision was also erroneous because the Foreclosure which was at arm's length, and the events leading thereto were merely the unexceptional exercise of secured lender remedies to realize upon collateral worth far less than the

amount owed.  Because that secured lender, the Domus Debtor, was under-secured, there was no equity left in BWW's business available to repay 47 East's lease guaranty claim.  Neither 47 East, nor any other out-of-the-money unsecured creditor of BWW, suffered harm from the Foreclosure because no such creditor could have recovered from BWW. The Foreclosure was in no way intended to harm such creditors given that they were all already out of the money. Prior to the Foreclosure, the Domus Debtor in fact re-capitalized BWW. A claim for alter ego liability requires proof that domination existed and was used for the purpose of and with the effect of causing harm. No such conduct took place here.

On May 2, 2022, the Debtors timely filed notices of appeal of the 47 East Trial Court Decision to the Appellate Division, First Judicial Department (the "First Department"). At the time of the Chapter 11 filings, no valid judgment had issued on the 47 East Trial Court Decision and the amount of the trial court's judgment was disputed.

The Debtors believed that the 47 East Decision was wrong on the law and the facts, that there was no basis to hold two (2) entities liable as BWW's successor who were not, in fact, its successor, and that that there was no basis to hold two (2) entities liable for BWW's obligations as a result of the proper exercise of secured lender rights over collateral.

The Debtors believed that it was in the best interests of the Debtors' estates and their creditors to allow the Debtors' appeal of the 47 East Decision to proceed before the appellate courts of the State of New York to the point of entry of a final order at which point the liquidated claim, if any, would be provided for under the terms of a plan of reorganization.  To that end, the Debtors sought to modify the automatic stay to allow the appeals to proceed.

The First Department has subsequently considered the summary judgment record and ruled on the Debtors' appeal. On September 21, 2023, the First Department issued a decision reversing the trial court's grant of summary judgment to 47 East, vacating the judgment entered against Debtors, and granting summary judgment in Debtors' favor.

Plaintiff has filed in the First Department a motion to reconsider this decision or in the alternative for leave to appeal to the New York Court of Appeals. Such motion remains pending.

       2.    **The Kinsella Litigation (against the Debtors).**  *GB-SP Holdings LLC v. Walker*, C.A. No. 9413-PAF (the "Kinsella Litigation), is a case pending before the Delaware Court of Chancery.  Plaintiffs GB-SP Holdings LLC and Donal Kinsella (collectively, the "Kinsella Plaintiffs") the owners of hopelessly out-of-the-money equity interests in the defunct entity BWW have brought claims for breach of fiduciary duty against former directors of BWW, breach of contract against certain directors of BWW, and aiding and abetting breach of fiduciary duty against the Debtors. In essence, the Kinsella Plaintiffs contended that they were entitled to damages in compensation for their worthless shares despite the foreclosure of a secured lender on a distressed, underwater company's assets, which were not even sufficient to satisfy the company's debt.  In turn, the Domus Debtor asserted a counterclaim for breach of contract to recover damages and attorneys' fees deriving from the Kinsella plaintiffs' breach of a pledge agreement in which GB-SP assigned to the Domus Debtor GB-SP's right to bring the lawsuit.

At the time of the Chapter 11 filings, this case had been pending since 2014.  The parties entered into a settlement agreement in June 2016 that contemplated a payment to the Kinsella Plaintiffs. The settlement was rejected by the Chancery Court because it did not provide for payment to BWW or absent stockholders and thereafter the Kinsella Plaintiffs refused to restructure the settlement to address the Chancery Court's concern.   The defendants in the Kinsella Litigation filed motions to dismiss in April 2017 which were granted in part in 2018.  Since that time, the Kinsella Plaintiffs' damages claim skyrocketed to $4.8 million, derailing any attempt at resolution and ballooning the litigation costs, despite a complete lack of evidence that GB-SP's shares of BWW had any value.

A bench trial was held from January 10, 2022 to January 12, 2022.  The parties were scheduled to complete post-trial briefing by May 9, 2022 and post-trial oral argument had been set for May 17, 2022.  The Domus Debtor believed that it would prevail on its counterclaim and that the Domus Debtor's estate should receive an infusion of cash in the amount of the damages reward which could be used to fund a plan of reorganization and increase any potential distribution to the Debtors' creditors. The Debtors believed that it was in the best interests of the Debtors' estates and their creditors to allow the Delaware Court of Chancery to decide the matter promptly given the late stage of the proceedings.  Since nearly all of the work required to reach a resolution had already been completed as of the Petition Date, the Debtors sought to modify the automatic stay to allow the matter to proceed before the Court of Chancery to the point of entry of a final order at which point the liquidated claim, if any, would be provided for under the terms of a plan of reorganization.

3.    **Town Place Litigation (against the Domus Debtor).**  Plaintiff Town Place CA, LLC ("Town Place") commenced an action on January 20, 2022 against the Domus Debtor and certain of its affiliates in the Court of Common Pleas of Allegheny County, Pennsylvania.  On April 12, 2022, pursuant to 28 U.S.C. §§ 1334, 1452(a) and Bankruptcy Rule 9027, the Domus Debtor removed the action to the United States Bankruptcy Court for the Western District of Pennsylvania styled as *Town Place CA, LLC v. Domus BWW Funding, LLC, et al.,* Adversary No. 22-02028-CMB (the "Town Place Complaint").  At the time of the Chapter 11 filings, a request to transfer the case to the U.S. Bankruptcy Court for the Eastern District of Virginia was currently pending.

The Town Place Complaint alleged that on October 1, 2015, Town Place and HCB entered into a Serviced Apartment Management Agreement ("Management Agreement") under which HCB promised to perform a variety of services for a certain property owned by Town Place but, on June 6, 2020, the parties terminated the relationship and obligations under the Management Agreement by entering into a Mutual Release and Termination Agreement ("Termination Agreement").  Town Place further alleged that pursuant to an audit under the terms of the Termination Agreement, HCB owed Town Place a Final Settlement Amount of $254,771 and that neither this amount nor a separately owed parking revenue amount was paid by HCB.  Town Place further alleged that, in connection with the exercise of its rights as a secured lender, the Domus Debtor swept certain cash held in an HCB bank account that actually belonged to Town Place.  The Town Place Complaint pled breach of contract, fraudulent inducement, conversion, and unjust enrichment against the Domus Debtor as successors to HCB, an affiliate, and demanded no less than $254,771 in damages.

The Domus Debtor denied that it was in any way liable in connection to the Town Place Complaint. Among other things, Town Place agreed in the Termination Agreement to release claims against HCB affiliates, including the Domus Debtor. Further, the Domus Debtor was not a party to the Management Agreement and was not responsible for that contract as HCB's successor or otherwise because it did not acquire HCB's assets. To the extent that any cash belonging to Town Place was swept as a result the exercise of secured lender remedies, such cash was re-advanced to Town Place. As of the Chapter 11 filings, the Domus Debtor had yet to file an Answer in this action. This action is presently stayed as to all parties.

4.    **Insurance Coverage Disputes**. The Debtors had submitted claims to their respective insurance companies to defend and indemnify the claims asserted against the Debtors in the 47 East Litigation. At the time of the Chapter 11 filings, the Debtors' insurers had denied the claims and after the Petition Date, the Debtors initiated legal action against their insurance companies in connection with these claims.

B.    Commencement of the Cases and First Day Relief. On the Petition Date, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code with the Bankruptcy Court. As of the date hereof, the Debtors have continued, and will continue on the Effective Date, to operate their businesses and managing their property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

Also, on the Petition Date, the Debtors filed a number of motions seeking typical "first day" relief in chapter 11 cases authorizing the Debtors to maintain their operations in the ordinary course. This relief was designed to ensure a seamless transition into the chapter 11 process and allow the Debtors to maintain their operation in the ordinary course so as to function smoothly while their cases progressed. The Bankruptcy Court granted substantially all of the relief requested in the First Day Motions and entered various orders authorizing the Debtors to, among other things:

- continue paying employee wages, benefits and reimbursable expenses [D.I. 36];

- continue the use of the Debtors' bank accounts, and use of existing business forms [D.I.37]; and

- consolidate the Chapter 11 Cases for procedural purposes only and to provide for the Bankruptcy Cases to be jointly administered by the Court [D.I. 38].

C.    Retention of Chapter 11 Professionals. On the Petition Date, the Debtors filed an application to retain Karalis PC as bankruptcy counsel [D.I. 3]. On May 31, 2022, the Bankruptcy Court entered an Order approving the retention of Karalis PC as bankruptcy counsel [D.I. 76]. On May 18, 2022, the Debtors filed an application to retain Perkins Coie LLP as special litigation counsel [D.I. 50]. On June 15, 2022, the Bankruptcy Court entered an Order approving the retention of Perkins Coie LLP as special litigation counsel [D.I. 101]. On May 19, 2023, the Domus Debtor filed an application to employ Gelber & Santillo PLLC as special litigation counsel in connection to the 47 East litigation [D.I. 55]. On June 15, 2022, the Bankruptcy Court entered an Order approving the retention of Gelber & Santillo PLLC as special litigation counsel in

connection to the 47 East Litigation [D.I. 102]. On May 20, 2022, the Domus Debtor filed an application to retain Gateley Plc as special English insolvency counsel [D.I. 56]. On June 15, 2022, the Bankruptcy Court entered an Order approving the retention of Gateley Plc as special English insolvency counsel [D.I. 103]. On May 20, 2022, the Debtors filed an application to retain Landis Rath & Cobb LLP as special local litigation counsel in connection to the Delaware Litigation [D.I. 57]. On June 15, 2022, the Bankruptcy Court entered an Order approving the retention of Landis Rath & Cobb LLP as special local litigation counsel in connection to the Delaware Litigation [D.I. 104]. On May 27, 2022, the Debtors filed an application to retain Dinsmore & Shohl LLP as special local litigation counsel in connection to the Town Place Litigation [D.I. 70]. On June 24, 2022, the Debtors withdrew their application to retain Dinsmore & Shohl LLP as special local litigation counsel in connection to the Town Place Litigation [D.I. 121]. On May 27, 2022, the Debtors filed an application to retain McGuireWoods LLP as special litigation co-counsel in connection to the HCB (2020) Bankruptcy Case [D.I. 71]. On June 15, 2022, the Bankruptcy Court entered an Order approving the retention of McGuireWoods LLP as special litigation co-counsel in connection to the HCB (2020) Bankruptcy Case [D.I. 105]. On June 20, 2022, the Debtors filed an application to retain Anderson Kill P.C. as special insurance coverage counsel [D.I. 114]. On June 29, 2022, the Bankruptcy Court entered an Order approving the retention of Anderson Kill P.C. as special insurance coverage counsel [D.I. 127]. On July 18, 2022, the Debtors filed an application to retain Dechert LLP as special litigation counsel in connection to the Delaware Litigation [D.I. 140]. On July 27, 2022, the Bankruptcy Court entered an Order approving the retention of Dechert LLP as special litigation counsel in connection to the Delaware Litigation [D.I. 146]

D.    Filing of Schedules and Assets and Liabilities and Statement of Financial Affairs. On May 12, 2022, the Bankruptcy Court entered an order extending the deadline by which the Debtors must file their Schedules and Statement of Financial Affairs with the Bankruptcy Court [D.I. 39]. In accordance with this Order and pursuant to Bankruptcy Court Rule 1007, the Debtors filed their Schedules and Statements of Financial Affairs on June 7, 2022 [D.I. 83 and D.I. 86]. The Schedules provide summaries of the assets held by each of the Debtors as of the Petition Date, as well as a listing of the Debtors' liabilities, including secured, unsecured priority, and unsecured non-priority Claims pending against each of the Debtors during the period prior to the Petition Date.

E.    Exclusivity. The Debtors sought three (3) extensions of the periods during which they may exclusively propose and solicit acceptances of a chapter 11 plan beyond the initial 120-day and 180-day periods (together, the "Exclusive Periods") for plan proposal and solicitation set forth in Section 1121 of the Bankruptcy Code. By Order dated August 18, 2022, the Bankruptcy Court extended the Exclusive Periods through and including January 29, 2023 to propose a plan and through and including March 30, 2023 for solicitation [D.I. 154]. By Order dated January 26, 2023, the Bankruptcy Court extended the Exclusive Periods through and including July 31, 2023 to propose a plan and through and including September 29, 2023 for solicitation [D.I. 249]. By Order dated June 28, 2023, the Bankruptcy Court extended the Exclusive Periods through and including November 4, 2023 to propose a plan and through and including January 4, 2024 for solicitation [D.I. 369].

F.    Claims Bar Date. The Bankruptcy Court established a Bar Date to file Proofs of

Claim in these Chapter 11 Cases.  The Bar Date fixed by Order of the Court was August 5, 2022 [D.I. 115].  For Claims of Governmental Units, and in accordance with § 502(b)(9) of the Bankruptcy Code, the Bar Date is 180 days from the date of the Order for relief or October 30, 2022.

G.      Extension of Time to file Notices to Remove Actions.  On July 18, 2022, the Debtors filed the Motion for the Entry of an Order Extending the Time Period Within Which the Debtors May File Notices to Remove Actions Pursuant to 28 U.S.C. § 1452 and Fed. R. Bankr. P. 9006 and 9027 [D.I. 141].  On August 1, 2022, 47 East filed an Objection to this motion [D.I. 148].  On August 17, 2022, the Bankruptcy Court granted this motion in part an denied it in part [D.I. 155].

H.      Stay Relief Motions.

1.      47 East.  On May 26, 2022, the Debtors filed the Motion for Modification of the Automatic Stay for the Purpose of Permitting the Continuance, Commencement and Adjudication of Certain Litigation with 47 East 34th Street (NY), L.P. Pursuant to 11 U.S.C. § 362(d) Effective as of May 26, 2022 [D.I. 65].  On June 14, 2022, 47 East filed a limited objection to this motion along with a cross motion for a modification of the automatic stay [D.I. 91].  On June 27, 2022, the Debtors filed an objection to the cross motion filed by 47 East [D.I. 123].  On July 15, 2022, the Bankruptcy Court entered an Order granting, in part, the Debtors' motion and 47 East's cross motion [D.I. 135].

2.      Kinsella Plaintiffs.  On August 18, 2022, the Debtors filed the Motion for entry of an Order Approving Stipulation Granting Relief from the Automatic Stay to Resolve Litigation in the Delaware Court of Chancery in the Matter *GB-SP Holdings, LLC, et al. v. Walker, et al.* Pursuant to 11 U.S.C. §§ 105(a) and 362(d) [D.I. 156].  On September 21, 2022, the Bankruptcy Court entered an Order granting this motion [D.I. 167].  The plaintiffs filed their post-trial reply brief on or about January 13, 2023 and post-trial argument was held on or about February 14, 2023.  The parties are currently awaiting a decision in connection to the Delaware Litigation.

I.      Other Contested Matters before Bankruptcy Court

1.      47 East Motion for 2004 Examination and Production.  On January 18, 2023, 47 East filed the Motion of 47 East 34th Street (NY), L.P. for entry of an Order Authorizing Bankruptcy Rule 2004 Examinations of the Debtors and Certain non-debtor parties [D.I. 241].  On February 1, 2023, the Debtors filed an Objection to this motion [D.I. 251].  In addition, on February 1, 2023, the non-debtor parties filed an Objection to this motion [D.I. 254].  Thereafter, the Debtors, the non-debtor parties and 47 East entered into four (4) Stipulations Extending Deadline for Rule 2004 Examination approved by Orders of the Bankruptcy Court dated March 16, 2023 [D.I. 305], April 17, 2023 [D.I. 340], May 2, 2023 [D.I. 345] and July 13, 2023 [D.I. 382] that, *inter alia*, extended certain deadlines relating to the Fed. R. Bankr. P. examination and production of documents.  On August 28, 2023, the Bankruptcy Court entered an Order [D.I. 425] approving a Stipulation between the Debtors, the non-debtor parties and 47 East to Defer and Stay (I) Bankruptcy Rule 2004 Examination, (II) Production of Documents by Debtors and non-debtor parties in Connection to Bankruptcy Rule 2004 Examination and (III) Submission of the Revised

Confidentiality and Protective Order. On November 1, 2023, the Bankruptcy Court entered a further Order [D.I. 443] approving a Stipulation between the Debtors, the non-debtor parties and 47 East to Defer and Stay (I) Bankruptcy Rule 2004 Examination, (II) Production of Documents by Debtors and non-debtor parties in Connection to Bankruptcy Rule 2004 Examination and (III) Submission of the Revised Confidentiality and Protective Order.

2.    _Settlement of English Insolvency Matters._ On February 8, 2023, the Debtors filed the Motion for Approval of the (I) BGRS Settlement Agreement, (II) BALL Settlement Agreement and (III) HCB (2020), LLC Settlement Agreement Pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. § 105(a) [D.I. 255]. On March 29, 2023, the Bankruptcy Court entered an Order granting this motion [D.I. 321]. These settlements resolved all of the English Insolvency Matters and the HCB Bankruptcy. As a result of these settlements, the Domus Debtor will receive the sum of $124,202 in connection to the BGRS Agreement and estimates that it will receive the sum of approximately £426,000 in connection to the BALL Agreement.

3.    _Debtors' Motion to Clarify Order Modifying Automatic Stay_. On February 13, 2023, the Debtors filed the Motion for Entry of an Order (I) Clarifying Court Order Modifying Automatic Stay dated July 15, 2022 [D.I. 135] and (II) Granting Related Relief [D.I. 257]. The Debtors were forced to file this motion in light of 47 East's allegations in the 47 East Application to Strike the 1801 Debtor's Brief that the 1801 Debtor is a shell entity rather than the same entity formerly known as Versa. This position was contrary to 47 East's own position in this case as 47 East (i) filed a Proof of Claim "to recover … amounts owed to 47 East by 1801 Admin, LLC (_fka_ Versa Capital Management, LLC) …" in the 1801 Debtor's case predicated on the NY trial court's opinion and judgment against 1801 Admin, LLC when it was known as Versa Capital Management LLC; (ii) objected to various matters in that case on the same premise and (iii) pursued an order for a 2004 exam of the 1801 Debtor and non-debtor parties doing business with it on the same premise. On February 16, 2023, 47 East filed an Objection to this motion [D.I. 263]. On February 17, 2023, the Bankruptcy Court entered an Order granting in part and denying in part the Debtors' motion [D.I. 267]. As set forth in this Order, the Bankruptcy Court required, _inter alia_, 47 East to file a notice in the Bankruptcy Court that it withdrew its Application to Strike the 1801 Debtor's Brief on the basis that Versa and the 1801 Debtor were not the same entity and, if not, the Bankruptcy Court would strike and disallow the Proof of Claim filed by 47 East in the 1801 Debtor's bankruptcy case.

4.    _1801 Debtor's Motion to Strike 47 East's Proof of Claim._ On February 22, 2023, the 1801 Debtor filed the Motion for Entry of an Order (I) Striking and Disallowing with Prejudice Proof of Claim No. 6 filed by 47 East 34th Street (NY), L.P. in the 1801 Debtor's Bankruptcy Case and (II) Awarding Monetary Sanctions [D.I. 277]. The 1801 Debtor was forced to file this motion as 47 East did not comply with the terms of the Order clarifying the Order granting relief from the automatic stay by properly withdrawing its Application to Strike the 1801 Debtor's Brief. On February 23, 2023, 47 East filed an Objection to this Motion [D.I. 280]. As oral argument was about to be begin at the hearing on this motion, 47 East requested the Court's guidance to resolve the matter in lieu of proceeding with oral argument. On February 27, 2023, the Bankruptcy Court entered an Amended Order that, _inter alia_, settled this motion and required 47 East to pay the 1801 Debtor's attorneys' fees in preparing, filing and prosecuting the motion [D.I. 289].

5.      Motion for Attorneys' Fees.  As 47 East refused to pay any attorneys' fees, on March 27, 2023, the 1801 Debtor was forced to file the Motion of 1801 Admin, LLC for Entry of an Order Awarding Attorneys' Fees and Costs Against 47 East 34th Street (NY), L.P. Pursuant to Amended Court Order dated February 27, 2023 [D.I. 311].  On May 26, 2023, 47 East filed an Opposition to this motion [D.I. 350].  On June 21, 2023, 47 East filed an Amended Opposition to this motion [D.I. 365].  On September 28, 2023, the Bankruptcy Court entered an Opinion [D.I. 433] and Order [D.I. 434] granting this motion.  The 1801 Debtor was granted a judgment in the amount of $173,380.67 against 47 East without prejudice to the right of the 1801 Debtor ask this Court to increase the amount of this judgment by the amount of the additional reasonable attorneys' fees incurred in prosecuting this motion and, if applicable, (i) to affirm the judgment on appeal and (ii) to collect the judgment.

6.      Motion for a Protective Order.  On May 26, 2023, the Debtors and the non-debtor parties filed the Joint Motion for a Confidentiality and Protective Order in connection to the 47 East's Fed. R. Bankr. P. 2004 examination [D.I. 348].  On June 14, 2023, 47 East filed an Objection to this motion [D.I. 360].  As set forth above, this matter has been deferred in accordance with the Order entered on August 28, 2023 approving a Stipulation between the Debtors, the non-debtor parties and 47 East to Defer and Stay (I) Bankruptcy Rule 2004 Examination, (II) Production of Documents by Debtors and non-debtor parties in Connection to Bankruptcy Rule 2004 Examination and (III) Submission of the Revised Confidentiality and Protective Order [D.I. 425].  On November 1, 2023, the Bankruptcy Court entered a further Order [D.I. 443] approving a Stipulation between the Debtors, the non-debtor parties and 47 East to Defer and Stay (I) Bankruptcy Rule 2004 Examination, (II) Production of Documents by Debtors and non-debtor parties in Connection to Bankruptcy Rule 2004 Examination and (III) Submission of the Revised Confidentiality and Protective Order.

7.      Motion for Application of Rule 7068 to Fee Motion.  On June 2, 2023, 47 East filed the Application of Rule 7068 to Fee Motion [D.I. 356].  On June 16, 2023, the 1801 Debtor filed an Objection to this motion [D.I. 361].  On August 3, 2023, the Bankruptcy Court entered an Order denying this motion [D.I. 415].

J.      Adversary Complaint Commencing the Adversary Proceeding (Insurance Coverage Litigation).  On September 27, 2022, the Debtors filed a complaint in the Bankruptcy Court styled *1801 Admin, LLC f/k/a Versa Capital Management, LLC, and Domus BWW Funding, LLC, v.  Arch Insurance Company, QBE Insurance Corporation, XL Specialty Insurance Corporation, and Aspen American Insurance Company*, commencing adversary no. 22-00070(AMC) to obtain defense costs and recover damages for the unreasonable refusal to pay defense costs and the judgment incurred in the 47 East Litigation, which are covered by Private Equity Management & Professional Liability Insurance Policies sold by the defendants.  In addition, the Debtors seek damages for bad faith claims handling and bad faith denial of coverage for the claims asserted against the Debtors in the 47 East Litigation and declarations that defense costs incurred by the Debtors and individual insureds, and the judgment in the 47 East Litigation against the Debtors are covered by the policies.  The Debtors filed a motion for partial summary judgment concerning the defendants' duty to advance defense costs to the Debtors under the insurance policies, which was fully briefed as of August 16, 2023.  This litigation is currently

17

pending in the District Court at Case No. 2:22-mc-00076-JDW.

K.    <u>Motion to Assume Lease.</u>  On October 31, 2022, the 1801 Debtor filed the Motion to Assume its Unexpired Lease of Non-Residential Real Property, as Amended, with Ten Penn Center Associates L.P. Pursuant to 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006 [D.I. 182].  On December 15, 2022, the Bankruptcy Court granted this motion [D.I. 212].  The assumption of this amended lease created significant cost savings for the 1801 Debtor.

L.    <u>Post-Petition Financing.</u>  On November 4, 2022, the Debtors filed the Motion for Entry of a Final Order (I) Authorizing Debtors to Obtain Secured Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507(b) and F.R.B.P. 2002, 4001, 6014 and 9014 (II) Authorizing Debtors to Enter into the DIP Financing Documents; (III) Granting an Allowed Super Priority Administrative Expense Claim with Priority Over any and all Administrative Expenses of the Kind Specified in 11 U.S.C. §§ 503(b) or 507(b); (IV) Granting a Lien on All Assets of the Estate Senior to All Other Liens Pursuant to 11 U.S.C. 364(d); and (V) Granting Related Relief seeking post-petition financing in the maximum amount of $760,000.00 [D.I. 185].  On November 23, 2022, 47 East filed an Objection to this motion [D.I. 202].  On December 22, 2022, the Bankruptcy Court granted this motion in part [D.I. 218].  On October 13, 2023, the Debtors filed the Motion for Entry of a Second Final Order (I) Authorizing Debtors to Obtain Secured Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507(b) and F.R.B.P. 2002, 4001, 6014 and 9014; (II) Authorizing Debtors to Enter into the DIP Financing Documents; (III) Granting an Allowed Administrative Expense Claim; (IV) Granting a Lien on All Assets of the Estate Senior to All Other Liens Pursuant to 11 U.S.C. 364(d); and (V) Granting Related Relief seeking post-petition financing in the maximum amount of $2,085,000.00 [D.I. 437].

M.    <u>Reversal of the State Court Judgment in favor of 47 East.</u>  On September 21, 2023, the First Department unanimously reversed the judgment in favor of 47 East, vacated the judgment, denied 47 East's Motion for Summary Judgment and granted the Debtors' Cross-Motion for Summary Judgment. *See* footnote 5.  On October 23, 2023, 47 East filed a Motion for (1) Leave to Reargue; (2) Leave to Renew or Reconsider; (3) Leave to Appeal to the Court of Appeals with the First Department where it is currently pending.

**ARTICLE IV**
**OVERVIEW OF THE PLAN**

A.    <u>General</u>.  This Article of the Disclosure Statement summarizes certain relevant provisions of the Plan. The confirmation of a plan of reorganization is the principal objective of a chapter 11 case. A plan of reorganization sets forth the means for treating claims against, and equity interests in, a debtor. Confirmation of a plan of reorganization by a bankruptcy court makes it binding on the debtor, any person or Entity acquiring property under the plan, and any creditor of, or equity interest holder in, the debtor, whether or not such creditor or equity interest holder has accepted the plan or received or retains any property under the plan. Subject to certain limited exceptions and other than as provided in a plan itself or in a confirmation order, a confirmation order discharges the debtor from any debt that arose prior to the date of confirmation of the plan of reorganization.

Pursuant to Article IV of the Plan, on or after the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions consistent with the Plan as may be necessary or appropriate to enable them to implement the provisions of the Plan before, on, or after the Effective Date.

**YOU SHOULD READ THE PLAN IN ITS ENTIRETY BEFORE VOTING
TO ACCEPT OR REJECT THE PLAN.**

B.    Distributions.  One of the key concepts under the Bankruptcy Code is that only Claims and Interests that are "allowed" may receive distributions under a chapter 11 plan. This term is used throughout the Plan and the descriptions below. In general, an Allowed Claim means that the Debtors agree, or if there is a dispute, the Bankruptcy Court determines, that the Claim, and the amount thereof, is in fact a valid obligation of the Debtors. A detailed discussion of the treatment and anticipated means of satisfaction for each Class of Allowed Claims is set forth below.

C.    Treatment of Unclassified Claims.  The treatment of unclassified Claims are as follows:

| Class | Designation | Treatment under the Plan | Estimated Amount Impairment and Entitlement to Vote |
|---|---|---|---|
| N/A | Administrative Expense Claims | Each holder of an Allowed Administrative Expense Claim shall receive payment of Cash in an amount equal to the unpaid portion of such Allowed Administrative Expense Claim. | Unimpaired **Not Entitled to Vote** (Presumed to Accept) |
| N/A | Professional Fee Claims | Each holder of an Allowed Professional Fee Claim shall receive payment in Cash from funds held in the Professional Fee Reserve.[7] | Unimpaired **Not Entitled to Vote** (Presumed to Accept) |
| N/A | Priority Tax Claims | Each holder of an Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim. | Unimpaired **Not Entitled to Vote** (Presumed to Accept) |

---

[7] Professional Fee Claims as of September 30, 2023 total approximately $3.9 million.

19

| Class | Designation | Treatment under the Plan | Estimated Amount Impairment and Entitlement to Vote |
|-------|-------------|--------------------------|-----------------------------------------------------|
| N/A | DIP Claims | DIP Lender shall be paid in full in Cash on the Effective Date, except to the extent that the DIP Lender, in its sole and exclusive discretion, agrees to less favorable treatment, including, without limitation, assumption or refinancing on terms acceptable to the DIP Lender or its designee of the DIP Claims as of the Effective Date.[8] | Unimpaired **Not Entitled to Vote** (Presumed to Accept) |

1.     _Administrative Expense Claims Generally_.  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment with respect to such Allowed Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims, which are governed by Article III.C of the Plan) shall receive, on account of and in full and final satisfaction of its Allowed Administrative Expense Claim an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Expense Claim in accordance with the following:  (1) if such Administrative Expense Claim is Allowed on or prior to the Effective Date, no later than 45 days after the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Expense Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Expense Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Expense Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Expense Claim, without any further action by the Holder of such Allowed Administrative Expense Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors, or the Reorganized Debtors, as applicable; or (5) at such time and upon such terms as set forth in the Final Order of the Bankruptcy Court.

**HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS THAT ARE REQUIRED TO, BUT DO NOT, FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS BY THE ADMINISTRATIVE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE EXPENSE CLAIMS AGAINST THE DEBTORS OR THEIR PROPERTY, AND SUCH ADMINISTRATIVE EXPENSE CLAIMS SHALL BE DEEMED DISCHARGED AS OF THE EFFECTIVE DATE.**

---

[8] The principal balance of the DIP Claim is estimated to be approximately $2.0 million by November 30, 2023.

2.      Professional Fee Claims.

a.      Final Fee Applications. All Professionals or other Persons requesting the final Allowance and payment of compensation and/or reimbursement of expenses pursuant to sections 328, 330, 331 and/or 503(b), for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for Allowance and payment of Professional Fee Claims on counsel to the Debtors and the United States Trustee no later than the first Business Day that is forty-five (45) days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on Reorganized Debtors and the applicable Professional within fourteen (14) calendar days after the filing of the final fee application that relates to the Professional Fee Claim (unless otherwise agreed by the Debtors or Reorganized Debtors, as applicable, and the Professional requesting Allowance and payment of a Professional Fee Claim).

b.      Professional Fee Escrow Account.    As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount, plus a reasonable cushion amount determined by the Debtors.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court.  No Liens, Claims or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates or the Debtors.

The amount of the Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtors from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after the such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; provided, however, that the Reorganized Debtors' obligations with respect to the Allowed Professional Fee Claims shall not be limited by or deemed limited to the balance of funds held in the Professional Fee Reserve.  To the extent the funds in the Professional Fee Escrow Account are insufficient to satisfy the Allowed Professional Fee Claims in full, each Holder of an Allowed Professional Fee Claim shall have an Allowed Administrative Expense Claim for any deficiency, which will be satisfied as soon as reasonably practicable by the Reorganized Debtors.  When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall be promptly paid to the Reorganized Debtors without any further notice to or action, or approval of the Bankruptcy Court or any other Entity.

c.      Professional Fee Amount.    The Professionals shall provide a reasonable and good-faith estimate of their fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) days before the anticipated Effective Date; provided that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals

are not bound to any extent by such estimates. If a professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account.

          d.      <u>Post-Effective Date Fees and Expenses</u>. From and after the Effective Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

          3.      <u>Priority Tax Claims</u>. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

          4.      <u>DIP Claims</u>. As of the Effective Date, the DIP Claims shall be Allowed and deemed to be Allowed Claims in the full amount outstanding under the DIP Credit Agreement, including all accrued and unpaid and continually accruing principal, interest, fees, costs, other charges, and expenses, which Allowed DIP Claims shall not be subject to any setoff, counterclaim, avoidance or challenge. Except to the extent that the DIP Lender, in its sole and exclusive discretion, agrees to less favorable treatment, including, without limitation, assumption or refinancing on terms acceptable to the DIP Lender or its designee of the DIP Claims as of the Effective Date, then in full and final satisfaction, compromise, settlement, and release of, and in exchange for the DIP Claims, the DIP Lender shall be paid in full in Cash on the Effective Date.

          Upon the payment in full of the Allowed DIP Claims in accordance with the terms of this Plan, all Liens and security interests granted to secure such obligations shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. In the event the Allowed DIP Claims are assumed and/or refinanced by the DIP Lender as of the Effective Date, the Confirmation Order shall provide that the Liens and security interests granted to secure the DIP Claims shall remain in full force and effect and shall continue to be unaffected by the occurrence of the Effective Date of the Plan.

         D.      <u>Classification of Claims and Interests Summary</u>. The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor. The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan.

The Plan establishes a comprehensive classification of Claims and Interests. The table below summarizes the classification, treatment, voting rights, and Claims and Interests, by Class, under the Plan.

| Class | Designation | Treatment under the Plan | Impairment and Entitlement |
|---|---|---|---|
| 1 | Other Priority Claims | Each Holder of an Allowed Other Priority Claim, except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, shall receive, at the option of the applicable Debtor, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim; (i) payment in full in Cash on the Effective Date, or as soon as reasonably practicable thereafter; or (ii) such other treatment consistent with section 1129(a)(9) of the Bankruptcy Code. | Unimpaired<br><br>**Not Entitled to Vote**<br><br>(Presumed to Accept) |
| 2A | Ongoing General Unsecured Claims | Except to the extent that a Holder of an Ongoing General Unsecured Claim and the Debtor against which such Allowed Ongoing General Unsecured Claim is asserted agree to less favorable treatment, each Holder of an Allowed Ongoing General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for its Claim, subject to the Holder's ability to elect Convenience Claim treatment on account of its Allowed Ongoing General Unsecured Claim, its Pro Rata Share of the Class 2A Fund within forty-five (45) days following the later of (a) the Effective Date or (b) the date that such Ongoing General Unsecured Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date). | Impaired<br><br>**Entitled to Vote** |
| 2B | Other General Unsecured Litigation Claims | Except to the extent that a Holder of an Other General Unsecured Litigation Claim and the Debtor against which such Allowed Other General Unsecured Litigation Claim is asserted agree to less favorable treatment, each Holder of an Allowed Other General Unsecured Litigation Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Allowed Other General Unsecured Litigation Claim, subject to the Holder's ability to elect Convenience Claim treatment on account of its Allowed Other General Unsecured Litigation Claim, its Pro Rata Share of the Class 2B Fund within forty-five (45) days following the later of (a) the Effective Date, or (b) the date that such Other General Unsecured Litigation Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date), or (c) the Reorganized Debtors' deposit of the Net Proceeds from the Adversary Proceeding determined in accordance with <u>Article IV.O</u> of the Plan.   Solely to the extent that the Holder of an Allowed Other General Unsecured Litigation Claim that votes to accept the Plan fails to recover in full from the Class 2B Fund, such Holder may elect to have the unsatisfied portion of its Allowed Claim treated as an Allowed Convenience Claim and receive cash in an amount equal to the lesser of (a) the | Impaired<br><br>**Entitled to Vote** |

23

| Class | Designation | Treatment under the Plan | Impairment and Entitlement |
|---|---|---|---|
|  |  | amount of the unsatisfied portion of the Allowed Other General Unsecured Litigation Claim and (b) $25,000. |  |
| 3 | Convenience Claims | In full and final satisfaction, compromise, settlement, release and discharge of, and in exchange for an Allowed Convenience Claim, each Holder of an Allowed Convenience Claim shall receive within forty-five (45) days following the later of (a) the Effective Date or (b) the date that such Convenience Claims becomes Allowed (if such Claim becomes Allowed after the Effective Date), Cash in an amount equal to the 100% of such Holder's Allowed Convenience Claim. | Impaired<br><br>**Entitled to Vote** |
| 4 | Equity Interests Debtors | As of the Effective Date, the Interests in the Debtors shall remain unchanged and equal to the structure that existed on the Petition Date. | Unimpaired<br><br>**Not Entitled to Vote**<br><br>(Presumed to Accept) |
| 5 | Subordinated Claims | As of the Effective Date, all Class 5 Claims shall be discharged, cancelled, released, and extinguished without any distribution to Holders of such Claims. | Impaired<br><br>**Not Entitled to Vote**<br><br>(Deemed to Reject) |

E.    <u>Treatment of Claims and Interests</u>.  Holders of Claims and Interests shall receive the treatment as set forth below:

1.    **Class 1.** <u>**Other Priority Claims.**</u>

a.    <u>Classification</u>:  Class 1 consists of all Other Priority Claims.

b.    <u>Treatment</u>:  Each Holder of an Allowed Other Priority Claim, except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, shall receive, at the option of the applicable Debtor, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim;

i.    Payment in full in Cash on the Effective Date, or as soon as reasonably practicable thereafter; or

ii.    such other treatment consistent with section 1129(a)(9) of the Bankruptcy Code.

c.    <u>Voting</u>:  Class 1 is Unimpaired, and Holders of Other Priority

24

Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.    **Class 2A.**    <u>**Ongoing General Unsecured Claims.**</u>

a.    <u>Classification</u>:  Class 2A consists of all Ongoing General Unsecured Claims.

b.    <u>Treatment</u>:   Except to the extent that a Holder of an Ongoing General Unsecured Claim and the Debtor against which such Allowed Ongoing General Unsecured Claim is asserted agree to less favorable treatment, each Holder of an Allowed Ongoing General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for its Claim, subject to the Holder's ability to elect Convenience Claim treatment on account of its Allowed Ongoing General Unsecured Claim, its Pro Rata Share of the Class 2A Fund within forty-five (45) days following the later of (a) the Effective Date or (b) the date that such Ongoing General Unsecured Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date).

c.    <u>Voting</u>:  Class 2A is Impaired under the Plan.  Therefore, Holders of Ongoing General Unsecured Claims are entitled to vote to accept or reject the Plan.

d.    <u>General Provisions</u>:  No interest or other similar postpetition charges will be paid on account of Allowed Class 2A Claims.

2B.    **Class 2B.**    <u>**Other General Unsecured Litigation Claims**</u>.

a.    <u>Classification</u>:   Class 2B consists of all Other General Unsecured Litigation Claims.[9]

b.    <u>Treatment</u>:  Except to the extent that a Holder of an Other General Unsecured Litigation Claim and the Debtor against which such Allowed Other General Unsecured Litigation Claim is asserted agree to less favorable treatment, each Holder of an Allowed Other General Unsecured Litigation Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Allowed Other General Unsecured Litigation Claim, subject to the Holder's ability to elect Convenience Claim

---

[9] For the avoidance of doubt, the Holders of Class 2B, Other General Unsecured Litigation Claims are (i) 47 East 34th Street (NY), L.P. ("<u>47 East</u>"), (ii) GB-SP Holdings LLC and Donal Kinsella (collectively, the "<u>Kinsella Plaintiffs</u>"), (iii) Town Place CA, LLC ("<u>Town Place</u>"), and the Indemnification Claims Filed (as defined in the Plan).

treatment on account of its Allowed Other General Unsecured Litigation Claim, its Pro Rata Share of the Class 2B Fund within forty-five (45) days following the later of (a) the Effective Date, or (b) the date that such Other General Unsecured Litigation Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date), or (c) the Reorganized Debtors' deposit of the Net Proceeds from the Adversary Proceeding determined in accordance with <u>Article IV.O</u> of the Plan.   Solely to the extent that the Holder of an Allowed Other General Unsecured Litigation Claim that votes to accept the Plan fails to recover in full from the Class 2B Fund, such Holder may elect to have the unsatisfied portion of its Allowed Claim treated as an Allowed Convenience Claim and receive cash in an amount equal to the lesser of (a) the amount of the unsatisfied portion of the Allowed Other General Unsecured Litigation Claim and (b) $25,000.

c.      <u>Voting</u>:  Class 2B is Impaired, and each holder of an Allowed Other General Unsecured Litigation Claims is entitled to vote to accept or reject the Plan.

3.      **Class 3.          <u>Convenience Claims.</u>**

a.      <u>Classification</u>:  Class 3 consists of all Convenience Claims.

b.      <u>Treatment</u>:  In full and final satisfaction, compromise, settlement, release and discharge of, and in exchange for an Allowed Convenience Claim, each Holder of an Allowed Convenience Claim shall receive within forty-five (45) days following the later of (a) the Effective Date or (b) the date that such Convenience Claims becomes Allowed (if such Claim becomes Allowed after the Effective Date), Cash in an amount equal to the 100% of such Holder's Allowed Convenience Claim.

c.      <u>Voting</u>:  Class 3 is Impaired, and each Holder of a Convenience Claim is entitled to vote to accept or reject the Plan.

4.      **Class 4. <u>Equity Interests in Debtors.</u>**

a.      <u>Classification</u>: Class 4 consists of all Equity Interests in the Debtors.

b.      <u>Treatment</u>:  As of the Effective Date, the Interests in the Debtors shall remain unchanged and equal to the structure that existed on the Petition Date.

c.      <u>Voting</u>:   Class 4 is unimpaired.  Holders of Equity Interests in the Debtors are conclusively presumed to have accepted the Plan

pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 4 Equity Interests in the Debtors are not entitled to vote to accept or reject the Plan.

5.    **Class 5.  <u>Subordinated Claims</u>.**

a.    <u>Classification</u>:  Class 5 consists of all Claims subordinated pursuant to section 510(b) of the Bankruptcy Code, general principles of equitable subordination, or otherwise.

b.    <u>Treatment</u>:  As of the Effective Date, all Class 5 Claims shall be discharged, cancelled, released, and extinguished without any distribution to Holders of such Claims.

c.    <u>Voting</u>:   Class 5 is impaired.  Holders (if any) of Allowed Class 5 Claims are conclusively deemed to have rejected the Plan. Therefore, Holders (if any) of Class 5 Claims are not entitled to vote to accept or reject the Plan.

F.    <u>Special Provisions Governing Unimpaired Claims</u>.  Except as otherwise provided in the Plan, nothing in the Plan shall affect the Debtors' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs of recoupments against any Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are unimpaired shall remain Disputed Claims under the Plan.

G.    <u>Elimination of Vacant Classes</u>.  Any Class of Claims or Interests that does not have at least one Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

H.    <u>Voting Classes, Presumed Acceptance by Non-Voting Classes</u>.  If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

I.    <u>Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code</u>.  Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to <u>Article II.B</u> of the Plan.  The Debtors reserve the right to modify the Plan in accordance with <u>Article XI.B</u> of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

J.      <u>Controversy Concerning Impairment</u>.  If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Code shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

K.      <u>Subordinated Claims</u>.    Except as expressly provided herein, the allowance, classification, and treatment of Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination relating thereto.

L.      <u>Means for Implementation of the Plan.</u>

1.      <u>General Settlement of Claims and Interests</u>.    Pursuant to 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute and be deemed a good-faith compromise and settlement of all Claims, Interests, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

2.      <u>Continued Legal Existence of the Debtors</u>.  The Reorganized Debtors shall continue to exist on and after the Effective Date, with all of the powers each is entitled to exercise under applicable law and pursuant to their articles of formation and bylaws in effect prior to the Effective Date, except to the extent such articles of formation and bylaws are amended.

3.      <u>Operations of the Debtors between Confirmation and the Effective Date</u>. The Debtors shall continue to operate as debtors and debtors in possession during the period from the Confirmation Date to the Effective Date.

4.      <u>Reorganized Debtors' Directors and Officers</u>.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, to the extent that there are anticipated changes in Reorganized Debtors' directors and officers, the Debtors will identify any such changes in the Plan Supplement and the nature of any compensation to be paid to any director or officer that is an Insider.

5.      <u>Due Authorization</u>. As of the Effective Date, all actions contemplated by the Plan that require corporate action of the Debtors, or either of them, including actions requiring a vote of all the Equity Security Holders in each Debtor, and execution of all documentation incident to the Plan, shall be deemed to have been authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by the Bankruptcy Court, members, officers, or directors of the Debtors, Reorganized Debtors, or any other Person.

6.      <u>Release of Liens</u>. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, and in the case of the DIP Claim, concurrently with satisfaction in full of the DIP Claim that is Allowed as of the Effective Date, all Liens or other security interests against any property of the Debtors' Estates that have not been previously released shall be fully released, settled, and compromised, and the Holder of such Liens or other security interest against any property of the Debtors' Estates shall be authorized to take such action as may be reasonably requested by the Debtors (or Reorganized Debtors, as the case may be) to evidence such releases.

7.      <u>Effectuating Documents and Further Transactions</u>. The officers of the Debtors are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan in the name of and on behalf of Reorganized Debtors, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.  The secretary or any assistant secretary of each Debtor, as applicable, shall be authorized to attest any of the foregoing actions.

8.      <u>Payment of the Equity Security Holders Contribution</u>.  On the Effective Date, the Equity Security Holders shall fund the Equity Security Holders Contribution to the Reorganized Debtors.

9.      <u>Exit Facility</u>.

1.      On the Effective Date, the Reorganized Debtors shall enter into the Exit Facility on the terms set forth in the Exit Facility Documents.  To the extent not already approved, Confirmation shall be deemed approval of the Exit Facility Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the Reorganized Debtors to enter into and execute the Exit Facilities Credit Agreement, and such other Exit Facility Documents as may be required to effectuate the Exit Facilities.

2.      On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents, to the extent applicable:  (a) shall be deemed to be granted; (b) shall be legal, binding, automatically perfected, non-avoidable, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents; (c) shall be deemed automatically perfected on or prior to the Effective Date, subject only to such Liens and security interests as may be permitted under the respective Exit Facility Documents; and (d) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.

29

3.      To the extent the Reorganized Debtors granted such Liens and security interests, the Exit Lender shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and Confirmation Order (it being understood that perfection shall occur automatically by virtue of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

4.      In addition, the Reorganized Debtors may enter into a litigation funding agreement to pursue retained Causes of Action, which litigation funding agreement may be able to offer terms to the lender typical of litigation funders, including, without limitation, a contingent interest in up to 30% of the amounts recovered from the defendants or in settlement of such retained Causes of Action.

10.      Sources of Consideration for Plan Distributions.

a.      All amounts necessary for the Reorganized Debtors to fund or pay on the Effective Date in accordance with the terms of the Plan and Confirmation Order: (a) the Professional Fee Reserve Account; (b) the Class 2A Fund, (c) the Allowed Class 1 Other Priority Claims, (d) the Allowed Class 3 Convenience Claims, and (e) the Allowed Priority Tax Claims shall be from the proceeds of the Exit Facility, the Equity Security Holders Contribution to the Debtors, and the Carve-Out set forth in the DIP Credit Agreement, of an amount equal to the lesser of:  50% of the net proceeds of the DIP Collateral remaining after payment of (i) first, Quarterly Fees, and (ii) second, the allowed administrative claim of each Retained Professional allowed by the Bankruptcy Court pursuant to section 330 of the Bankruptcy Code; provided, however, the proceeds of the Term Loans shall not be used to pay any contingency fees of any Retained Professional or $150,000, which shall be permitted to be used to fund payments to Holders of Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims and Allowed General Unsecured Claims;

b.      The Class 2B Fund shall be funded by the Net Proceeds from the Adversary Proceeding, if any, as described in Article IV.M below; and

c.      All amounts necessary for the Reorganized Debtors to fund Allowed Administrative Expense Claims as they come due, in accordance with the terms of the Plan and the Confirmation Order, shall be from Cash on hand on or after the Effective Date.

11.      Disbursing Agent. The Disbursing Agent shall have the rights, powers and responsibilities provided in Article IV.Q below.  The Disbursing Agent is defined in the Plan to mean, the Reorganized Debtors.

12.      Single Satisfaction of Allowed General Unsecured Claims.  In no event shall any holder of an Allowed General Unsecured Claim recover more than the full amount of its Allowed General Unsecured Claim under the Plan, as applicable, and to the extent that the holder

of an Allowed General Unsecured Claim has received, or in the future receives, payment on account of such Allowed General Unsecured Claim from a party that is not a Debtor or Reorganized Debtor, such holder shall repay, return, or deliver to the applicable Reorganized Debtor, any Distribution held by or transferred to such holder to the extent the holder's total recovery on account of its Allowed General Unsecured Claim from the third party and under the Plan exceeds the amount of such holder's Allowed General Unsecured Claim.

13.    <u>Exemption from Certain Transfer Taxes and Recording Fees</u>. To the maximum extent permitted by section 1146(a) of the Bankruptcy Code and applicable law, any transfers of property pursuant to the Plan, and payments by the Reorganized Debtors to or from the Class 2A Fund or Class 2B Fund, shall constitute "transfers under a plan" within the purview of 1146(a) of the Bankruptcy Code and shall not be taxed under any law imposing a stamp tax or similar tax.

14.    <u>Preservation of Causes of Action</u>.

a.    In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to <u>Article IX</u> of the Plan, the Debtors and Reorganized Debtors, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, other than Avoidance Actions and Causes of Action exculpated or released pursuant to the releases and exculpations contained in the Plan.

b.    The Debtors and the Reorganized Debtors, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Cause of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court.

c.    No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Reorganized Debtors will not pursue any and all available Causes of Action against it, except as otherwise expressly provided in the Plan, including <u>Article IX</u> thereof.

M.    <u>Net Proceeds from the Adversary Proceeding</u>. Subject to the continued ability to procure litigation funding on terms acceptable to the Debtors to fund the fees, costs and expenses arising from, and in connection with, investigating, pursuing, prosecuting and/or compromising the Adversary Proceeding and all appeals, if any, with respect thereto, the Debtors may continue to prosecute the Adversary Proceeding to the entry of a Final Order; provided, however, the Debtors shall have the exclusive right to settle, abandon, or dismiss any and all counts identified in the Adversary Proceeding without any further order of the Bankruptcy Court or consent of any other Entity. All fees, costs and expenses of investigating, pursuing, prosecuting and/or compromising the Adversary Proceeding incurred before or after the Petition Date, including those paid by advances under the loans provided by the DIP Lender or Exit Lender, shall be satisfied from the proceeds of the Adversary Proceeding before any proceeds remaining after the satisfaction of such fees, costs, expenses and loans are paid to the Holders of Class 2B Allowed

31

Other General Unsecured Litigation Claims. For the avoidance of doubt, all fees, costs and expenses advanced before or after the Petition Date, by the Debtors, Reorganized Debtors, DIP Lender, or Exit Lender prior to receipt of any proceeds from the Adversary Proceeding (the "Litigation Advances") shall be repaid to the Reorganized Debtors, DIP Lender, or Exit Lender, as applicable, as and when proceeds are received from the Adversary Proceeding, and the balance of such proceeds shall be deposited into the Class 2B Fund for distribution to Holders of Allowed Other General Unsecured Litigation Claims. For the further avoidance of doubt, Litigation Advances recovered in the Adversary Proceeding shall not be distributed to the Holders of Class 2B Claims, but shall be retained solely by and for the benefit of the Reorganized Debtors, DIP Lender, or Exit Lender, as applicable.

N.    Vesting of Assets in the Reorganized Debtors. In accordance with Article IX.A of the Plan, and except as explicitly provided in the Plan, on the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all property comprising the Estates shall vest in the Reorganized Debtors free and clear of all Liens, Claims, interests, charges, other Encumbrances and liabilities of any kind unless expressly provided by the Plan or the Confirmation Order. On and after the Effective Date, the Reorganized Debtors may continue their operations and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

O.    Retention of Certain Causes of Action. In accordance with section 1123(b)(3) of the Bankruptcy Code, the Debtors' and their Estates' release of certain Causes of Action under Article IX.F of the Plan, and except as otherwise provided in the Plan, all Causes of Action that each Debtor may hold against any Person shall vest in Reorganized Debtors on the Effective Date. Thereafter, subject to Article IV.N and Article IX.F of the Plan, Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any specific Cause of Action as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action. The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of Confirmation or the occurrence of the Effective Date.

P.    Treatment of Executory Contracts and Unexpired Leases

1.    Assumption and Rejection of Executory Contracts and Unexpired Leases. As set forth in Article V of the Plan, on the Effective Date, except as otherwise provided in the Plan, all Executory Contracts and Unexpired Leases shall be deemed assumed by Reorganized Debtors without the need for any further notice to or action, order, or approval of the Bankruptcy Court under sections 365 or 1123 of the Bankruptcy Code, except for Executory Contracts or

32

Unexpired Leases: (a) that are identified on the Rejected Contracts and Unexpired Leases Schedule; (b) that previously expired or terminated pursuant to their terms; (c) that the Debtors have previously assumed or rejected pursuant to a Final Order of the Bankruptcy Court; (d) that are the subject of a motion to reject that remains pending as of the Effective Date; (e) as to which the effective date of rejection will occur (or is requested by the Debtors to occur) after the Effective Date; or (f) as to which the Debtors or Reorganized Debtors, as applicable, determine, in the exercise of their reasonable business judgment, that the Cure Amount, as determined by a Final Order or as otherwise finally resolved, would render assumption of such Executory Contract or Unexpired Lease unfavorable to Debtors or Reorganized Debtors; provided that the Debtors reserve the right to seek enforcement of an assumed or assumed and assigned Executory Contract or Unexpired Lease following the Confirmation Date, including seeking an order of the Bankruptcy Court rejecting such Executory Contract or Unexpired Lease for cause.

        a.     Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption or rejection, as applicable, of Executory Contracts or Unexpired Leases pursuant to the Plan, pursuant to sections 365 and 1123 of the Bankruptcy Code. Except as otherwise set forth in the Plan, the assumption or rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be effective as of the Effective Date; provided, that the rejection of an Unexpired Lease shall be effective as of the later of: (a) the Effective Date; and (b) the date on which the leased premises are unconditionally surrendered to the non-Debtor counterparty to the rejected Unexpired Lease.

Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or a Final Order of the Bankruptcy Court shall re-vest in and be fully enforceable by Reorganized Debtors in accordance with its terms, except as such terms may have been modified by the provisions of the Plan, the Confirmation Order, or any Final Order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by Reorganized Debtors.

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash on the Effective Date or in the ordinary course of the Debtors' or Reorganized Debtors' operations, subject to the limitation described in the Plan.

Except as otherwise provided in the Plan, the Debtors shall, on or before the date of filing of the Plan Supplement, cause Cure and Assumption Notices to be served on affected counterparties to Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan. Any objection by a non-Debtor counterparty to an Executory Contract or Unexpired Lease to the assumption, assumption and assignment, the related Cure Amount, or adequate assurance, must be filed, served, and actually received by the Debtors on or prior to the deadline for filing objections to the Plan (or such later date as may be provided in the applicable Cure and Assumption Notice); provided, that each counterparty to an Executory Contract or Unexpired Lease (a) that the Debtors later determine to assume or (b) as to which the Debtors modify the applicable Cure Amount, must object to the assumption or Cure Amount, as applicable, by the earlier of (i) fourteen (14) days after the Debtors serve such counterparty with corresponding Cure and Assumption Notice; and (ii) the

33

Confirmation Hearing. **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease shall be forever barred, estopped, and enjoined from contesting the Debtors' assumption of the applicable Executory Contract or Unexpired Lease and from requesting payment of a Cure Amount that differs from the amounts paid or proposed to be paid by the Debtors or Reorganized Debtors, in each case without the need for any objection by the Debtors or Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court. Reorganized Debtors may settle any dispute regarding a Cure Amount without any further notice to or action, order, or approval of the Bankruptcy Court.**

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed, or assumed and assigned, pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or would be deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any change of control or similar provision), then such provision shall be deemed preempted and modified such that neither the Debtors' assumption or assumption and assignment of the Executory Contract or Unexpired Lease nor any of the transactions contemplated by the Plan shall entitle the non-debtor counterparty to terminate or modify such Executory Contract or Unexpired Lease or to exercise any other purported default-related rights thereunder.

**The Debtors' assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and payment of any applicable Cure Amount in accordance with the procedures set forth in <u>Article V.C</u> of the Plan, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed, or assumed and assigned, Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged as of the later of: (a) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption; (b) the effective date of such assumption; or (c) the Effective Date, in each case without the need for any objection by the Debtors or Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.**

In the event of a timely filed objection regarding: (1) a Cure Amount; (2) the ability of Reorganized Debtors or any assignee to provide adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption or the requirements of section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon by the Debtors or Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. The Debtors or Reorganized Debtors, applicable, shall pay the applicable Cure Amount as soon as reasonably practicable after entry of a Final Order resolving such dispute and approving such assumption, or as may otherwise be agreed upon by the Debtors or Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. To the

extent that a dispute regarding the applicable Cure Amount is resolved or determined unfavorably to the Debtors, the Debtors may, in their discretion, reject the applicable Executory Contract or Unexpired Lease after such determination, which rejection shall supersede, nullify, and render of no force or effect any earlier assumption or assumption and assignment. Under no circumstances shall the status of payment of a Cure Amount required by section 365(b)(1) of the Bankruptcy Code following the entry of a Final Order resolving the dispute and approving the assumption prevent or delay implementation of the Plan or the occurrence of the Effective Date.

2.      Rejection Damages Claims. Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim for Rejection Damages Claims, if any, shall be filed within thirty (30) days after the latest to occur of: (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) the effective date of the rejection of such Executory Contract or Unexpired Lease; or (3) the Effective Date (as applicable, the "Rejection Damages Bar Date"). Claims arising from the rejection of an Executory Contract or an Unexpired Lease shall be classified as General Unsecured Claims and subject to the provisions of Article VI of the Plan and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. Claims arising from the rejection of an indemnity agreement shall be classified as a Class 2B Other General Unsecured Litigation Claims and subject to the provisions of Article VI of the Plan and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. **Any Holder of a Rejection Damages Claim that is required to file a Proof of Claim in accordance with Article V.B of the Plan, but fails to do so on or before the Rejection Damages Bar Date, shall not be treated as a creditor with respect to such Claim for the purposes of voting or distributions, and such Rejection Damages Claim shall be automatically Disallowed, forever barred from assertion, and unenforceable against the Debtors, their Estates, Reorganized Debtors, or its or their respective property, whether by setoff, recoupment, or otherwise, without the need for any objection by the Debtors or Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court, and such Rejection Damages Claim shall be deemed fully satisfied, released, and discharged**.

3.      Contracts and Leases Entered into After the Petition Date.  Contracts and leases entered into after the Petition Date by the Debtors, including any Executory Contracts and Unexpired Leases assumed by the Debtors, will be performed by the Debtors or Reorganized Debtors in the ordinary course of their operations. Accordingly, such contracts and leases (including any assumed Executory Contract and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

4.      Insurance Policies.  Notwithstanding anything to the contrary herein, all Insurance Policies issued or entered into prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtors; *provided, however*, that to the extent any Insurance Policy is determined to be an Executory Contract, then, subject to Article V.F. of the Plan, and notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume such Insurance Policy and pay all future obligations, if any, in respect thereof and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interests of the Debtors, their respective Estates and all parties in interest. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no

35

payments are required to cure any defaults of any Debtor existing as of the Confirmation Date with respect to any Insurance Policy; and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any Insurance Policy shall be indefeasible. Moreover, as of the Effective Date, all payments of premiums or other charges made by the Debtors on or after the Petition Date under or with respect to any Insurance Policy shall be deemed to have been authorized, approved, and ratified in all respects without any requirement of further action by the Bankruptcy Court. Notwithstanding anything to the contrary contained herein, Confirmation shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed.

5. **Modifications, Amendments, Supplements, Restatements, or Other Agreements**. Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless the Debtors reject or repudiate any of the foregoing agreements. Modifications, amendments, and supplements to, or restatements of, prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

6. **Reservation of Rights**. Neither the inclusion of any Executory Contract or Unexpired Lease on the Schedules, a Cure and Assumption Notice, or the Rejected Executory contracts and Unexpired Leases Schedule, nor anything contained in any Plan Document, shall constitute an admission by the Debtors that a contract or lease is in fact an Executory Contract or Unexpired Lease or that Reorganized Debtors has any liability thereunder. If there is a dispute as of the Confirmation Date regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors, or, after the Effective Date, Reorganized Debtors, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

Q. **Provisions Governing Distributions**

1. **Distributions Generally**. The Disbursing Agent shall make all Distributions to appropriate holders of Allowed Claims in accordance with the terms of the Plan.

2. **Distributions on Account of Certain Claims Allowed as of the Effective Date**. Except as otherwise provided in the Plan, on or as soon as practicable after the Effective Date, the Disbursing Agent shall make Distributions in Cash in amounts equal to all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and if applicable, Allowed Secured Claims.

3.    Distributions on Account of Allowed General Unsecured Claims. On each Distribution Date, as applicable, the Disbursing Agent shall Distribute to each Holder of an Allowed General Unsecured Claim an amount equal to such Holder's Pro Rata Share of (1) the total balance of the Class 2A Fund or Class 2B Fund, as applicable, as of such date, less (2) the balance of the Disputed Claims Reserve for Class 2A or Class 2B, as applicable.

4.    Distributions on Account of Disputed Claims Allowed After the Effective Date. Distributions on account of any Disputed Claim shall be made to the extent such Claim is Allowed in accordance with the provisions of Article VII. Except as otherwise provided in the Plan, the Confirmation Order, another order of the Bankruptcy Court, or as agreed to by the relevant parties, Distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made as soon as practicable after the Disputed Claim becomes an Allowed Claim.

5.    Rights and Powers of Disbursing Agent.  The Disbursing Agent shall make all Distributions to the appropriate holders of Allowed Claims in accordance with the terms of the Plan, including Article VI of the Plan. Except as otherwise ordered by the Bankruptcy Court, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  The Disbursing Agent shall be empowered to: (a) affect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. The Disbursing Agent may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns for all taxable periods through the date on which final Distributions are made.

6.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

a.    Claims Record Date. As of the close of business on the Claims Record Date, the various transfer registers for each of the Classes of Claims as maintained by the Debtors or their agents shall be deemed closed for purposes of determining whether a holder of such a Claim is a record holder entitled to a Distribution under the Plan, and there shall be no further changes in the record holders or the permitted designees with respect to such Claims. The Debtors or Reorganized Debtors, as applicable, shall have no obligation to recognize any transfer or designation of such Claims occurring after the close of business on the Claims Record Date. With respect to payment of any Cure Amounts or assumption disputes, neither the Debtors nor Reorganized Debtors shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the close of business on the Claims Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

b.    Delivery of Distributions. If a Person holds more than one Claim in any one Class, in the Disbursing Agent's sole discretion, all such Claims will be aggregated into one Claim and one Distribution will be made with respect to the aggregated Claim.

c.    Special Rules for Distributions to Holders of Disputed Claims. Except as otherwise provided in the Plan or agreed to by the relevant parties: (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (b) any Person that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on account of the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Disputed Claims have been Allowed or expunged. Any Distributions arising from property Distributed to holders of Allowed Claims in a Class and paid to such holders under the Plan shall also be paid, in the applicable amounts, to any holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such Distributions were earlier paid to holders of Allowed Claims in such Class.

7.    Undeliverable and Non-Negotiated Distributions

a.    Undeliverable Distributions. If any Distribution to a holder of an Allowed Claim is returned to Reorganized Debtors as undeliverable, no further Distributions shall be made to such holder unless and until Reorganized Debtors are notified in writing of such holder's then-current address or other necessary information for delivery, at which time such previously undeliverable Distribution shall be made to such holder within ninety (90) days of receipt of such holder's then-current address or other necessary information; *provided, however*, that any such undeliverable Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days after the date of the initial attempted Distribution. After such date, all unclaimed property or interests in property shall revert to Reorganized Debtors automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any holder to such property or interest in property shall be discharged and forever barred.

b.    Non-Negotiated Distributions. If any Distribution to a Holder of an Allowed Claim is not negotiated for a period of 180 days after the Distribution, then such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and re-vest in Reorganized Debtors. After such date, all non-negotiated property or interests in property shall revert to Reorganized Debtors automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any Holder to such property or interest in property shall be discharged and forever barred.

8.    Manner of Payment under the Plan.    Except as otherwise specifically provided in the Plan, at the option of Reorganized Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of Reorganized Debtors.

9.    Satisfaction of Claims.    Except as otherwise specifically provided in the Plan, any Distributions to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

10.     Minimum Cash Distributions.  Reorganized Debtors shall not be required to make any Distribution of Cash less than twenty dollars ($20) to any holder of an Allowed Claim; *provided, however*, that if any Distribution is not made pursuant to Article VI.J of the Plan, such Distribution shall be added to any subsequent Distribution to be made on behalf of the holder's Allowed Claim.

11.     Postpetition Interest.  Interest shall not accrue on Impaired Claims; no holder of an Impaired Claim shall be entitled to interest accruing on or after the Petition Date on any such Impaired Claim, and interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

12.     Setoffs.  The Debtors and Reorganized Debtors may, pursuant to the applicable provisions of the Bankruptcy Code, or applicable non-bankruptcy law, set off against any applicable Allowed Claim (before any Distribution is made on account of such Claim) any and all claims, rights, Causes of Action, debts or liabilities of any nature that the Debtors or Reorganized Debtors may hold against the holder of such Allowed Claim; *provided, however*, that the failure to effect such a setoff shall not constitute a waiver or release of any such claims, rights, Causes of Action, debts or liabilities.

13.     Claims Paid or Payable by Third Parties.  A Claim shall be reduced in full, and such Claim shall be Disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. To the extent a holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Debtor on account of such Claim, such holder shall repay, return, or deliver any Distribution held by or transferred to such holder to the Reorganized Debtors to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.

14.     Compliance with Tax Requirements and Allocations.  In connection with the Plan and all Distributions thereunder, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any federal, state or local taxing authority, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions including tax certification forms, or establishing any other mechanisms it believes are reasonable and appropriate.

For tax purposes, Distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of the Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claim.

39

R.   <u>Procedures for Resolving Contingent, Unliquidated, and Disputed Claims</u>.

1.   <u>Applicability</u>.   All Disputed Claims against the Debtors, other than Administrative Expense Claims, shall be subject to the provisions of <u>Article VII</u> of the Plan.   All Administrative Expense Claims shall be determined and, if Allowed, paid in accordance with <u>Article III</u> of the Plan.

2.   <u>Allowance of Claims</u>.   After the Effective Date, Reorganized Debtors shall have and retain any and all rights and defenses that the Debtors, or either of them, had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim becomes Allowed by Final Order of the Bankruptcy Court or by agreement between the Debtors or Reorganized Debtors, on the one hand, and the Holder of such Claim, on the other.

3.   <u>Claims Administration Responsibilities</u>.   Except as otherwise expressly provided in the Plan, from and after the Effective Date, Reorganized Debtors shall have the authority (a) to file, withdraw, or litigate to judgment objections to Claims; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

4.   <u>Estimation of Claims</u>.   The Debtors (before the Effective Date) or Reorganized Debtors (on and after the Effective Date) may at any time request that the Bankruptcy Court to estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.   In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any Person.  If the estimated amount of a Claim constitutes a maximum limitation on such Claim, the Debtors (before the Effective Date) or Reorganized Debtors (on and after the Effective Date) may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, objected to, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

5.   <u>No Distributions Pending Allowance</u>.   No Distributions or other consideration shall be paid with respect to any Claim that is a Disputed Claim unless and until all objections to such Disputed Claim are resolved and such Disputed Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court or agreement between the Debtors or Reorganized Debtors, on the one hand, and the holder of such Claim, on the other.

6.      _Distributions After Allowance_.  To the extent that a Disputed Claim (or a portion thereof) becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.

7.      _Disputed Claims Reserve_.  The provisions of Article VII.G of the Plan apply only to the extent that any Class 2A Ongoing General Unsecured Claims or Class 2B Other General Unsecured Litigation Claims remain Disputed as of any Distribution Date.

a.      If any Class 2A Claims or Class 2B Claims remain Disputed as of any Distribution Date, the undistributed portion of the Class 2A Fund or Class 2B Fund shall be held in separate segregated reserve accounts. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, or the receipt of a determination from the IRS, the Disbursing Agent shall treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and, to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Debtors, Reorganized Debtors, the Disbursing Agent, and Holders of General Unsecured Claims) shall be required to report for tax purposes in a manner consistent with the foregoing. The Disputed Claims Reserves shall be responsible for payment, out of the assets of the Disputed Claims Reserves, of any taxes imposed on the Disputed Claims Reserves or its respective assets.

b.      The Debtors or Reorganized Debtors, as applicable, shall determine the amount of the Disputed Claims Reserves, if applicable, as of the initial Distribution Date, based on the least of: (a) the asserted amount of the Disputed General Unsecured Claims in the applicable Proofs of Claim; (b) the amount, if any, estimated by the Bankruptcy Court pursuant to (i) section 502(c) of the Bankruptcy Code or (ii) Article VII.D of the Plan if, after the Effective Date, a motion is filed by Reorganized Debtors to estimate such Claim; (c) the amount otherwise agreed to by the Debtors (or Reorganized Debtors, if after the Effective Date) and the Holders of such Disputed General Unsecured Claims; or (d) any amount otherwise approved by the Bankruptcy Court. Upon each Distribution Date, Reorganized Debtors shall deposit into the Disputed Claims Reserves an amount of Cash equal to the amount sufficient to make the Distributions to which Holders of Disputed General Unsecured Claims would be entitled under the Plan as of the applicable Distribution Date if the Disputed General Unsecured Claims were Allowed Claims as of such date.

c.      If a Disputed General Unsecured Claim becomes an Allowed Claim after the first Distribution Date, the Disbursing Agent shall, on the next Distribution Date after the Disputed General Unsecured Claim becomes an Allowed Claim (or, if the Disputed General Unsecured Claim becomes an Allowed Claim after the final Distribution Date, as soon as practicable after Allowance), Distribute to the Holder of such Claim, exclusively from the Disputed Claims Reserve, the amount of Cash that such Holder would have received in that Distribution and all prior Distributions (if any) if such Holder's General Unsecured Claim had been Allowed as of the Effective Date, net of any allocable taxes imposed thereon or otherwise payable by the Disputed Claims Reserve.

d.      If a Disputed Claim is Disallowed, in whole or in part, then on the Distribution Date next following the date of Disallowance, Cash shall be released from the

41

Disputed Claims Reserve and placed in the Class 2A Fund or Class 2B Fund, as applicable, which Cash shall then be unreserved and unrestricted, and which shall be available for Distribution to Holders of Allowed General Unsecured Claims.

e.        If any assets remain in the Disputed Claims Reserve after all Disputed General Unsecured Claims have been resolved, such assets shall be placed in the Class 2A Fund or Class 2B Fund, as applicable, and Distributed Pro Rata to all Holders of Allowed General Unsecured Claims on the next Distribution Date (or, if all Disputed General Unsecured Claims are resolved after the final Distribution Date, as soon as practicable thereafter).

8.        <u>Adjustment to Claims Register without Objection</u>.  Any duplicate Proof of Claim that has been paid or satisfied, or any Proof of Claim that is clearly marked as amended or superseded by a subsequently filed Proof of Claim that remains on the Claims Register, may be adjusted or expunged on the Claims Register by Notice and Reorganized Debtors' stipulation between the parties in interest without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

9.        <u>Time to File Objections to Claims</u>.  Any objections to Claims must be filed on or before the applicable Claims Objection Deadline, as such deadline may be extended from time to time. The expiration of the Claims Objection Deadline shall not limit or affect the Debtors' or Reorganized Debtors' rights to dispute Claims asserted in the ordinary course of the Debtors' or Reorganized Debtors' operations other than through a Proof of Claim.

10.        <u>Treatment of Untimely Claims</u>.  Except as provided herein or otherwise agreed, any and all creditors that have filed Proofs of Claim after the applicable Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting and distribution.  No Distributions shall be made on account of any Proof of Claim filed after the applicable Bar Date.

S.        <u>Discharges, Releases, Exculpations and Injunctions</u>

1.        <u>Discharge</u>

a.        <u>Discharge of the Debtors</u>. Except as expressly provided in the Plan or the Confirmation Order, the treatment of Claims under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, termination and release of, all Claims and Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, and, as of the Effective Date, each of the Debtors shall be deemed discharged and released, and each holder of a Claim or Interest and any successor, assign, and affiliate of such holder shall be deemed to have forever waived, discharged and released each of the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities, and all debts of the kind specified in section 502 of the Bankruptcy Code, based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, in each case whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has been

Disallowed by order of the Bankruptcy Court, or (d) the holder of a Claim based upon such debt is deemed to have accepted the Plan.

          b.      <u>Discharge Injunction</u>. From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims and Interests: (a) commencing or continuing any action or other proceeding of any kind against the Debtors, Reorganized Debtors, or its or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other against the Debtors, Reorganized Debtors, or its or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtors, Reorganized Debtors, or its or their respective property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors and assigns of the Debtors (including Reorganized Debtors) and its and their respective properties and interests in property. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, Interests and other debts and liabilities against or in the Debtors pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time to the extent such judgment relates to a discharged Claim or Interest.

          **2.**      **<u>Releases of Avoidance Actions</u>. As of the Effective Date, the Debtors, Reorganized Debtors, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of Ongoing General Unsecured Claims, Other General Unsecured Litigation Claims, Convenience Claims, and Interests including, the Equity Security Holders of and from any and all Avoidance Actions.**

          **3.**      **<u>Exculpation</u>.  From and after the Effective Date, none of the Exculpated Parties[10] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or after the Petition Date up to and including the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith, willful misconduct, or fraud). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of**

---

[10] "<u>Exculpated Parties</u>" means, collectively, the following Persons: (a) the Debtors; (b) the directors, officers, and managers of the Debtors that served during the Chapter 11 Cases, (c) all Professionals retained by the Debtors in the Chapter 11 Cases, and in each such instance of (a) through (c) acting in their capacity as such.

counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.

**4.    Injunction Related to Exculpation**. As of the Effective Date, all holders of Claims that are the subject of **Article IX.G** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article IX.E** of the Plan or exculpated under **Article IX.G** of the Plan; **provided**, **however**, that the injunctions set forth in **Article IX.H** of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of **Article IX.G** of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

T.    <u>Disallowed Claims</u>.  On and after the Effective Date, the Debtors and Reorganized Debtors shall be fully and finally discharged of any and all liability or obligation on any and all Disallowed Claims, and any order Disallowing a Claim that is not a Final Order as of the Effective Date solely because of a Person's right to move for reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.

U.    <u>No Successor Liability</u>.  Except as otherwise expressly provided in the Plan, Reorganized Debtors do not, pursuant to the Plan or otherwise, assume, agree to perform, pay or indemnify any Person, or otherwise have any responsibility for any liabilities or obligations of the Debtors relating to or arising out of the operations of or assets of the Debtors, whether arising prior to, on or after the Effective Date.  Neither the Debtors, nor the Reorganized Debtors, is, or shall be deemed to be, a successor to any of the Debtors by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character; provided, however, that Reorganized Debtors shall assume and remain liable for their respective obligations specified in the Plan and the Confirmation Order.

V.    <u>Retention of Jurisdiction</u>.  Until the Chapter 11 Cases are closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including the jurisdiction necessary to ensure that the purposes and intent of the Plan are carried out.

1.    <u>General Retention</u>.  Following Confirmation of the Plan, the administration of the Chapter 11 Cases will continue until the Chapter 11 Cases are closed by a Final Order. The Bankruptcy Court shall also retain jurisdiction for the purpose of classification of any Claims and

the re-examination of Claims which have been Allowed for purposes of voting, and the determination of such objections as may be filed with the Bankruptcy Court with respect to any Claims. The failure by the Debtors or Reorganized Debtors to object to, or examine, any Claim for the purposes of voting, shall not be deemed a waiver of the rights of the Debtors, or Reorganized Debtors, as the case may be, to object to or reexamine such Claim in whole or part.

2. <u>Specific Purposes</u>. In addition to the foregoing, the Bankruptcy Court shall retain jurisdiction, as more fully set forth in <u>Article X.C.</u> of the Plan, over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan.

3. <u>Courts of Competent Jurisdiction</u>. To the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the foregoing matters, the reference to the "Bankruptcy Court" in <u>Article X</u> of the Plan shall be deemed to be replaced by the "District Court." If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

W.     <u>Miscellaneous Provisions</u>

1. <u>Closing of Chapter 11 Cases</u>. After each Chapter 11 Case has been fully administered, Reorganized Debtors shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close such Chapter 11 Case.

2. <u>Amendment or Modification of the Plan</u>

a. <u>Plan Modifications</u>. The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and after entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code unless section 1127 of the Bankruptcy Code requires additional disclosure. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

b. <u>Other Amendments</u>. Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court; provided that notice of such proposed adjustments or modifications is filed on the docket at least five (5) days before the Effective Date and no creditor objects to such adjustments or modifications before the

Effective Date.  In the event such an objection is filed, the Bankruptcy Court shall rule on the objection.

3. <u>Revocation or Withdrawal of the Plan</u>.  The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Plan has been revoked or withdrawn prior to the Effective Date, or if Confirmation of the Plan or the occurrence of the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (3) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim against, or any Interest in, the Debtors or any other Person; (ii) prejudice in any manner the rights of the Debtors or any other Person; or (iii) constitute an admission of any sort by the Debtors or any other Person.

4. <u>Request for Expedited Determination of Taxes</u>.  The Debtors and Reorganized Debtors, as applicable, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date to and including the Effective Date.

5. <u>Non-Severability of Plan Provisions</u>.  If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or Reorganized Debtors (as the case may be), and (3) non-severable and mutually dependent.

6. <u>Notices</u>.  All notices, requests, and demands to or upon the Debtors or Reorganized Debtors to be effective shall be in writing (including by email transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

with copies to:

Domus BWW Funding, LLC and 1801 Admin, LLC
Attn: Randall Schultz
1801 Market Street
Suite 2525
Philadelphia, PA 19103
Phone: (215) 609-3400

with a copy to counsel:

Karalis PC
Attention:  Aris J. Karalis, Esquire
1900 Spruce Street
Philadelphia, PA 19103
Phone: (215) 546-4500

7.      <u>Notices to Other Persons</u>.   After the occurrence of the Effective Date, Reorganized Debtors have authority to send a notice to any Person providing that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Person must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002; *provided, however*, that the United States Trustee need not file such a renewed request and shall continue to receive documents without any further action being necessary. After the occurrence of the Effective Date, Reorganized Debtors are authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to the United States Trustee and those Persons that have filed such renewed requests.

8.      <u>Immediate Binding Effect</u>.   Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of any Person named or referred to in the Plan and the successors and assigns of such Person.

9.      <u>Timing of Distributions or Actions</u>.   In the event that any payment, Distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then such payment, Distribution, act or deadline shall be deemed to occur on the next succeeding Business Day, but if so made, performed or completed by such next succeeding Business Day, shall be deemed to have been completed or to have occurred as of the required date.

10.     <u>Deemed Acts</u>.   Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred by virtue of the Plan or the Confirmation Order without any further act by any Person.

11.     <u>Entire Agreement</u>.   The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions, negotiations, understandings and documents. No Person shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than

as expressly provided for in the Plan or the other Plan Documents or as may hereafter be agreed to by the affected parties in writing.

12.     Plan Supplement.  Any and all exhibits, lists, or schedules referred to herein but not filed with the Plan shall be contained in the Plan Supplement to be filed with the Clerk of the Bankruptcy Court prior to the Confirmation Hearing on the Plan, and such Plan Supplement is incorporated into and is part of the Plan as if set forth in full herein. The Plan Supplement will be available for inspection in the office of the Clerk of the Bankruptcy Court during normal court hours, and at the Bankruptcy Court's website (http://ecf.paeb.uscourts.gov).

13.     Withholding of Taxes.  The Disbursing Agent or any other applicable withholding agent, as applicable, shall withhold from any assets or property Distributed under the Plan any assets or property which must be withheld for foreign, federal, state and local taxes payable with respect thereto or payable by the Person entitled to such assets to the extent required by applicable law.

14.     Filing of Reports and Payment of Quarterly Fees.  Until the occurrence of the Effective Date, each Debtor shall continue to file the UST Form 11-MOR, Monthly Operating Report, and shall timely pay to the United States Trustee the Quarterly Fees[11] due through and including the Effective Date.   Following the Effective Date, the Reorganized Debtors shall each file a separate UST Form 11-PCR, Post Confirmation Report, every calendar quarter when they come due and each shall timely pay to the United States Trustee the Quarterly Fees when due and payable.  Each Reorganized Debtor shall remain obligated to pay its Quarterly Fees to the United States Trustee for its Chapter 11 Case until the earlier of: (1) the case is closed; (2) the entry of a final decree; (3) the conversion of the case to a case under another chapter of the Bankruptcy Code; or (4) the dismissal of the case.

15.     Effective Date Actions Simultaneous.  Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

**ARTICLE V**
**SOLICITATION PROCEDURES AND REQUIREMENTS**

Before voting to accept or reject the Plan, each holder of a Claim entitled to vote should carefully review the Plan. All descriptions of the Plan set forth in this Disclosure Statement are subject to the terms and provisions of the Plan.

A.     Voting Summary and Deadline[12].  The Bankruptcy Court entered an order in these Chapter 11 Cases [D.I. ____] (the "Solicitation Procedures Order") that, among other things, approved certain procedures governing the solicitation of votes to accept or reject the Plan from holders of

---

[11] "Quarterly Fees" is a defined term under the Plan which means all fees due and payable pursuant to section 1930(a)(6) of title 28 of the United States Code.

[12] Capitalized terms used in this Article V and not otherwise defined herein or in the Plan shall have the meanings ascribed to such terms in the Solicitation Procedures Motion, Solicitation Procedures Order, or Solicitation Procedures, as applicable.

Claims against the Debtors, including setting the deadline for voting, specifying which holders of Claims are eligible to receive Ballots to vote on the Plan, and establishing other voting and tabulation procedures attached to the Solicitation Procedures Order as Exhibit 1 (the "Solicitation Procedures").

**THE SOLICITATION PROCEDURES ORDER IS HEREBY INCORPORATED BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN. YOU SHOULD READ THE SOLICITATION PROCEDURES ORDER, THE SOLICITATION PROCEDURES, THE CONFIRMATION HEARING NOTICE, AND THE INSTRUCTIONS ATTACHED TO YOUR BALLOT IN CONNECTION WITH THIS SECTION, AS THEY SET FORTH IN DETAIL PROCEDURES GOVERNING VOTING DEADLINES AND OBJECTION DEADLINES.**

The Plan, though proposed jointly and consolidated for purposes of making distributions to holders of Claims under the Plan, constitutes a separate Plan proposed by each Debtor. Therefore, the classifications set forth in the Plan apply separately with respect to each Plan proposed by, and the Claims against and Interests in, each Debtor. Your vote will count as votes for or against, as applicable, each Plan proposed by each Debtor.

| | |
|---|---|
| **Voting Classes:** | The Debtors are soliciting votes to accept or reject the Plan from the holders of Claims in Classes 2A, 2B, and 3. |
| **Voting Record Date:** | The Voting Record Date is _____, 2024. Only holders in the Voting Classes as of this date will be entitled to vote to accept or reject the Plan. The Debtors reserve the right to set a later Voting Record Date if the Debtors decide to extend the Voting Deadline. |
| **Voting Deadline; Extension:** | The Voting Deadline is _____, 2024 at 4:00 p.m. (Eastern Time), unless the date by which the Ballots will be accepted is extended in accordance with the Solicitation Procedures. If the Voting Deadline is extended, the term "Voting Deadline" will mean the time and date that is designated. Any extension of the Voting Deadline will be followed as promptly as practicable by notice of the extension in accordance with the Solicitation Procedures. |
| **Solicitation Procedures:** | If you are a holder of a Claim in the Voting Classes, you should deliver a properly completed Ballot to Debtors' counsel. Ballots must be received by Debtors' counsel on or before the Voting Deadline. To be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered by (1) mail, (2) overnight delivery, or (3) personal delivery, so that it is ***actually received***, in each case, by the Debtors' counsel no later than the Voting Deadline. Specifically, each Ballot must be returned (a) by mail using the envelope included in the Solicitation Package, as applicable, or by overnight or personal delivery to the following address: Karalis PC, attention Aris J. Karalis, Esquire, 1900 Spruce Street, Philadelphia, PA 19103. |

| Revocation or Withdrawal of Ballots: | After the Voting Deadline, a Ballot may only be withdrawn or modified pursuant to an order of the Bankruptcy Court authorizing such withdrawal or modification; *provided*, that prior to the Voting Deadline, a voter may withdraw a valid Ballot by delivering a written notice of withdrawal to the Debtors' counsel. The withdrawal must be signed by the party who signed the Ballot, and the Debtors reserve the right to contest any withdrawals, rights and any such withdrawal shall be detailed in the Voting Report filed by the Debtors' counsel. |
|---|---|

The following instructions for voting to accept or reject the Plan, together with the instructions contained in the Ballot and the Solicitation Procedures, constitute the voting instructions. Only holders of Claims in Classes 2A, 2B, and 3 (the "Voting Classes") as of the Voting Record Date are entitled to vote on the Plan. To vote, you must fill out and sign the Ballot enclosed in the Solicitation Package (as defined below).

B.    Solicitation Procedures

1.    Vote Required for Acceptance by a Class of Claims. Under the Bankruptcy Code, acceptance of a plan of reorganization by a class of claims or interests is determined by calculating the amount and, if a class of claims, the number, of claims and interests voting to accept, as a percentage of the allowed claims or interests, as applicable, that have voted. Acceptance by a class of claims requires an affirmative vote of more than one-half in number of total allowed claims in such class that have voted and an affirmative vote of at least two-thirds in dollar amount of the total allowed claims in such class that have voted.

2.    Solicitation Package. The package of materials (the "Solicitation Package") sent to the Voting Classes contains:

a.    a cover letter describing the contents of the Solicitation Package, and urging holders of Claims in the Voting Classes to vote to accept the Plan;

b.    the *Notice of Hearing to Consider Confirmation of Joint Plan of Reorganization Proposed by Domus BWW Funding, LLC and 1801 Admin, LLC, Debtors-In-Possession* substantially in the form annexed to the Solicitation Procedures Order as Exhibit 3 (the "Confirmation Hearing Notice");

c.    the Disclosure Statement with all exhibits, including the Plan and all exhibits (to the extent such exhibits are filed with the Bankruptcy Court before the Solicitation Date), which shall be provided in the formats set forth in the Solicitation Procedures Order;

d.    The Solicitation Procedures Order, including the Solicitation Procedures, but excluding all other exhibits, which shall be provided in the formats set forth in the Solicitation Procedures Order;

50

e.      an appropriate form of Ballot with return instructions and a return envelope, as applicable; and

f.      any other materials ordered by the Bankruptcy Court to be included as part of the Solicitation Package.

The Debtors have distributed the Solicitation Packages to holders of Claims in the Voting Classes as of the Solicitation Date. In addition, the Debtors will provide parties in interest (at no charge) the Plan and/or Disclosure Statement, as well as any exhibits thereto, upon request to the Debtors' counsel by (1) calling Debtors' law firm at (215) 546-4500; (2) writing to Debtors' counsel at Karalis PC, Attn: Aris J. Karalis, Esquire, 1900 Spruce Street, Philadelphia, PA 19103; or (3) emailing Jill Hysley at jhysley@karalislaw.com.

If you are a holder of a Claim who is entitled to vote on the Plan and you or your attorney did not receive a Ballot, received a damaged Ballot, or lost your Ballot, please contact Debtors' counsel by (1) emailing Jill Hysley at jhysley@karalislaw.com, (2) calling Debtors' law firm at (215) 546-4500, or (3) writing to Debtors' counsel at Karalis PC, Attn: Aris J. Karalis, Esquire, 1900 Spruce Street, Philadelphia, PA 19103.

3.      Solicitation Procedures, Ballots, and Voting Deadline.  If you are entitled to vote to accept or reject the Plan, one or more Ballot(s) has been enclosed in your Solicitation Package for the purpose of voting on the Plan. Please vote and return your Ballot(s) in accordance with the instructions accompanying your Ballot(s).

You should carefully review (1) the Plan, (2) this Disclosure Statement, (3) the Solicitation Procedures Order, (4) the Confirmation Hearing Notice, and (5) the detailed instructions accompanying your Ballot prior to voting on the Plan.

After carefully reviewing these materials, including the detailed instructions accompanying your Ballot(s), please indicate your acceptance or rejection of the Plan by completing the Ballot(s). All votes to accept or reject the Plan with respect to any Class of Claims entitled to vote on the Plan must be cast by properly submitting the duly completed and executed form of Ballot designated for such Class. Holders of Claims voting on the Plan should complete and sign the Ballot(s) in accordance with the instructions thereon, being sure to check the appropriate box entitled "Accept (vote in favor of) the Plan" or "Reject (vote against) the Plan." In order for your vote to be counted, you must complete and return your Ballot(s) in accordance with the instructions accompanying your Ballot(s) on or before the Voting Deadline. Each Ballot has been coded to reflect the Class of Claims it represents. Accordingly, in voting to accept or reject the Plan, you must use only the coded Ballot or Ballots sent to you.

**In order for the holder of a Claim in the Voting Class to have such holder's Ballot counted as a vote to accept or reject the Plan, such holder's Ballot must be properly completed, executed, and delivered by (1) mail, (2) overnight delivery, or (3) personal delivery, so that such holder's Ballot is <u>actually received by the Debtors' counsel on or before the Voting Deadline, *i.e.*,                        , 2024 at 4:00 p.m. (Eastern Time)</u>.**

**Specifically, each Ballot must be returned by mail using the envelope included in the Solicitation Package, as applicable, or by overnight or personal delivery to the following address:**

**KARALIS PC**
**Attn: Aris J. Karalis, Esquire**
**1900 Spruce Street**
**Philadelphia, PA 19103**

**IF A BALLOT IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED UNLESS THE DEBTORS DETERMINE OTHERWISE.**

**ANY BALLOT THAT IS PROPERLY EXECUTED BY THE HOLDER OF A CLAIM IN THE VOTING CLASSES BUT THAT DOES NOT CLEARLY INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN, OR ANY BALLOT THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN, WILL NOT BE COUNTED FOR PURPOSES OF ACCEPTING OR REJECTING THE PLAN.**

**EACH HOLDER OF A CLAIM IN THE VOTING CLASSES MUST VOTE ALL OF ITS CLAIMS WITHIN SUCH CLASS EITHER TO ACCEPT OR REJECT THE PLAN AND MAY NOT SPLIT SUCH VOTES. IF A HOLDER OF A CLAIM SUBMITS MORE THAN ONE INCONSISTENT BALLOT RECEIVED BY THE SOLICITATION AGENT ON THE SAME DAY, SUCH BALLOTS WILL NOT BE COUNTED FOR PURPOSES OF ACCEPTING OR REJECTING THE PLAN.**

**IT IS IMPORTANT THAT THE HOLDER OF A CLAIM IN THE VOTING CLASSES FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED ON SUCH HOLDER'S BALLOT AND THE ACCOMPANYING INSTRUCTIONS.**

C.    <u>Classes Entitled to Vote on the Plan</u>.  Under the Bankruptcy Code, holders of Claims and Interests are not entitled to vote if their contractual rights are unimpaired by the proposed plan or if they will receive no property under the plan. Holders of Claims in Class 1 are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Holders of Interests in Class 4 are Unimpaired under the Plan and are, therefore, are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Holders of Claims in Class 5, if any, will not receive property under the Plan and are, therefore conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, no holders of Claims or Interests in such Classes shall be entitled to vote to accept or reject the Plan.

Each of Classes Class 2A (Ongoing General Unsecured Claims), Class 2B (Other General Unsecured Litigation Claims), and Class 3 (Convenience Claims), are Impaired and the Holders of Claims in Classes 2A, 2B and 3 are entitled to vote to accept or reject the Plan.

If your Claim or Interest is not included in the Voting Classes, you are not entitled to vote and you will not receive a Solicitation Package, including a Ballot setting forth detailed voting

52

instructions. If your Claim is included in the Voting Classes, you should read your Ballot and carefully follow the instructions included in the Ballot. Please use only the Ballot that accompanies this Disclosure Statement or the Ballot that the Debtors otherwise provided to you.

1.    <u>Holders of Claims Entitled to Vote</u>.  Under section 1124 of the Bankruptcy Code, a class of claims or equity interests is deemed to be "impaired" under a plan unless (1) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or equity interest entitles the holder thereof or (2) notwithstanding any legal right to an accelerated payment of such claim or equity interest, the plan (a) cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy or defaults of a kind that do not require cure), (b) reinstates the maturity of such claim or equity interest as it existed before the default, (c) compensates the holder of such claim or equity interest for any damages from such holder's reasonable reliance on such legal right to an accelerated payment, (d) if such claim or such interest arises from a failure to perform nonmonetary obligations, other than a default arising from a failure to operate a nonresidential real property lease, compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure and (e) does not otherwise alter the legal, equitable, or contractual rights to which such claim or equity interest entitles the holder of such claim or equity interest.

The following table sets forth a simplified summary of which Classes are entitled to vote on the Plan and which are not and the voting status for each of the separate Classes of Claims and Interests provided for in the Plan.

| Class | Claim or Interest | Entitled to Vote |
|---|---|---|
| 1 | Other Priority Claims | No - Presumed to Accept |
| 2A | Ongoing General Unsecured Claims | Yes - Impaired |
| 2B | Other General Unsecured Litigation Claims | Yes - Impaired |
| 3 | Convenience Claims | Yes - Impaired |
| 4 | Interests in Debtors | No – Presumed to Accept |
| 5 | Subordinated Claims | No – Deemed to Reject |

In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Voting Classes are Impaired under the Plan and, to the extent Claims in the Voting Classes are deemed Allowed, the holders of such Claims will receive distributions under the Plan. As a result, the holders of Claims in each of these Classes are entitled to vote to accept or reject the Plan.

If you have filed a Proof of Claim that is subject to an objection, other than a "reclassify" or "reduce and allow" objection, that is filed with the Bankruptcy Court on or before the Solicitation Date (a "<u>Disputed Claim</u>"), you are not entitled to vote on the Plan. If you seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such Claim for purposes of voting to accept or reject the Plan (a "<u>Rule</u>

3018(a) Motion"). **As set forth in the Confirmation Hearing Notice and the Solicitation Procedures, any Rule 3018(a) Motion shall be filed with the Bankruptcy Court and served on the Debtors on or before _____, 2024. If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim on or prior to _____, 2024 or as otherwise ordered by the Bankruptcy Court.** For the avoidance of doubt, any Claim that is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court *after* the Solicitation Date shall be deemed temporarily allowed solely for voting purposes in accordance with the Solicitation Procedures, without further action by the Debtors or the holder of the Claim, and without further order of the Bankruptcy Court, unless the Debtors and claimant agree to other treatment for voting purposes or the Bankruptcy Court orders otherwise.

A vote on the Plan may be disregarded if the Bankruptcy Court determines, pursuant to section 1126(e) of the Bankruptcy Code, that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code. The Solicitation Procedures also set forth assumptions and procedures for determining the amount of Claims that each creditor is entitled to vote in these Chapter 11 Cases and how votes will be counted under various scenarios.

**Your vote on the Plan is important.** The Bankruptcy Code requires as a condition to confirmation of a plan of reorganization that each class that is impaired and entitled to vote under a plan votes to accept such plan, unless the plan is being confirmed under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code. Section 1129(b) permits confirmation of a plan of reorganization, notwithstanding the nonacceptance of the plan by one or more impaired classes of claims or equity interests, so long as at least one impaired class of claims or interests votes to accept a proposed plan. Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each nonaccepting class.

D.      Certain Factors to Be Considered Prior to Voting.  There are a variety of factors that all holders of Claims and Interest entitled to vote on the Plan should consider prior to voting to accept or reject the Plan. These factors, which may impact recoveries under the Plan, include the following:

1.      unless otherwise specifically indicated, the financial information contained in this Disclosure Statement has not been audited and is based on an analysis of data available at the time of the preparation of the Plan and this Disclosure Statement;

2.      although the Debtors believe that the Plan complies with all applicable provisions of the Bankruptcy Code, the Debtors can neither assure such compliance nor that the Bankruptcy Court will confirm the Plan;

3.      the Debtors may request Confirmation without the acceptance of all Impaired Classes entitled to vote in accordance with section 1129(b) of the Bankruptcy Code; and

4.      any delays of either Confirmation or the occurrence of the Effective Date could result in, among other things, increased Administrative Expense Claims and Professional Fee Claims.

For a further discussion of risk factors, please refer to <u>Article VII</u> of this Disclosure Statement, entitled "Risk Factors."

## ARTICLE VI
## CONFIRMATION PROCEDURES

A.    <u>Hearing on Plan Confirmation</u>.  Under section 1128(a) of the Bankruptcy Code, the Bankruptcy Court, after notice, shall hold a hearing to confirm a plan of reorganization. The Confirmation Hearing pursuant to section 1128 of the Bankruptcy Code will be held on **_____, 2024 at _____.m. (Eastern Time),** before the Honorable Ashely M. Chan, United States Bankruptcy Judge for the Eastern District of Pennsylvania, in the Bankruptcy Court, located at 900 Market Street, Courtroom 4, Philadelphia, PA 19107. The Confirmation Hearing may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment filed with the Bankruptcy Court and served on those parties who have requested notice under Bankruptcy Rule 2002 and the Entities who have filed an objection to the Plan, if any, without further notice to parties in interest. The Bankruptcy Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing. Subject to section 1127 of the Bankruptcy Code, the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

Additionally, section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation. Any objection to Confirmation of the Plan must: (i) be made in writing; (ii) state the name and address of the objecting party and the nature and amount of the Claim or Interest of such party; (iii) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (iv) be filed with the Bankruptcy Court, 900 Market Street, Suite 400, Philadelphia, PA 19107 together with proof of service **on or before the Plan Objection Deadline (_____, 2024 at 4:00 p.m. (Eastern Time))**, and served so as to be <u>actually received</u> by the notice parties set forth in the Confirmation Hearing Notice before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email.

B.    <u>Requirements for Confirmation of the Plan</u>.  The Bankruptcy Court will confirm the Plan only if all of the requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation are that the Plan is (A) accepted by all impaired Classes of Claims and Interests entitled to vote or, if rejected or deemed rejected by an impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class; (B) in the "best interests" of the holders of Claims and Interests impaired under the Plan; and (C) feasible.

C.    <u>Acceptance by an Impaired Class</u>.  The Bankruptcy Code requires, as a condition to confirmation, that each class of claims or interests that is impaired under a plan of

reorganization, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. As stated above, the Voting Classes are Impaired Classes and are comprised of the holders of Claims in Class 2A, Class 2B, and Class 3. Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as an affirmative vote of more than one-half in number of total allowed claims in such class that have voted and an affirmative vote of at least two-thirds in dollar amount of the total allowed claims in such class that have voted. Thus, the Voting Classes described herein will have voted to accept the Plan only if one-half of the holders of Allowed Claims, with at least two-thirds of the total dollar amount of the Allowed Claims vote on the Plan to accept.

**AS EXPLAINED IN <u>ARTICLE IV.I</u> OF THIS DISCLOSURE STATEMENT, THE BANKRUPTCY CODE CONTAINS PROVISIONS FOR CONFIRMATION OF A PLAN EVEN IF IT IS NOT ACCEPTED BY ALL CLASSES. THESE SO-CALLED "CRAMDOWN" PROVISIONS ARE SET FORTH IN SECTION 1129(b) OF THE BANKRUPTCY CODE, WHICH PROVIDES THAT A PLAN OF REORGANIZATION CAN BE CONFIRMED EVEN IF IT HAS NOT BEEN ACCEPTED BY ALL IMPAIRED CLASSES OF CLAIMS AND INTERESTS AS LONG AS AT LEAST ONE IMPAIRED CLASS OF NON-INSIDER CLAIMS HAS VOTED TO ACCEPT THE PLAN.**

D.    <u>Best Interests Test</u>.    The Bankruptcy Code requires a bankruptcy court to determine that the plan is in the best interests of all holders of claims or interests that are impaired by the plan and that have not accepted the plan.  The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code requires a bankruptcy court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims and interests if the Debtors were liquidated under chapter 7, a bankruptcy court must first determine the aggregate dollar amount that would be generated from the debtor's assets if its chapter 11 case were converted to a chapter 7 case under the Bankruptcy Code.  This "liquidation value" would consist primarily of the proceeds from a forced sale of the Debtors' assets by a chapter 7 trustee.

The amount of liquidation value available to unsecured creditors would be reduced by, first, the claims of secured creditors to the extent of the value of their collateral and, second, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of both the chapter 7 cases and the chapter 11 cases.  Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a chapter 7 trustee, as well as of counsel and other professionals retained by the chapter 7 trustee, asset disposition expenses, all unpaid administrative expenses incurred by the Debtor in the Chapter 11 Cases that are allowed, litigation costs and claims arising from the operations of the Debtor during the pendency of the Chapter 11 Cases.  The liquidation itself may also trigger certain priority payments that

otherwise would be due in the ordinary course of business.  Those priority claims would be paid in full from the liquidation proceeds before the balance would be made available to pay general unsecured claims or to may any distribution in respect of equity security interests.

Once the bankruptcy court ascertains the recoveries in liquidation of secured creditors and priority claimants, it must determine the probable distribution to general unsecured creditors and equity security holders from the remaining available proceeds in liquidation.  If such probable distribution has a value greater than the distribution to be received by such creditors and equity security holders under the plan, then the plan is not in the best interests of creditors and equity security holders.

E.      Liquidation Analysis and Application of the "Best Interest Test".  For purposes of the Best Interests Test, the Debtors are providing the Liquidation Analysis attached as **Exhibit A** hereto.  It is impossible to determine with certainty the value each Holder of a Claim will receive under the Plan as a percentage of any Allowed Claim. Notwithstanding the difficulty in quantifying recoveries with precision, the Debtors believe that the financial disclosures and projections contained herein imply a greater recovery to holders of Allowed Claims in Impaired Classes than the recovery available in a chapter 7 liquidation. Accordingly, the Debtors believes that the "best interests test" of section 1129 of the Bankruptcy Code is satisfied.

F.      Feasibility.  The Bankruptcy Code requires that a debtor demonstrate that confirmation of a plan of reorganization is not likely to be followed by liquidation or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Debtors have analyzed their ability to meet obligations under the Plan.

The Debtors have prepared the projections attached hereto as **Exhibit B** (the "Financial Projections"). The Financial Projections assume that the Plan will be implemented in accordance with its stated terms. Accordingly, the Debtors believe that Confirmation is not likely to be followed by liquidation or the need for further reorganization.

G.      Conditions Precedent to Consummation of the Plan.  The Plan provides for certain conditions that must be satisfied (or waived) prior to confirmation of the Plan and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of this Disclosure Statement, there can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived). Accordingly, even if the Plan is confirmed by the Bankruptcy Court, there can be no assurance that the Plan will be consummated.

H.      *Vacatur* of Confirmation Order; Non-Occurrence of Effective Date.  If the Confirmation Order is vacated or the Effective Date does not occur within 180 days after entry of the Confirmation Order (subject to extension by the Debtors in their sole discretion), the Plan shall be null and void in all respects and nothing contained in the Plan or this Disclosure Statement shall (1) constitute a waiver or release of any Causes of Action by or Claims against or Interests in the Debtors or any Person; (2) prejudice in any manner the rights of the Debtors, any holders of a Claim or Interest or any other Person; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders of a Claim or Interest, or any other Person in any respect; or (4) be used by the Debtors or any other Person as evidence (or in any other way) in any litigation, including

57

with respect to the strengths and weaknesses of positions, arguments or claims of any of the parties to such litigation.

## ARTICLE VII
## RISK FACTORS

**HOLDERS OF CLAIMS AGAINST THE DEBTORS SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR INCORPORATED BY REFERENCE, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION. THERE ARE RISKS, UNCERTAINTIES, AND OTHER IMPORTANT FACTORS THAT COULD CAUSE THE DEBTORS' ACTUAL PERFORMANCE OR ACHIEVEMENTS TO BE MATERIALLY DIFFERENT FROM THOSE THEY MAY PROJECT, AND THE DEBTORS UNDERTAKE NO OBLIGATION TO UPDATE ANY SUCH STATEMENT.**

A.    <u>Risks Relating to the Debtors' Operations, Financial Condition, and Certain Bankruptcy Law Considerations</u>

1.    <u>There is a Risk that the Plan Will Not Be Confirmed</u>.  If confirmed and consummated, the Debtors believe the Plan will ensure that the Debtors are able to reorganize their affairs. If the Plan cannot be Confirmed, or if the Bankruptcy Court otherwise finds that conditions necessary for Confirmation cannot be met, the Debtors may be required to liquidate and/or voluntarily convert these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate the Debtors' assets for distribution in accordance with the priorities established by the Bankruptcy Code.

2.    <u>Risk of Non-Confirmation of the Plan</u>.  Although the Debtors believe that the Plan satisfies all requirements necessary for Confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that modifications to the Plan will not be required for Confirmation or that such modifications would not necessitate re-solicitation of votes. Moreover, the Debtors can make no assurances that they will receive the requisite acceptances to confirm the Plan, and even if all Voting Classes vote in favor of the Plan or the requirements for "cramdown" are met with respect to any Class that rejects or is deemed to reject the Plan, the Bankruptcy Court may exercise discretion as a court of equity and choose not to confirm the Plan. If the Plan is not confirmed, it is unclear what distributions holders of Claims or Interests would ultimately receive with respect to their Claims or Interests in a subsequent plan of reorganization, a liquidation, or other proceedings.

3.    <u>Alternative Plans of Reorganization</u>.  If other parties in interest were to propose an alternative plan of reorganization, such a plan may be less favorable to the Debtors, their Estates, and their stakeholders. In addition, if there were competing plans of

reorganization, the Chapter 11 Cases would likely become longer, more complicated, and more expensive, thereby reducing recoveries to holders of Claims.

4.     <u>Non-Consensual Confirmation</u>.  If any Impaired Class of Claims does not accept or is deemed not to accept a plan of reorganization, a Bankruptcy Court may nevertheless confirm such plan at the proponent's request if at least one Impaired Class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and as to each impaired class that has not accepted the plan, the Bankruptcy Court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. If any Class votes to reject or is deemed to reject the Plan, then these requirements must be satisfied with respect to such rejecting Class. The Debtors believe that the Plan satisfies these requirements.

5.     <u>Parties in Interest May Object to the Debtors' Classification of Claims and Interests</u>.  Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if the claim or interest is substantially similar to the other claims or interests in that class. Parties in interest may object to the classification of certain claims and interests both on the grounds that certain claims and interests have been improperly placed in the same Class and/or that certain claims and interests have been improperly placed in different Classes. The Debtors believe that the classification of Claims and Interests under the Plan complies with the requirements of the Bankruptcy Code because the Classes established under the Plan each encompass Claims or Interests that are substantially similar to similarly classified Claims or Interests. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Parties in interest may object to the classification of certain Claims and Interests both on grounds that certain Claims and Interests have been improperly placed in the same Class and/or that certain Claims and Interests have been improperly placed in different Classes.

6.     <u>The Debtors May Object to the Amount or Classification of a Claim</u>. Except as otherwise provided in the Plan, the Debtors reserve the right to object to the amount or classification of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any holder of a Claim where such Claim is subject to an objection. Any holder of a Claim that is subject to an objection may, therefore, not receive its expected share of the estimated distributions described in this Disclosure Statement.

7.     <u>The Conditions Precedent to Plan Confirmation and the Effective Date of the Plan May Not Occur</u>.  As more fully set forth in <u>Article VIII</u> of the Plan, Plan Confirmation and the Effective Date are subject to a number of conditions precedent. If such conditions precedent are not satisfied or waived, Plan Confirmation, the Effective Date, or both will not occur.

8.     <u>Possible Tax Ramifications</u>.  Each Creditor and Interest holder should consult their own tax advisor as to the specific tax consequences to such person of any term of the Plan, including the application and effect of federal, state and local income and other tax laws before determining whether to accept or reject the Plan.

9.     <u>Risk of Non-Occurrence of the Effective Date</u>.    Although the Debtors believe that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to the timing of the Effective Date. If the conditions precedent to the Effective Date set forth in the Plan have not occurred or have not been waived as set forth in <u>Article VIII</u> of the Plan, then the Confirmation Order may be vacated, in which event no distributions would be made under the Plan, the Debtors and all holders of Claims or Interests would be restored to the status quo as of the day immediately preceding the Confirmation Date, and the Debtors' obligations with respect to Claims and Interests would remain unchanged. Any delay to the Confirmation Date may materially negatively impact the Debtors' business and may result in a liquidation.

10.     <u>Amendment of Plan Prior to Confirmation by the Debtors</u>.    The Debtors, subject to the terms and conditions of the Plan, reserve the right to modify the terms and conditions of the Plan or waive any conditions thereto if and to the extent necessary or desirable for confirmation. The potential impact of any such amendment or waiver on holders of Claims and Interests cannot presently be foreseen, but may include a change in the economic impact of the Plan on some or all of the proposed Classes or a change in the relative rights of such Classes.

11.     <u>Financial Projections</u>.    The Debtors have prepared financial projections on a consolidated basis with respect to the Reorganized Debtors based on certain assumptions, as set forth in **Exhibit B** hereto. The projections have not been compiled, audited, or examined by independent accountants, and neither the Debtors nor their advisors make any representations or warranties regarding the accuracy of the projections or the ability to achieve forecasted results.

Many of the assumptions underlying the projections are subject to significant uncertainties that are beyond the control of the Debtors or the Reorganized Debtors, including the timing, Confirmation, and consummation of the Plan. Some assumptions may not materialize, and unanticipated events and circumstances may affect the actual results. Projections are inherently subject to substantial and numerous uncertainties and to a wide variety of significant economic, and operational risks, and the assumptions underlying the projections may be inaccurate in material respects. In addition, unanticipated events and circumstances occurring after the approval of this Disclosure Statement by the Bankruptcy Court, including any natural disasters, terrorist attacks, or health epidemics, may affect the actual financial results achieved. Such results may vary significantly from the forecasts and such variations may be material.

12.     <u>Voting Requirements</u>.    If sufficient votes are not received, the Debtors may seek to confirm an alternative chapter 11 plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the holders of Allowed Claims as those proposed in the Plan.

13.     <u>Conversion into Chapter 7 Cases</u>.    If no plan of reorganization can be confirmed, the Debtors may choose to convert these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate the Debtors' assets for distribution in accordance with the priorities established by the Bankruptcy Code. Under section 1112(c) of the Bankruptcy Code, the Chapter 11 Cases may not be converted to cases under chapter 7 without the Debtors' consent.

14.    <u>Dismissal of the Chapter 11 Cases</u>.  If the Plan is not confirmed, the Debtors or other parties in interest may seek dismissal of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code. Without limitation, dismissal of the Chapter 11 Cases would terminate the automatic stay and might allow certain creditors to file lawsuits against the Debtors or take other action to pursue their Claims against the Debtors. Accordingly, the Debtors believe that dismissal of the Chapter 11 Cases would significantly reduce the value of the Debtors' remaining assets.

15.    <u>Parties in Interest May Object to the Plan Based on Section 1129(a)(7) of the Bankruptcy Code</u>.  The Debtors need to satisfy the "best interests" test, embodied in section 1129(a)(7) of the Bankruptcy Code. The Debtors will be prepared at confirmation to address best interest test standards, including through the Liquidation Analysis, which shows that the Debtors satisfy the test, and/or through other expert testimony related to whether holders of Impaired Claims will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive in a liquidation under chapter 7. If the Bankruptcy Court determines that the Plan does not satisfy the requirements of the best interests test, the Plan may not be Confirmed or may only be Confirmed with modifications, including potential modifications to the nonconsensual third party releases included in the Plan. If the Plan cannot be Confirmed because of this issue, the Debtors' options going forward may be limited to: (1) reaching agreement on a fully consensual plan; (2) satisfying the best interest of creditors test; (3) voluntary or involuntary dismissal; and, (4) voluntary conversion to Chapter 7.

B.    <u>Additional Factors</u>

1.    <u>Debtors Could Withdraw the Plan</u>.  Subject to, and without prejudice to, the rights of any party in interest, the Plan may be revoked or withdrawn before the Confirmation Date by the Debtors.

2.    <u>Debtors Have No Duty to Update</u>.  The statements contained in this Disclosure Statement are made by the Debtors as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. Additionally, the Debtors have no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

3.    <u>No Representations Outside this Disclosure Statement Are Authorized</u>. No representations concerning or related to the Debtors, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than those contained in, or included with, this Disclosure Statement should not be relied upon in making the decision to accept or reject the Plan.

4.    <u>No Legal or Tax Advice Is Provided by this Disclosure Statement</u>.  The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each holder of a Claim or Interest should consult its own legal counsel and accountant as to legal, tax, and other matters concerning their Claim or Interest. This Disclosure Statement is not legal

advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

       5.   <u>No Admission Made</u>.  Nothing contained herein or in the Plan shall constitute an admission of, or shall be deemed evidence of, the tax or other legal effects of the Plan on the Debtors or holders of Claims or Interests.

## ARTICLE VIII
## CONCLUSION AND RECOMMENDATION

In the opinion of the Debtors, the Plan is preferable to all other available alternatives and provides for a larger and more timely distribution to the Debtors' creditors than would otherwise result from any other scenario. Any alternative to Confirmation of the Plan, moreover, could result in extensive delays, increased administrative expenses, reduced financial performance, and a potential liquidation. Accordingly, the Debtors believe that the Plan provides the best available recovery to their stakeholders and urge the holders of Claims in the Voting Classes to vote in favor thereof. The Debtors support confirmation of the Plan and recommend that holders of Claims in the Voting Classes vote to accept the Plan.

[SIGNATURE PAGE TO FOLLOW]

**DOMUS BWW FUNDING, LLC**,

as a Debtor and a Debtor in Possession


By: \_\_\_\_/s/ Paul Halpern_____

Name:  Paul Halpern

Title:   Authorized Person

**1801 ADMIN, LLC**,

as a Debtor and a Debtor in Possession


By: \_\_\_\_/s/ Randall R. Schultz_____

Name:  Randall R. Schultz

Title:   Chief Financial Officer


**KARALIS PC**


By: \_\_\_\_\_/s/ Aris J. Karalis_____

Aris J. Karalis, Esquire

Robert W. Seitzer, Esquire

Robert M. Greenbaum, Esquire

1900 Spruce Street

Philadelphia, PA  19103

215-546-4500

Attorneys for the Debtors


[SIGNATURE PAGE TO DISCLOSURE STATEMENT]

## **EXHIBITS TO DISCLOSURE STATEMENT**

Exhibit A        Liquidation Analysis – to be supplied

Exhibit B        Financial Projections – to be supplied